## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Luis Alfredo Cáceres and Luis Angel Cáceres, Individually, as executor of the Estate of Alfredo Cáceres, and as trustee of the Luis Angel Cáceres Charitable Remainder Unitrust,<br><br>      Plaintiffs,<br><br>  vs.<br><br>Sidley Austin LLP,<br><br>      Defendant. | Case No. 1:23-CV-00844-SDG |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................... II

FACTUAL AND PROCEDURAL BACKGROUND ........................................... 4

    A.    The 1997 Tax Opinion Letter .............................................................. 4

    B.    The 2018 IRS Action Against the Cácereses ....................................... 6

    C.    This Action ......................................................................................... 9

LEGAL STANDARD ................................................................................... 10

ARGUMENT ............................................................................................... 11

    A.    The Cácereses' Claims for Breach of Contract, Professional Negligence, and Negligent Misrepresentation Are Untimely ............. 12

        1.    The Statute of Limitations Expired in 2001 ............................. 12

        2.    The Complaint Does Not Allege Any Facts That Would Toll the Statute of Limitations ................................................. 14

        3.    Even With Tolling, the Legal Malpractice Claims Are Untimely ................................................................................. 18

    B.    The Cácereses' Common-Law Indemnification Claim Fails to State a Claim for Relief .................................................................... 22

CONCLUSION ........................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Proteins, Inc. v. River Valley Ingredients, LLC*,
No. 2:22-CV-91-RWS, 2022 WL 16827602 (N.D. Ga. Nov. 8,
2022) ..................................................................................................10

*Dist. 65 Retirement Trust v. Prudential Sec., Inc.*,
925 F. Supp. 1551 (N.D. Ga. 1996) ...................................................12

*Douglas v. HERC Rentals, Inc.*,
1:19-CV-01084-JPB, 2021 WL 3852063 (N.D. Ga. Aug. 27, 2021).................24

*Espinoza v. Herc Rentals, Inc.*,
No. 1:19-cv-00958-SDG, 2020 WL 13532585 (N.D. Ga. Jan 14,
2020) ..................................................................................................22

*Gonsalvez v. Celebrity Cruises Inc.*,
750 F.3d 1195 (11th Cir. 2013) .........................................................12

*Horne v. Potter*,
392 F. App'x 800 (11th Cir. 2010) ..............................................6, 22

*James Settlement Servs. Int'l, LLC v. Conestoga Trust Servs., LLC*,
No. 1:17-CV-4680-CAP, 2020 WL 10147065 (N.D. Ga. Sept. 30,
2020) ..................................................................................................12

*Klopfenstein v. Deutsche Bank Sec., Inc.*,
592 F. App'x 812 (11th Cir. 2014)..................................14, 17, 20, 21

*Lindley v. FDIC*,
No. 4:ll–cv–147, 2012 WL 27576 (S.D. Ga. Jan. 4, 2012) ...............18

*McCormick v. Esposito*,
500 F.2d 620 (5th Cir. 1974) ..............................................................1

*Melson v. Comm'r, Ala. Dep't of Corr.*,
713 F.3d 1086 (11th Cir. 2013) .........................................................18

*Mintu v. Ocwen Loan Servicing, LLC*,
 No. 1:12-cv-2917-TCB, 2012 WL 12844929 (N.D. Ga. Nov. 13,
 2012) ........................................................................................................10

*Muhammad v. JP Morgan Chase Co.*,
 1:15-CV-0107-AT, 2015 WL 13777036 (N.D. Ga. July 30, 2015) ..................10

*Tellabs, Inc. v. Major Issues & Rights Ltd.*,
 551 U.S. 308 (2007).....................................................................................6

*United States v. Henco Holding Corp.*,
 985 F.3d 1290 (11th Cir. 2021) ....................................................................8, 9

*United States v. Henco Holding Corp.*,
 No. 1:18-CV-03093-CAP, 2019 WL 12434673 (N.D. Ga. May 14,
 2019) ..........................................................................................................8

*Yancy v. Cothran*,
 32 F. 687 (N.D. Ga. 1887) ..........................................................................21

**STATE CASES**

*Armstrong v. Cuffie*,
 311 Ga. 791 (2021) ....................................................................................14

*Auto-Owners Ins. v. Anderson*,
 252 Ga. App. 361 (2001) ..............................................................................3

*City of College Park v. Fortenberry*,
 271 Ga. App. 446 (2005) ............................................................................11

*Coe v. Proskauer Rose, LLP*,
 314 Ga. 519 (2022) ........................................................................13, 14, 15

*Dist. Owners Ass'n, Inc. v. AMEC Env't Infrastructure, Inc.*,
 322 Ga. App. 713 (2013) ............................................................................22

*Doe v. Saint Joseph's Cath. Church*,
 313 Ga. 558 (2022) ....................................................................................16

*Dunn v. Towle*,
170 Ga. App. 487 (1984) ...................................................................................19

*Evans v. Lipscomb*,
266 Ga. 767 (1996) ............................................................................................18

*Fowler v. Latham*,
201 Ga. 68 (1946) ...............................................................................................1

