# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Luis Alfredo Cáceres and | ) | |
| Luis Angel Cáceres, Individually, | ) | |
| as executor of the Estate of Alfredo | ) | |
| Cáceres, and as trustee of the Luis | ) | |
| Angel Cáceres Charitable | ) | |
| Remainder Unitrust, | ) | |
| | ) | Case No. 1:23-CV-00844-SDG |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Sidley Austin LLP, | ) | |
| | ) | |
| Defendant. | ) | |

## CÁCERESES' RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Until 2021, the Cácereses suffered no cognizable injury, and in fact substantially benefited, from the tax-minimizing deal structure Sidley recommended. The Cácereses' reporting of the UPC Transaction drew no negative attention from the IRS whatsoever between 1998, when it was first reported, and 2018, when the IRS sued them. During that time, they had no reason to suspect Sidley had provided faulty advice, nor that they were harmed by following Sidley's advice. Sidley, however, knew the counterparty with

whom the Cácereses dealt was a serial tax shelter promoter—and failed to disclose this information to the Cácereses at any point. When the IRS began to pursue them for the unpaid debts of Henco Holding Corp., the Cácereses quickly secured dismissal of the IRS claims as untimely—only to later have that decision reversed on appeal. Now, the Cácereses face the possibility of $56 million in tax liability because they followed Sidley's faulty advice.

Had the Cácereses filed claims against Sidley at any time between 1998 and 2021, those claims would have been unsustainable because the Cácereses suffered no damages, and any claim to the contrary would have been mere speculation. *Raak Techs., Inc. v. Marx CryptoTech, LP*, 2016 WL 9451440, at *3 (N.D. Ga. May 2, 2016) ("[t]he 'true test to determine when the cause of action accrued is "to ascertain the time when the plaintiff could first have maintained his action to a successful result."'") (quoting *Gamble v. Lovett Sch.*, 180 Ga. App. 708, 710, 350 S.E.2d 311, 312-13 (1986) (additional citation omitted). When it was advantageous to do so, Sidley successfully obtained dismissal of a client's tax shelter malpractice claim as unripe for this very reason. *See, e.g., Loftin v. KPMG, LLP*, No. 02–81166–CIV, 2003 WL 22225621, at *8-9 (S.D. Fla. 2002) (dismissing tax shelter malpractice claim against Sidley as not ripe until plaintiff reached

final resolution against the IRS). For this reason, the Cácereses' claims are timely under well-established Georgia law because the damages they seek did not arise and they had no cognizable malpractice claim until 2021. In addition, there are questions of fact regarding whether the statute of limitations was tolled due to Sidley's deliberate concealment of the basis for their cause of action. Regardless, Sidley does not dispute the timeliness of the Cácereses' claim for common-law indemnity, but instead asks the Court to ignore the allegations in the Complaint supporting that claim. Both arguments fail, and Sidley's Motion to Dismiss should be denied at this preliminary stage of the case.

## Factual Background

The Cácereses controlled 100% of the stock of UPC Holding Corp. ("UPC"), the sole asset of which was a 50.5% interest in a food service business they helped start from scratch worth hundreds of millions of dollars, Belca Foodservice Corp. ("Belca"). Compl. ¶¶ 1, 14. On January 31, 1997, the Cácereses sold UPC's interest in Belca to an unrelated third party, and then in April of that year, sold their UPC stock to UP Acquisitions, a subsidiary of Skandia Capital Group (the "UPC Transaction"). *Id.* ¶¶2, 18. UPC was eventually renamed Henco Holding Corp. ("Henco"). *Id.* ¶9.

Prior to the UPC Transaction, the Cácereses retained Sidley as special tax counsel to provide an independent tax opinion confirming that the UPC transaction was structured in such a way as to legitimately minimize the tax burden to the Cácereses. *Id.* ¶2. Sidley opined that the Cácereses could not be held liable for any federal income tax imposed on UPC relating to the Henco sale even if UPC and its new owners failed to pay those taxes (as they were obligated to do under the stock purchase agreement). *Id.* ¶¶20-21.