*Hines v. Holland*,
334 Ga. App. 292 (2015) ...................................................................................23

*Hoffman v. Ins. Co. of N.A.*,
241 Ga. 328 (1978) ............................................................................................12

*Kilby v. Shepherd*,
177 Ga. App. 462 (1986) ...................................................................................14

*MacDowell v. Gallant*,
344 Ga. App. 856 (2018) ...................................................................................21

*McElmurray v. Augusta-Richmond Cnty.*,
274 Ga. App. 605 (2005) ...................................................................................16

*Shipman v. Horizon Corp.*,
245 Ga. 808 (1980) ............................................................................................15

*Shores v. Troglin*,
260 Ga. App. 696 (2003) ...................................................................................15

**FEDERAL STATUTES**

26 U.S.C. § 6502 .....................................................................................................8

28 U.S.C. § 1332 .....................................................................................................9

**STATE STATUTES**

O.C.G.A. § 9-3-25 .............................................................................................2, 14

O.C.G.A. § 9-3-26 .............................................................................................2, 14

O.C.G.A. § 9-3-31.................................................................................................2

O.C.G.A. § 9-3-96.....................................................................2, 15, 18, 19, 20

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 12(b)(6)...................................................................................6, 10, 12

**INTRODUCTION**

This case arises out of a single event that took place more than twenty-five years ago. Plaintiffs Luis Alfredo Cáceres and Luis Angel Cáceres (collectively, "the Cácereses")[1] allege that Defendant Sidley Austin LLP[2] ("Sidley") negligently advised them in a 1997 tax opinion letter that they could legitimately minimize their federal taxes by engaging in a tax shelter transaction. The Cácereses allege that the opinion letter, prepared by R.J. Ruble, then a partner at Brown & Wood, was wrong, that the transaction addressed by that letter (and completed on April 10, 1997) was, in fact, an illegal tax shelter strategy, and that they incurred federal tax liability based on this purportedly negligent advice. The Cácereses filed this action (the "Complaint") against Sidley on January 13, 2023, raising claims for

---

[1] The Cácereses bring their claims both as individuals and in Luis Angel Cáceres's capacity as executor of his father's estate and trustee of the now-expired Luis Angel Cáceres Charitable Remainder Unitrust. Compl. ¶ 7. Luis Angel Cáceres's status as executor and trustee does not affect any of the analysis in this motion. *See, e.g.*, *McCormick v. Esposito*, 500 F.2d 620, 622 n.4 (5th Cir. 1974) (concluding that because "all claims that [defendant] raised in his capacity as trustee he also raised in his individual capacity," they failed for same reasons); *Fowler v. Latham*, 201 Ga. 68, 74 (1946) (notice and knowledge of executor imputed to estate through principal-agent relationship).

[2] On May 1, 2001, Brown & Wood merged with Sidley & Austin. The merged firm was named Sidley Austin Brown & Wood LLP. On January 1, 2006, the name of the merged firm was changed to Sidley Austin LLP. The Complaint uses Sidley as shorthand for all of these entities. Sidley refers to both Brown & Wood and Sidley throughout this motion as appropriate.

breach of contract, professional negligence, negligent misrepresentation, and common-law indemnification and seeking $56 million in damages.

All four claims should be dismissed—three on timeliness grounds and the fourth on the merits. Georgia's statute of limitations for breach of contract, professional negligence, and negligent misrepresentation (collectively, the "legal malpractice claims") is four years. *See* O.C.G.A. §§ 9-3-25, 9-3-26, 9-3-31. Because these claims accrued in 1997 and the statute of limitations for bringing them expired in 2001, they are untimely.

Tolling does not apply. By statute, Georgia authorizes tolling only when the defendant is "guilty of a fraud" that has "debarred or deterred" the plaintiff from bringing an action, in which case the limitations period is tolled until the fraud is discovered or by reasonable diligence should have been discovered. O.C.G.A. § 9-3-96. The Complaint does not allege that Sidley fraudulently concealed its purported negligence from the Cácereses. Nor does the Complaint allege that the Cácereses acted diligently to uncover their claims at any point over the last two decades—not even after the Internal Revenue Service ("IRS") filed a complaint in 2018 seeking $56 million in unpaid tax liabilities and interest from the Cácereses arising out of the same 1997 transaction that was the subject of Ruble's tax shelter letter (the "IRS action").

These omissions are fatal to any attempt by the Cácereses to salvage their untimely claims. But even if they were not, the end result would still be the same because the claims are untimely even with tolling. As the Complaint itself alleges, the IRS action "seeks to do precisely what Sidley assured the Cácereses [the IRS] could not and *would not do*." Compl. ¶ 22 (emphasis added). The Cácereses therefore had actual notice of their legal malpractice claims against Sidley in 2018—five years before this action was filed. Because it is apparent from the face of the Complaint that the legal malpractice claims are untimely—with or without tolling—the Court should dismiss them with prejudice.