For over twenty years, Sidley's opinion appeared to be correct. But in 2018, the IRS sued the Cácereses for $56 million in unpaid tax liabilities of UPC (the "Tax Litigation"). *Id.* ¶29. In the Tax Litigation, the IRS alleges that the Cácereses engaged in fraudulent transfers under Ga. Code Ann. §§ 18-2-21 and 18-2-22 (as they were in effect in 1997), which require the IRS to prove that the Cácereses had actual knowledge that the intent of the UPC Transaction was to defraud UPC's creditors. *Id.*, ¶64. The IRS's claim was facially untimely—as a district court agreed in May 2019. *Id.* ¶30. Ultimately, however, the Eleventh Circuit disagreed, reinstating the IRS claim in January 2021. *Id.*

The Cácereses brought the present action against Sidley alleging four counts: breach of contract, negligent misrepresentations, professional negligence,

and common-law indemnity. *Id.* ¶¶33-68. The Cácereses allege that Sidley knew, but concealed, material facts about the UPC Transaction, including that the UPC transaction would not legally achieve the promised tax results, *id.* ¶24, that Skandia's intermediary was working in concert with the Cácereses other tax advisors, KPMG LLP (suggesting a conflict of interest) and was insolvent, *id.* ¶¶26-27, and that the IRS would likely conclude that the UPC Transaction was an asset sale and liquidation that would cause the proceeds of the sale to be attributed to the Cácereses, thereby rendering them liable for UPC's corporate taxes as well as their own personal taxes. *Id.* ¶28.

## Legal Standard

Because this action has been removed to federal court, the Federal Rules of Civil Procedure govern the pleading standard applied to the Complaint. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) (denying a motion to dismiss predicated on state-law pleading requirements because "'[t]he rules of procedure that apply in federal cases—even those in which the controlling substantive law is that of a state—are the Federal Rules of Civil Procedure.'") (citations omitted). Those rules require only that a

complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"At the motion to dismiss stage, 'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" *Pries v. GreenPath, Inc.*, 528 F. Supp. 3d 1353, 1355 (M.D. Ga. 2021) (denying motion to dismiss because, although plaintiff pleaded no facts supporting punitive damages, no such damages were sought) (internal quotation marks and citations omitted) (quoting *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011)). Plaintiffs are not required to negate potential affirmative defenses—including a statute of limitations bar—in a complaint. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (denying a motion to dismiss, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred.") (citations omitted) *abrogated on other grounds by Twombly v. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955 (2007).

At this juncture in the case and based solely on the allegations pled, Sidley's motion to dismiss should be denied without prejudice to what the factual record will show.

6

## ARGUMENT

### A. Statute Of Limitations Is an Affirmative Defense that Plaintiffs Need Not Plead Around.

Plaintiffs are not required to plead around affirmative defenses in a complaint; the burden to establish a statute of limitations defense resides with the defendant. Sidley attempts to invert the parties' burden at the pleading stage, contending that the Complaint should be dismissed for failing to allege "the Cácereses acted diligently to uncover their claims." (Br. at 2.) But the law could not be clearer that the Cácereses need not allege any facts that would foreclose a statute of limitations defense. *La Grasta*, 358 F.3d at 845 ("A statute of limitations bar is 'an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint.'") (alteration in original) (quoting *Tregenza v. Great American Comm. Co.*, 12 F.3d 717, 718 (7th Cir. 1993)).

This argument is an attempt to impose a higher standard on the Cácereses at the pleading stage than the Federal Rules of Civil Procedure and well-established case law require. *Ace Tree Surgery, Inc. v. Terex Corp.*, 2018 WL 11350262, at *3 (N.D. Ga. Dec. 10, 2018) (denying motion to dismiss on statute of limitations grounds because "a plaintiff has no obligation to anticipate and negate such a defense in his complaint.") (citations omitted)). To do so inverts

the burden of proof and forces the Cácereses to affirmatively plead facts foreclosing affirmative defenses on which Sidley bears the burden of proof. *Smith v. Duff and Phelps, Inc.*, 5 F.3d 488, 492 n. 9 (11th Cir. 1993) ("'It is beyond dispute that the defendants have the burden of proof in establishing the elements of the affirmative defense of the statute of limitations.'").