The Cácereses' remaining claim, for common-law indemnification, fares no better. Common-law indemnification is a vicarious liability claim that applies only when the plaintiff was "compelled to pay damages because of liability imputed to him as the result of a tort committed by another." *Auto-Owners Ins. v. Anderson*, 252 Ga. App. 361, 363 (2001). The Complaint does not allege that the IRS (or anyone else) is seeking to hold the Cácereses vicariously liable for Sidley's conduct. Rather, the Complaint alleges that Sidley breached its professional and contractual obligations to the Cácereses and that by heeding the advice in the tax opinion letter, the Cácereses may now be required to pay millions of dollars to the

IRS in unpaid taxes and penalties. As a matter of law, those allegations do not state a claim for relief for common-law indemnification.

Sidley respectfully requests that the Court dismiss the Complaint.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

**A.     The 1997 Tax Opinion Letter**

The Cácereses are two brothers, who along with their father, Alfredo Cáceres, were highly successful businessmen who served as officers of United Poultry Corp. ("UPC") and controlled 100% of UPC's stock. Compl. ¶¶ 5–8, 14. At all relevant times, UPC's sole asset was a 50.5% interest in Belca Foodservice Corporation ("Belca"), which had "appreciated substantially." *Id.* ¶¶ 14, 17. "The Cácereses were instrumental in building Belca into a food service business worth hundreds of millions of dollars through acquisitions and franchising." *Id.* ¶ 14. On January 31, 1997, the Cácereses and their father sold UPC's Belca interest (the "Belca sale"). *Id.* ¶ 18. According to the Complaint, "[i]f UPC liquidated its Belca stock and directly distributed the proceeds to the Cácereses, there would be a dual taxation on the transaction." Compl. ¶ 17. Specifically, the Complaint alleges that there would be both "a capital gains tax on

---

[3] For purposes of this motion only, Sidley accepts as true the well-pleaded allegations of the Complaint.

the Belca stock" because it had appreciated over time as well as an individual tax on the Cácereses' "respective share[s] of the distribution." *Id.*

Seeking to avoid this "dual taxation," the Cácereses planned to sell all of their UPC stock to a third-party entity and resign their positions as officers, employees, and directors at UPC. *Id.* ¶¶ 2, 18. Before executing this plan, the Cácereses allege that they hired Brown & Wood as "special federal income tax counsel" to provide an opinion "confirming" that if they sold all of their UPC stock, they could "legitimately minimize[] the tax consequences to [themselves]" arising out of the Belca sale and its proceeds. *Id.* ¶¶ 2, 20. The Cácereses allege that they asked Ruble to provide an opinion as to whether they would be individually liable for UPC's capital gains tax if neither UPC nor the third-party to whom they planned to sell their UPC shares paid the required tax. *Id.* ¶ 20. The Cácereses allege that they also retained KPMG LLP ("KPMG") to "prepar[e] transaction documents," "deal[] with third parties as" their agent, and otherwise provide "tax related advice" in connection with the Belca sale. *Id.* ¶ 15.

The Cácereses allege Ruble prepared (and Brown & Wood received payment for) a single tax opinion letter that opined the Cácereses "could *not* be held liable" for UPC's unpaid capital gains taxes if they sold their UPC stock because of the nature of the transaction. *Id.* ¶¶ 11, 21, 43, 65. Purportedly relying

on that opinion, the Cácereses sold their UPC stock to third-party UP Acquisitions on April 10, 1997. *Id.* ¶¶ 11, 18, 27. Neither UPC nor UP Acquisitions paid any capital gains tax on the proceeds from the Belca sale. *Id.* ¶¶ 26, 28, 29.

### B.   The 2018 IRS Action Against the Cácereses

On June 27, 2018, the IRS filed a forty-two page complaint (the "IRS complaint") in this court against UPC (which had changed its name to Henco Holding Corp.), the Cácereses and their father, and a trust run by Luis Angel Cáceres. *See* Request for Judicial Notice, Ex. A (IRS Complaint).[4] The IRS complaint sought to recover more than $56 million in unpaid tax liabilities from the Cácereses and detailed the unlawful nature of the tax shelter the Cácereses used to evade taxes on the Belca sale. *Id.* ¶¶ 12, 15–99.

The IRS complaint alleged that as early as 1996, the Cácereses "were aware of and sought to avoid . . . dual taxation" of the Belca proceeds, which totaled approximately $37 million and were subject to an approximately $13 million

---

[4] The Supreme Court has held that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, *in particular*, documents incorporated into the complaint by reference." *Tellabs, Inc. v. Major Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007); *see also Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (district court "may take judicial notice" of pleadings in another case "without converting a motion to dismiss into a motion for summary judgment"). That includes the IRS's complaint against the Cácereses, which the Complaint here liberally references. *See* Compl. ¶¶ 4, 22, 29–32.

capital gains tax on top of the individual shareholder taxes. *Id.* ¶¶ 24. The IRS complaint alleged that the Cácereses accomplished their goal by "engag[ing] in a sham sale of [UPC's] stock to an intermediary," UP Acquisitions, that was "in substance a liquidation of [UPC] and distribution of its assets" to the Cácereses. *Id.* ¶¶ 25–26. According to the IRS complaint, UP Acquisitions took out a loan to pay the Cácereses for their UPC stock and, after acquiring UPC, immediately repaid that loan with the proceeds from the Belca sale. *Id.* ¶¶ 36, 46–47. In essence, the IRS alleged that UP Acquisitions paid the Cácereses with the proceeds of the Belca sale. *Id.* ¶¶ 26–27, 38–39, 46–47, 55–71.