For this reason alone, Sidley's motion to dismiss the Cácereses' claims for breach of contract, professional negligence, and negligent misrepresentation should be denied.

## B. The Cácereses' Claims Are Timely.

Even if the Cácereses did bear the burden of pleading sufficient facts to defeat a statute of limitations defense, the allegations of the Complaint—particularly when read in the light most favorable to the Cácereses, as they must be on a motion to dismiss—establish that the claims were timely filed.

1. <u>The Cácereses had no cognizable claims until 2021.</u>

Sidley claims that three of the Cácereses four causes of action (breach of contract, professional negligence, and negligent misrepresentation) are time-barred. Not so. The Cácereses entered into a contract with Sidley for tax advice regarding whether the tax treatment of the sale of UPC Holding Corp. stock

8

would be respected if litigated in tax court. Compl. ¶¶20-21. They enjoyed the benefit of that bargain—i.e., reduced taxes on the UPC Transaction—until the Eleventh Circuit reinstated the Tax Litigation against them. *Id.* ¶¶ 1-4, 29-32. Until that time, there was no breach of contract nor any malpractice because Sidley's advice that the Cácereses would not be held personally liable for UPC's corporate taxes had proven true: the Cácereses enjoyed complete freedom from IRS scrutiny for over twenty years from the date of the UPC Transaction in 1997. *Id.* That the IRS first filed suit in 2018 is similarly immaterial, because that claim was immediately dismissed as time-barred in May of 2019, and the Cácereses had no reason to believe they had lost the benefit of their bargain with Sidley until the Eleventh Circuit ultimately reversed and reinstated the Tax Litigation in 2021. *Id.*

Sidley claims that the statute of limitations begins to run when the first breach of the agreement occurs, but "[t]he 'true test to determine when the cause of action accrued is "to ascertain the time when the plaintiff could first have maintained his action to a successful result."'" *Raak Techs.*, 2016 WL 9451440, at *3 (denying motion to dismiss where breach, as alleged by plaintiff, occurred in 2015—not in 2008, as defendant argued) (quoting *Gamble*, 180 Ga. App. at 710,

350 S.E.2d at 312-13). "Under Georgia law, the elements of a breach of contract claim are (i) a valid contract; (ii) material breach of its terms; and (iii) *damages arising from the material breach.*" *Pinder v. John Marshall Law Sch., LLC*, 11 F. Supp. 3d 1208, 1223 (N.D. Ga. 2014) (denying defendant's motion for summary judgment) (emphasis added) (citing *Budget Rent–a–Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278, 279, 469 S.E.2d 712, 713 (Ga. 1996)).

The Cácereses do not allege anything about, nor do they seek to recover, fees paid to Sidley in 1997; nor do they allege or seek to recover defense costs related to the Tax Litigation. Rather, they seek only to recover damages that arise directly from Sidley's negligent opinion—namely, that the Cácereses may be required to pay for the corporate tax obligations of UPC as a result of the Tax Litigation. *See* Compl., ¶¶ 38, 49, 60. The cause of action the Cácereses plead only seeks to recover damages resulting from their direct liability to the IRS, and therefore could only arise once the Eleventh Circuit reinstated the Tax Litigation.

This fact distinguishes the present action from *Coe v. Proskauer Rose, LLP*, which Sidley relies on, because there, "[t]he damages that the Coes alleged with respect to their negligent misrepresentation and fraud claims include the fees that they paid in reliance on what the Coes now contend are misrepresentations

and material nondisclosures." 314 Ga. 519, 528, 878 S.E.2d 235, 243 (2022). Here, where the Cácereses allege nothing about the fees paid nor seek such damages, *Coe* is inapposite on this issue.