Because this was not, on paper at least, a liquidation followed by a direct transfer of proceeds to shareholders, and because neither UPC nor UP Acquisitions ever paid the capital gains tax (which was artificially offset through a tax shelter), *id.* ¶¶ 83–97, the Cácereses and their father received approximately $33.5 million out of $37 million in proceeds[5] from the Belca sale and avoided paying approximately $13 million in capital gains taxes. *Id.* ¶¶ 98–99.

The IRS complaint explained, in detail, that the Cácereses' scheme to avoid paying taxes was unlawful. *See generally id.* It acknowledged that Ruble had

---

[5] UP Acquisitions retained the remaining $3.5 million as a fee for facilitating the sham exchange. *Id.* ¶¶ 36, 98.

"draft[ed] a tax opinion letter purporting to release [the Cácereses] of personal liability for [UPC's] capital gains taxes. *Id.*¶ 38. But it went on to describe how "in 2008, Mr. Ruble was convicted for writing tax opinion letters that blessed bogus tax shelters," that he had written "about 600 such letters," and that he "received a sentence of six-and-a-half years" as a result. *Id.* ¶¶ 38–39.

In light of UPC's insolvent status, the IRS complaint sought to hold the Cácereses liable "for the fraudulent transfer of [UPC's] assets" and UPC's unpaid tax liabilities and included four counts of fraudulent transfer. *Id.* ¶¶ 13, 125–177. The Cácereses successfully moved to dismiss all four counts on statute of limitations grounds under a specific federal statute. *See United States v. Henco Holding Corp.*, No. 1:18-CV-03093-CAP, 2019 WL 12434673, at *7 (N.D. Ga. May 14, 2019). On January 19, 2021, however, the Eleventh Circuit reversed the district court's decision and remanded for further proceedings, which are stayed pending settlement discussions.[6] *See United States v. Henco Holding Corp.*, 985 F.3d 1290, 1292 (11th Cir. 2021); RJN, Ex. B (IRS Docket).

---

[6] The statute of limitations issue in the IRS action and appeal concerned whether the government's action was timely under 26 U.S.C. § 6502, which provides for a 10-year period for the government to recover certain tax liabilities. *United States v. Henco Holding Corp.*, 985 F.3d at 1305. At issue was whether the IRS could rely on its 2007 assessment of taxes against UPC under the federal statute (in which case the action was timely) or whether the IRS was required to separately assess

**C.     This Action**

Fifteen years after Ruble's conviction for tax evasion, and more than four years after the IRS filed its complaint against the Cácereses for their 1997 transaction, the Cácereses filed their Complaint against Sidley in Fulton County State Court. On February 27, 2023, Sidley removed the action to federal court pursuant to 28 U.S.C. § 1332.

The Complaint incorporates numerous allegations from the IRS complaint, including allegations that: (i) UP Acquisitions was not a "legitimate intermediary" that could offset income with loss assets; (ii) UPC's corporate gains from the Belca sale were sheltered using "Son of BOSS transactions"; and (iii) UP Acquisitions was an "insolvent intermediary," which meant the Cácereses would be "on the hook for any taxes owed" on UPC's capital gains from the Belca sale. *Compare* Compl. ¶¶ 25–26 *with* RJN, Ex. A ¶¶ 15–16 (sale of UPC stock was a "sham sale"), 26 (UP Acquisitions was a "special purpose vehicle"); 44 (UP Acquisitions "lacked the money to purchase" UPC stock), 83–97 (use of "Son of Boss" tax shelters).

---

tax liabilities against the Cácereses for UPC's unpaid tax liabilities (in which case the action would be untimely). *Id.* Those issues have no bearing on the timeliness of the Cácereses' state law claims here.

Based on these allegations, the Cácereses now seek damages of up to $56 million from Sidley for breach of contract, negligent misrepresentation, professional negligence, and common-law indemnification. Compl. ¶ 4.

## LEGAL STANDARD

To withstand dismissal under Federal Rules of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Am. Proteins, Inc. v. River Valley Ingredients, LLC*, __ F. Supp. 3d __, No. 2:22-CV-91-RWS, 2022 WL 16827602, at *4 (N.D. Ga. Nov. 8, 2022) (citation and internal quotation marks omitted). "A claim to relief is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.* The court may rely on its "judicial experience and common sense" when deciding whether an inference can be reasonably drawn. *Muhammad v. JP Morgan Chase Co.*, 1:15-CV-0107-AT, 2015 WL 13777036, at *2 n.2 (N.D. Ga. July 30, 2015). The court need not accept as true any legal conclusions that are cast in the complaint as factual allegations or any allegations "that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice." *Mintu v. Ocwen Loan Servicing, LLC*, No. 1:12-cv-2917-TCB, 2012 WL 12844929, at *1 n.2 (N.D. Ga. Nov. 13, 2012).