Nor did the Cácereses fail to exercise reasonable diligence in discovering the basis for their claims against Sidley. As an initial matter, it is (again) not the Cácereses burden to plead any steps they may have taken that constitute reasonable diligence. *Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 977 (11th Cir. 2015) (denying a motion to dismiss based on a plaintiff's supposedly "dilatory" enforcement of rights: "The complaint's silence regarding what might or might not have happened between 2010 and 2013 did not give the district court license to assume that Twin City had failed to take certain actions during that period.") (per curiam). And it is apparent from the face of the Complaint that the Cácereses were anything but dilatory. Sidley's advice necessarily involved some risk that the Cácereses might have to litigate their tax liability, and the mere filing of an untimely action by the IRS would not have deprived the Cácereses of the benefit of the bargain, let alone shown that Sidley was professionally negligent or made negligent misrepresentations.

Sidley is also mistaken as to the statute of limitations applicable to the Cácereses' breach of contract claim, which is *six* years for written contracts, not four. *Newell Recycling of Atlanta, Inc. v. Jordan Jones and Goulding, Inc.*, 288 Ga. 236, 237, 703 S.E.2d 323, 325 (2010) (denying summary judgment and holding that the six-year statute of limitations contained in OCGA § 9-3-24 applied to a professional malpractice claim based on a written contract, rather than the four-year statute of limitation contained in OCGA § 9-3-25).[1] Thus, even if Sidley were correct that the untimely-filed IRS action triggered the statute of limitations, the Cácereses breach of contract claim would be timely.

————————————————

[1] While the Complaint alleges that Plaintiffs entered into a contract with Sidley for the provision of a written opinion, it does not specify whether that contract was in writing. Compl., ¶¶ 34-39. Under these allegations, "at the very least, an issue of fact exist[s] as to the existence of a written contract." *Newell Recycling of Atlanta, Inc. v. Jordan Jones & Goulding, Inc.*, 288 Ga. 236, 236, 703 S.E.2d 323, 324 (2010). Furthermore, while beyond the four corners of the Complaint, the Cácereses requested a copy of their file from Sidley pre-filing but Sidley claimed it had none. It is reasonable to infer that a sophisticated law firm would provide a tax opinion letter only under a written agreement, so the six-year statute of limitations applies. *See Bailey v. Wheeler*, 843 F.3d 473, 482 (11th Cir. 2016) (denying a motion to dismiss because "a court reviewing a motion to dismiss must draw all reasonable inferences from the factual allegations in a plaintiff's complaint in the plaintiff's favor.") (citing *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010)). Sidley's failure to provide or keep the Cácereses file should not be allowed to prevent discovery of the facts relating to Sidley's liability.

2. <u>Sidley's Conduct Tolled the Cácereses' Claims.</u>

While, as discussed above, *Coe v. Proskauer Rose, LLP* is inapposite to accrual of the Cácereses' claims, it <u>is</u> applicable to Sidley's argument that tolling does not apply. On remarkably parallel facts, the Supreme Court of Georgia recently held that the Coes' negligent misrepresentation claim *was* tolled based on Proskauer Rose, LLP's failure to disclose the basis of the Coes' cause of action, despite having a duty to do so.

Sidley selectively ignores factual allegations that support tolling any applicable statute of limitations, including that "Sidley did not disclose that it knew or should have known that Skandia, as the new owner and manager of UPC, did not intend to pay the taxes owed but would instead use a Son of BOSS tax shelter to avoid paying it," Compl., ¶ 23, that "Sidley knew or should have known, but did not advise the Cácereses, that if the transaction were examined, the IRS would not respect the intermediary as legitimate," *Id.*, ¶ 28, and that prior to the Eleventh Circuit Court of Appeals reinstating the IRS's claims against the Cácereses in 2021, "the Cácereses had no reason to believe that Sidley's advice was incorrect or that the Cácereses would suffer any injury associated with the UPC Transaction." *Id.*, ¶ 31. Each of these allegations belies Sidley's

claim that "[t]he Complaint does not allege that Sidley fraudulently concealed its purported negligence from the Cácereses" (Br. at 2), particularly in light of the allegation that "Sidley owed a duty of care to Plaintiffs which required the transmittal of accurate and not misleading information to Plaintiffs." Compl., ¶ 41.