# ARGUMENT

Basic principles of law foreclose each of the Cácereses' claims against Sidley. First, the Cácereses' claims for breach of contract, professional negligence, and negligent misrepresentation are plainly untimely because they accrued in 1997, and the applicable four-year statute of limitations expired in 2001. Nothing in the Complaint suggests that tolling would apply under the relevant Georgia statute, and in fact, the Complaint's reference to the IRS action confirms that any possible tolling ended more than four years before the Cácereses filed this action.

Second, the Cácereses' claim for common-law indemnification fails as a matter of law because it relies on a theory of liability that Georgia courts have consistently rejected. Common-law indemnification requires proof of a relationship between the plaintiff and defendant (such as that between agents and principals) that would give rise to vicarious liability. *See City of College Park v. Fortenberry*, 271 Ga. App. 446, 451 (2005). The Complaint alleges no such relationship. Rather, the Complaint bases its common-law indemnification claim solely on allegations that Sidley acted tortiously *against the Cacereses*. That is not a proper claim for common-law indemnification under Georgia law, and must be dismissed.

**A.      The Cácereses' Claims for Breach of Contract, Professional Negligence, and Negligent Misrepresentation Are Untimely**

Although statute of limitations is an affirmative defense that typically cannot be raised on a motion to dismiss, the Eleventh Circuit has recognized an exception to this rule: "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred." *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (citation and internal quotation marks omitted); *see also Dist. 65 Retirement Trust v. Prudential Sec., Inc.*, 925 F. Supp. 1551, 1558 n.7 (N.D. Ga. 1996). Because it is obvious from the face of the Complaint that the Cácereses' legal malpractice claims are untimely, with or without tolling, the Court should dismiss them. *See Gonsalvez*, 750 F.3d at 1197.

**1.      The Statute of Limitations Expired in 2001**

In Georgia, the statute of limitations for breach of contract and professional negligence actions begins to run "when the first breach of the agreement occurs," *James Settlement Servs. Int'l, LLC v. Conestoga Trust Servs., LLC*, No. 1:17-CV-4680-CAP, 2020 WL 10147065, at *11 (N.D. Ga. Sept. 30, 2020), and from the "date the attorney breached the duty owed to the client," *Hoffman v. Ins. Co. of N.A.*, 241 Ga. 328, 329 (1978). The limitations period for negligent misrepresentation claims begins to run when the plaintiff first "suffers pecuniary

loss" due to the defendant's misrepresentations. *Coe v. Proskauer Rose, LLP*, 314 Ga. 519, 526, 528 (2022). Applying these well-established principles of law to the Complaint's allegations, it is clear that the limitations period for each of the Cácereses' legal malpractice claims began running in 1997 and expired in 2001.

The Complaint alleges that Sidley breached its professional obligations to the Cácereses by providing negligent advice and omitting what the Complaint alleges was critical information from Ruble's 1997 opinion letter. *See* Compl. ¶¶ 34–36, 43, 53, 57. Accordingly, the Cácereses' breach of contract and professional negligence claims accrued when the Cácereses received that letter, which though not alleged must have been on or before April 10, 1997—the date the Cácereses purportedly sold their UPC stock in reliance on the opinion letter. *See* Compl. ¶¶ 2, 18.

The calculation is similarly straightforward for the Cácereses' negligent misrepresentation claim. In *Coe*, the Georgia Supreme Court held that plaintiffs suffer a concrete pecuniary loss sufficient to trigger the limitations period for negligent misrepresentation when they pay their attorneys' fees for a flawed opinion letter. 314 Ga. at 528. Here, the Complaint alleges that Sidley "accepted payment" in exchange for preparing the 1997 opinion letter. Compl. ¶ 11.

Having accrued in 1997, the legal malpractice claims are untimely under the applicable four-year limitations period. "It has long been the law in [Georgia] that a cause of action for legal malpractice, alleging negligence or unskillfulness is subject to the four-year statute of limitation in OCGA § 9-3-25." *Armstrong v. Cuffie*, 311 Ga. 791, 793 n.4 (2021) (alterations adopted, citation and internal quotation marks omitted). That same four-year statute of limitations applies to claims for negligent misrepresentation and breach of contract. *See* O.C.G.A. §§ 9-3-25 (breach of contract), 9-3-31 (negligent misrepresentation); *see also Coe*, 314 Ga. at 524 (negligent misrepresentation); *Kilby v. Shepherd*, 177 Ga. App. 462, 463 (1986) (breach of contract malpractice claim). Accordingly, the Cácereses had until 2001 to timely bring their legal malpractice claims. They did not. Instead, they filed this action *twenty-two years later*, long after the statute of limitations had expired.

### 2.     The Complaint Does Not Allege Any Facts That Would Toll the Statute of Limitations

Because the dates alleged in the Complaint make clear that the Cácereses' legal malpractice claims are untimely, the claims must be dismissed unless the Complaint alleges facts that would toll the limitations period. *See Klopfenstein v. Deutsche Bank Sec., Inc.*, 592 F. App'x 812, 815 (11th Cir. 2014). The Complaint here is devoid of any allegations that would trigger tolling, including any that

explain, much less justify, the five-year delay in filing the Complaint after the
Cácereses were sued by the IRS in 2018 for this very tax-shelter transaction.