Under Georgia law, the statute of limitations can be tolled by fraudulent concealment based on a fiduciary's failure to disclose relevant information that would give rise to a claim. *See Goldston v. Bank of Am. Corp.*, 259 Ga. App. 690, 693-94, 577 S.E.2d 864, 868-69 (2003). In keeping with this rule, *Coe* holds that, where a client-plaintiff has a "confidential relationship" with a lawyer-defendant, there is a heightened duty for the lawyer-defendant to disclose or reveal information that could give rise to a cause of action—and a reduced duty on the part of the plaintiff to discover such information. *Coe*, 314 Ga. at 530, 878 S.E.2d at 245 ("a confidential relationship imposes a greater duty on a defendant to reveal what should be revealed, and a lessened duty on the part of a plaintiff to discover what should be discoverable through the exercise of ordinary care."). The Coes' confidential relationship with Proskauer arose because they retained Proskauer to provide them with tax advice, just as here, the Cácereses retained

Sidley to provide them with tax advice—and Sidley therefore had a heightened obligation to disclose any defects in that advice. *Id.* at 531, n.22, 577 S.E.2d at 246, n.22 (rejecting Proskauer's characterization that "information, involving highly complex investment and tax transactions" was "so 'widely known' as to establish, as a matter of law, that the Coes, in exercising reasonable diligence, should have discovered their claims before 2011.").

Sidley also argues that the Cácereses failed to take reasonably diligent steps to discover their causes of action, relying extensively on the unpublished opinion in *Klopfenstein v. Deutsche Bank Securities, Inc.*, 592 F. App'x 812 (11th Cir. 2014). But the Supreme Court of Georgia in *Coe* directly rejected this argument. *Coe*, 314 Ga. at 531, 577 S.E.2d at 245 ("We fail to see why a person exercising reasonable diligence would not be entitled to rely on the disclosure or lack thereof made by his or her attorney even after the legal engagement was completed"). *Coe* is controlling, and Sidley fails to even address its holding on this issue.

Furthermore, whether the Cácereses exercised proper diligence is a question of fact that should be left to a jury, not decided, as the *Coe* court held, on summary judgment—and certainly not at an even earlier stage of the litigation,

on a motion to dismiss before any discovery is obtained. *Id.* at 533, 577 S.E.2d at 247 (citing *Sanders v. Looney*, 247 Ga. 379, 381, 276 S.E.2d 569, 572 (1981)). The Cácereses alleged (and that allegation must be credited as true) that, prior to the IRS reinstating its claim against them in January 2021, they "had no reason to believe that Sidley's advice was incorrect or that the Cácereses would suffer any injury associated with the UPC Transaction." Compl., ¶¶30-31.

Thus, even if the Cácereses' claims arose at some point in time prior to the Eleventh Circuit's 2021 ruling, the contract, negligent misrepresentation, and professional malpractice claims were tolled by Sidley's concealment of material facts that give rise to the Cácereses' claims, or at the very least, those are questions of fact for the jury to decide.

## C. Plaintiffs' Common-Law Indemnity Claim States a Valid Claim for Relief.

Sidley acknowledges that the Cácereses' claim for common-law indemnity is timely under Georgia law, as such claims are subject to a 20-year statute of limitations from the date of an underlying judgment. *Auto-Owners Ins. Co. v. Anderson*, 252 Ga. App. 361, 364, 556 S.E.2d 465, 467 (2001) (denying a motion for summary judgment based on the statute of limitations because "[t]he statute of limitation for a claim of indemnity is 20 years from the settlement or final

judgment"). Sidley nonetheless seeks to dismiss the indemnity claim on the grounds that the Complaint is "devoid of any allegations of vicarious or imputed liability," but this ignores the Cácereses' allegations that the imposition of transferee liability in the Tax Litigation is due to knowledge imputed to them through Sidley's negligent misrepresentations and professional negligence.