By statute, a plaintiff who seeks to toll a limitation period under O.C.G.A.
§ 9-3-96 "must make three showings: first, that the defendant committed actual
fraud; second, that the fraud concealed the cause of action from the plaintiff, such
that the plaintiff was debarred or deterred from bringing an action; and third, that
the plaintiff exercised reasonable diligence to discover his cause of action despite
his failure to do so within the statute of limitation." *Coe*, 314 Ga. at 529 (citation
and internal quotation marks omitted). For legal malpractice actions, tolling applies
"only upon a showing of a *separate independent* actual fraud involving moral
turpitude which deters a plaintiff from filing suit." *Shores v. Troglin*, 260 Ga. App.
696, 696 (2003) (citation and internal quotation marks omitted, emphasis added).
Thus, where, as here "the gravamen of the action is other than actual fraud, such as
. . . negligence, breach of contract, etc.," "there must be a separate independent
actual fraud involving moral turpitude which debars and deters the plaintiff from
bringing his action" for tolling to apply. *Shipman v. Horizon Corp.*, 245 Ga. 808,
809 (1980).

Nothing in the Complaint suggests that the statutory requirements for tolling
have been met here. The Complaint repeatedly alleges that Sidley "duped" the

Cácereses into thinking that the IRS would not hold them responsible for any of UPC's unpaid taxes by omitting from the 1997 opinion letter information that Ruble allegedly knew. *See, e.g.*, Compl. ¶¶ 3, 23–25 (alleging "Sidley concealed materials facts about the UPC Transaction when it opined about its legality"). That is a run-of-the-mill claim for legal malpractice; it is not an allegation that Sidley committed a "separate" fraud on the Cácereses that prevented them from discovering their claim. *See McElmurray v. Augusta-Richmond Cnty.*, 274 Ga. App. 605, 614–15 (2005) ("[T]he fraud in question is not that which gives a cause of action, but that which *conceals* a cause of action." (emphasis added, citation and internal quotation marks omitted)).

Nor are there any allegations in the Complaint that suggest the Cácereses "exercised reasonable diligence to discover" their legal malpractice claims. *Doe v. Saint Joseph's Cath. Church*, 313 Ga. 558, 561 (2022). Quite the opposite. The Complaint alleges that "[t]he IRS sued the Cácereses for $56 million in unpaid tax liabilities of UPC in 2018"—five years before the Cácereses commenced this action. Compl. ¶ 29. According to the Complaint, through the IRS action, "[t]he U.S. government now seeks to do precisely what Sidley assured the Cácereses it could not and *would not* do: hold the Cácereses liable for a transfer of corporate assets by applying the 'step transaction' doctrine to the UPC Transaction." *Id.* ¶ 22

(emphasis added). The Complaint does not identify "any reasonably diligent steps" undertaken by the Cácereses to explain having waited five years to bring this action. *See Klopfenstein*, 592 F. App'x at 815–16 (tolling conditions not met where the plaintiff did not "identify any reasonably diligent steps he took in light of [prior] lawsuit to explore his own potential claims").

At most, the Complaint attempts to attribute some of the Cácereses' delay to the Eleventh Circuit's decision in 2021 reinstating the IRS action as timely. *See* Compl. ¶¶ 29–31. Prior to that decision, the Complaint alleges "the Cácereses had no reason to believe that Sidley's advice was incorrect or that the Cácereses would suffer any injury associated with the UPC transaction." *See* Compl. ¶ 31.

That self-serving assertion is flatly contradicted by the Complaint. As the Complaint itself alleges, Ruble's tax letter was specifically prepared to assure the Cácereses that "the IRS would respect the UPC transaction" and would not seek to hold them liable for any of UPC's unpaid tax liabilities. *Id.* ¶ 53. The fact that the IRS subsequently filed a 42-page complaint against the Cácereses seeking to do just that meant that Sidley's advice was "wrong," *id.* ¶ 22, irrespective of the timeliness of the IRS action, and thus triggered the Cacereses' obligation to investigate their claims. *See Klopfenstein*, 592 F. App'x at 815 (receipt of information that directly "conflicted" with the defendants' representations

17

triggered obligation to exercise "reasonable diligence"). Yet for five years, the
Cácereses did nothing. That is not reasonable diligence. It is "complete inaction,"
*Melson v. Comm'r, Ala. Dep't of Corr.*, 713 F.3d 1086, 1090 (11th Cir. 2013), for
which tolling is unavailable.

"A plaintiff cannot sit quietly by for a length of time exceeding that named
in the statute of limitations, and . . . save his cause of action by the mere allegation
that he made the discovery only recently." *Evans v. Lipscomb*, 266 Ga. 767, 770
(1996) (citation and internal quotation marks omitted). Because the Complaint
does not include any allegations that would support tolling the limitations period
under O.C.G.A. § 9-3-96, the Cácereses' legal malpractice claims expired in 2001
and must be dismissed. *See, e.g.*, *Lindley v. FDIC*, No. 4:ll–cv–147, 2012 WL
27576, at *6 (S.D. Ga. Jan. 4, 2012) (concluding fraud and misrepresentation
claims were untimely because the plaintiff "allege[d] no fraud that kept her from
filing her suit on time").