"An action for indemnity allows one who has been required to pay damages caused by the tort of a third party to recover against that party; indemnification contemplates imputed liability arising from the torts of another." *Emergency Professionals of Atlanta v. Watson*, 288 Ga. App. 473, 475, 654 S.E.2d 434, 436 (2007) (citing *Auto-Owners Ins. Co. v. Anderson*, 252 Ga. App. 361, 363 (2001)). Long-established Georgia law holds that the common-law "duty to indemnify arises 'by operation of **law**, *independently of* **contract**.'" *Harris v. Albany Lime & Cement Co.*, 291 Ga. App. 474, 478, 662 S.E.2d 160, 164 (2008) (emphasis in original) (citing *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 557, 583 S.E.2d 220, 224 (2003).

The Cácereses allege that as result of the Tax Litigation they may be required to pay the IRS for UPC's unpaid tax liability, which now exceeds $50 million. Compl., ¶¶ 4, 38, 49, 60, 68. The Cácereses also allege Sidley has

committed tortious acts—specifically, negligent misrepresentations and professional negligence resulting from Sidley's knowledge of the scheme. *Id.* ¶ 63. The only remaining element the Cácereses must plead to establish common law indemnity is that their liability in the Tax Litigation arises out of imputation of Sidley's tortious acts. The Cácereses have done so.

The Cácereses' potential liability to the IRS in the Tax Litigation arises under Georgia's transferee liability statute (Ga. Code Ann. §§ 18-2-21 and 18-2-22, as they were effective in 1997), which is predicated on the IRS proving that the UPC Transaction was executed with the *intent* to defraud UPC's creditors (namely, the IRS), and that the Cácereses knew or should have known of that intent. *Id.* ¶ 64. The evidence of what the Cácereses knew (or should have known) in the Tax Litigation includes whatever knowledge its advisors knew. *See, e.g., Tricarichi v. Commissioner*, No. 23630-12, T.C. Memo 2015-201, at *53 (T.C. Oct. 14, 2015) (transferee liability in analogous stock sale tax shelter based on constructive knowledge of what "Petitioner *and his advisers*" knew or should have known). In order to establish the knowledge element of its claim, the IRS *specifically alleges* the Cácereses knew or should have known of the tax evasion

purpose of the UPC transaction precisely *because* they hired R.J. Ruble, a Sidley partner, to write a tax opinion letter. *Id.* ¶ 65.

In 2008, the IRS issued a new notice regarding "Midco" or "intermediary" transactions, making explicit that a tax professional's knowledge of would be imputed to their client in the event the IRS pursued the client. *See* IRS Notice 2008-111 re: Intermediary Transaction Tax Shelters (Section 4: "A person engages in the transaction. . . **if any of the following knows or has reason to know** the transaction is structured to effectuate the Plan [i.e., not pay the corporation's tax] . . . (iii) any advisor of that [shareholder] engaged by [that shareholder] to advise it with respect to the transaction.").[2] The Cácereses' potential liability in the Tax Litigation is premised on knowledge Sidley had, which the IRS seeks to impute to the Cácereses.

The Cácereses allege that, in fact, *only* R.J. Ruble was aware that the counterparty intended to employ illegitimate tax evasion strategies to avoid paying UPC's taxes. *Id.* ¶ 66. The Tax Litigation, therefore, seeks to hold the Cácereses liable for the unpaid tax liability of UPC because of tortious acts

_____

[2] Available at https://www.irs.gov/pub/irs-drop/n-08-111.pdf.

19

committed by Sidley. Taken in the light most favorable to the Plaintiffs, nothing further is required at the pleading stage.