### 3.      Even With Tolling, the Legal Malpractice Claims Are Untimely

Even assuming *arguendo* that tolling could apply (it does not), dismissal is
nonetheless warranted because it is clear from the face of the Complaint that even
with tolling, the legal malpractice claims are untimely.

Tolling under O.C.G.A. § 9-3-96 extends only "until such time as the fraudulent conduct was discovered, or by exercise of due diligence ought to have been discovered." *Dunn v. Towle*, 170 Ga. App. 487, 488 (1984). Based on the Complaint's allegations, the IRS action clearly put the Cácereses on actual notice of their legal malpractice claims against Sidley in 2018, at which point any tolling would have ended and the four-year statute of limitations period for those claims would have commenced again. The Cácereses thus had until 2022 to file their complaint. Instead, they filed their action in 2023.

It is difficult to imagine a more clear-cut example of a complaint that is on its face untimely. As discussed above, *see supra* pp. 16–17, the Cácereses' legal malpractice claims against Sidley are based on Ruble's purportedly negligent representations that the transaction "'should' survive IRS scrutiny" and that the Cácereses "would not be responsible for [UPC's] tax liability as transferees." Compl. ¶¶ 38, 43, 57. On June 27, 2018, the IRS filed its action against the Cácereses. RJN, Ex. A. The IRS's 42-page complaint explained, in detail, (i) why the "sham" transaction the Cácereses had engaged in did *not* survive scrutiny; and (ii) why the Cácereses were liable for UPC's unpaid tax liabilities and the amount of those liabilities. *See generally id.* The Complaint acknowledges that the filing of the IRS action meant that "Sidley's opinion was wrong." Compl. ¶ 22. At that

point, the Cácereses had actual notice (or at the very least, constructive notice) of their legal malpractice claims against Sidley, and any tolling would have ended. *See* O.C.G.A. § 9-3-96.

The Eleventh Circuit's decision in *Klopfenstein* is instructive. In that case, the plaintiff sued Deutsche Bank Securities for providing him with opinion letters wrongly certifying that the tax shelter transactions he planned to engage in "had economic substance" and were legitimate. *Klopfenstein*, 592 F. App'x at 813. The plaintiff relied on those letters to claim millions of dollars in tax losses from 1996 to 2000, which reduced his taxable income each year. *Id.* In the fall of 2000, however, the IRS sent the plaintiff a statutory notice of deficiency that notified him the IRS "intended to disallow the deductions he had taken" because the tax shelter transaction "lacked economic substance." *Id.* Thirteen years later, the plaintiff sued Deutsche Bank for fraud, breach of fiduciary duty, and violations of Georgia's RICO statute arising out of its fraudulent opinion letters. *Id.* at 814.

The Eleventh Circuit affirmed the dismissal of his claims as time-barred. *Id.* at 816. As the Eleventh Circuit explained, the IRS's notice sent in the fall of 2000 provided the plaintiff with "direct information that conflicted with [the defendant's] representation that the tax shelter transactions at issue had economic substance." *Id.* at 815 (citation and internal quotation marks omitted). Accordingly,

the plaintiff was "on notice that the Deutsche Bank entities' representation may have been false" in 2000, rendering his claims untimely. *Id.*

The facts in this case, as alleged in the Complaint, are even stronger than they were in *Klopfenstein*. Here, the IRS expressly sued the Cácereses on a theory of liability that Ruble's opinion letter opined the IRS could not employ. *See* Compl. ¶ 22. The IRS complaint also alleged that the very lawyer the Cácereses say they relied upon had been convicted a decade ago "for writing tax opinion letters that blessed bogus tax shelters." *Id.* ¶ 39. That is a textbook example of actual notice. *See MacDowell v. Gallant*, 344 Ga. App. 856, 863 (2018). The fact that the Complaint incorporates many of the allegations in the IRS's complaint against the Cácereses, *see supra* pp. 9–10, further confirms that the Cácereses were on actual notice of their claims by June 27, 2018, when the IRS filed its complaint, and that any tolling would have ended on that date. *See Yancy v. Cothran*, 32 F. 687, 690–91 (N.D. Ga. 1887) (concluding plaintiff was on notice when there was a legal proceeding concerning the same subject and rejecting argument that plaintiff "had a right to wait until the termination of that suit" to see who prevailed before filing suit). The Cácereses therefore had until June 27, 2022—four years after the IRS filed its action—to bring their legal malpractice claims. They filed the Complaint on January 13, 2023, more than half a year too late.

21

Because it is apparent from the face of the Complaint that any tolling would have ended before the Cácereses brought their legal malpractice claims, the Court should dismiss them. *See Horne*, 304 F. Supp. 3d at 1338.