This is not a unique situation. In *Roberts v. Langdale*, a plaintiff sought indemnity from his attorney for liability resulting from the attorney's representation of him as a guarantor under two promissory notes. 185 Ga. App. 122, 363 S.E.2d 591 (1987). While the plaintiff there could not prove the attorney's advice was negligent on summary judgment, *Roberts* affirms that a common law indemnity claim is cognizable under Georgia law if, as here, the attorney's faulty advice causes the client's damages. *Id.* at 123-24, 363 S.E.2d at 592-93; *see also In Rolleston v. Cherry*, 226 Ga. App. 750, 487 S.E.2d 354 (1997) (upholding a jury instruction on indemnity where the plaintiff faced liability based on her attorney's professional negligence). Similarly, in *Crawford v. Johnson*, 227 Ga. App. 548, 489 S.E.2d 552 (1997), a retirement home maintained a common-law indemnity claim against the executor of an estate and the estate's attorney, alleging that the executor and attorney wrongfully depleted the estate. The court of appeals found that the trial court erred in ruling, as a matter of law on summary judgment, that the client could not seek indemnity. *Id.* at 549, 489 S.E.2d at 555. Notably, the court held that the plaintiff could maintain a common-

law indemnity claim against the attorney, to the extent its acts caused the jury's award. *Id*. at 552, 489 S.E.2d at 557.  Here, in accord with *Crawford*, the Cácereses allege that Sidley's negligent advice caused the Cácereses to enter the UPC Transaction.

The Cácereses have met their burden and adequately alleged a claim for common-law indemnity.

## Conclusion

For the foregoing reasons, Sidley's Motion to Dismiss should be denied.

Respectfully submitted,

/s/ Michael E. Brooks

| | |
|---|---|
| BROOKS & WARNER LLC | Michael E. Brooks |
| 1768 Century Boulevard NE, Suite B | Georgia Bar No. 084710 |
| Atlanta, Georgia  30345 | mbrooks@brooksandwarner.com |
| (404) 681-0720 – Brooks Direct | Jill Warner |
| (404) 681-0730 – Warner Direct | Georgia Bar No. 378472 |
| (404) 681-0780 – Fax | jwarner@brooksandwarner.com |
| | |
| SPERLING & SLATER, P.C. | Scott F. Hessell |
| 55 West Monroe Street, Suite 3200 | shessell@sperling-law.com |
| Chicago, Illinois  60603 | Clayton Faits |
| (312) 641-3200 - Tel | cfaits@sperling-law.com |
| (312) 641-6492 – Fax | |
| | Attorneys for Plaintiffs |

<u>CERTIFICATION AS TO FONT AND POINT SELECTION</u>

In accordance with Local Rule 7.1(D), the undersigned certifies that this

brief was prepared with Book Antigua 13, a font and point selection approved by

the Court in Local Rule 5.1(C).

<u>s/Michael E. Brooks</u>
Michael E. Brooks

CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2023, I electronically filed the foregoing

CÁCERESES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO

DISMISS with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following:

Brad D. Brian, Esq.                        Michael A. Caplan, Esq.
John B. Major, Esq.                        Jarred A. Klorfein, Esq.
Munger Tolles & Olson LLP                  Caplan Cobb LLC
350 South Grand Avenue, Suite 50th Floor   75 14th Street NE, Suite 2700
Los Angeles, California  90071             Atlanta, Georgia  30309

Xiaonan April Hu, Esq.
Munger Tolles & Olson LLP
601 Massachusetts Avenue, N.W., Suite 500E
Washington, DC  20001-5369

                                           /s/Michael E. Brooks
                                           _____
BROOKS & WARNER LLC                        Michael E. Brooks
1768 Century Boulevard NE, Suite B         Georgia Bar No. 084710
Atlanta, Georgia  30345                    mbrooks@brooksandwarner.com
(404) 681-0720 – Brooks Direct
(404) 681-0780 – Fax                       Attorney for Plaintiffs