### B. The Cácereses' Common-Law Indemnification Claim Fails to State a Claim for Relief

The Court should also dismiss the Cácereses' common-law indemnification claim because it fails to state a claim for relief. "[U]nder Georgia law indemnity is defined as the obligation or duty resting on one person to make good any loss or damage another has incurred by *acting at his request or for his benefit*." *Dist. Owners Ass'n, Inc. v. AMEC Env't Infrastructure, Inc.*, 322 Ga. App. 713, 715 (2013) (citation and internal quotation marks omitted, emphasis added). A claim for common-law indemnification exists only if "a person is compelled to pay damages because of negligence *imputed* to him as the result of a tort committed by another." *Espinoza v. Herc Rentals, Inc.*, No. 1:19-cv-00958-SDG, 2020 WL 13532585, at *6 (N.D. Ga. Jan 14, 2020) (citation and internal quotation marks omitted).

The Complaint is devoid of any allegations of vicarious or imputed liability. Instead, the Complaint alleges (i) that Sidley acted negligently towards the Cácereses in representing that the tax shelter transaction could lawfully minimize their tax obligations; and (ii) that the IRS now seeks to recover millions of dollars

from the Cácereses in unpaid taxes. Compl. ¶¶ 62–68. As courts in Georgia have recognized, that is a straightforward claim for professional negligence or breach of contract—it is not a claim for common-law indemnification. *See, e.g.*, *Hines v. Holland*, 334 Ga. App. 292, 296 (2015) (claim that defendant breached standard of care against the plaintiff is not a claim for common-law indemnification).

The Complaint nonetheless attempts to cloak its legal malpractice claims in the garb of common-law indemnification by alleging that the Cácereses' "potential liability" in the IRS action "turns on [their] alleged knowledge" of fraud, which knowledge the "IRS seeks to impute to Plaintiffs through Sidley." Compl. ¶ 67. That is not enough. Setting aside the fact that imputed *knowledge* is not the same as imputed *liability*, the IRS's fraudulent transfer claims against the Cácereses are clearly predicated on the Cácereses' *own conduct and purported wrongdoing*. The IRS complaint specifically alleges that the Cácereses formulated a plan as early as September 9, 1996, to "avoid double taxation" on the proceeds from the Belca sale. RJN, Ex. A ¶ 24. The IRS complaint further alleges that the Cácereses "knew . . . neither [UPC]" nor its purchaser "intended to pay capital gains taxes" and retained Ruble specifically to prepare an opinion letter that would "release them of personal liability" for the unpaid capital gains tax. *Id.* ¶¶ 38, 40. And the IRS complaint alleges that the Cácereses agreed to pay UP Acquisitions a fee "based on a

percentage of the capital gains on which [UPC] evaded taxes," quoting from communications that the Cácereses purportedly penned themselves. *Id.* ¶ 41.

Based on these allegations, the IRS action charges that the Cácereses committed fraudulent transfer by intentionally and knowingly evading taxes. That is an action predicated on the Cácereses' *own* wrongdoing—not an attempt to hold the Cácereses vicariously responsible for Sidley's negligent opinion, for which the Cácereses may seek indemnification. Accordingly, the Cácereses' claim for common-law indemnification fails as a matter of law. *See, e.g.*, *Douglas v. HERC Rentals, Inc.*, 1:19-CV-01084-JPB, 2021 WL 3852063, at *5 (N.D. Ga. Aug. 27, 2021).

## **CONCLUSION**

For the foregoing reasons, Sidley respectfully requests that the Cácereses' Complaint be dismissed in its entirety with prejudice.


DATED:  March 13, 2023          CAPLAN COBB LLC

                                By:     */s/ Michael A. Caplan*
                                _____

                                MICHAEL A. CAPLAN (GA Bar No. 601039)
                                mcaplan@caplancobb.com
                                JARRED A. KLORFEIN (GA Bar No. 562965)
                                jklorfein@caplancobb.com

CAPLAN COBB LLC
75 Fourteenth Street, N.E.
Suite 2700
Atlanta, Georgia 30309
Telephone:  (404) 596-5600
Facsimile:   (404) 596-5604

DATED:  March 13, 2023          MUNGER, TOLLES & OLSON LLP

By:  _____/s/ Brad D. Brian_____
BRAD D. BRIAN (*pro hac vice*)
brad.brian@mto.com
JOHN B. MAJOR (*pro hac vice*)
john.major@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

XIAONAN APRIL HU (*pro hac vice*)
april.hu@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500E
Washington, D.C. 20001-5369
Telephone:  (202) 220-1100
Facsimile:   (202) 220-2300

*Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing was prepared in Times New Roman font,

14-point type, and complies with Local Rule 5.1(C).

This 13th day of March, 2023.

*/s/ Michael A. Caplan*
MICHAEL A. CAPLAN
GA Bar No. 601039
mcaplan@caplancobb.com

*Attorney for Defendant*

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2023, I electronically filed the foregoing document through the Court's CM/ECF system, which will automatically send electronic notification of such filing to all counsel of record.

This 13th day of March, 2023.

*/s/ Michael A. Caplan*
MICHAEL A. CAPLAN
GA Bar No. 601039
mcaplan@caplancobb.com

*Attorney for Defendant*