# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

Luis Alfredo Cáceres and Luis Angel
Cáceres, Individually, as executor of the
Estate of Alfredo Cáceres, and as
trustee of the Luis Angel Cáceres
Charitable Remainder Unitrust,

      Plaintiffs,

   vs.

Sidley Austin LLP,

      Defendant.

Case No. 1:23-CV-00844-SDG

## SIDLEY'S REPLY IN SUPPORT OF SIDLEY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## <u>TABLE OF CONTENTS</u>

<div align="right"><u>Page</u></div>

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................1

    A.    The Cácereses' Legal Malpractice Claims Are Time-Barred ...............1

        1.    The Cácereses' Legal Malpractice Claims Are Plainly Untimely and Subject to Dismissal Under Fed. R. Civ. P. 12(b)(6) ........................................................................................2

        2.    Tolling Cannot Save the Cácereses' Untimely Claims..............6

    B.    The Complaint Fails to State A Claim For Common-Law Indemnification ...............................................................................13

CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Barcelona v. Fogelgren,*
   664 F. App'x 884 (11th Cir. 2016) ........................................................................10

*Carvalho-Knighton v. Univ. of S. Fla. Bd. of Trustees,*
   2016 WL 7666137 (M.D. Fla. Mar. 18, 2016) ......................................................12

*Central Baptist Church of Albany Georgia, Inc. v. Church Mut. Ins.,*
   2020 WL 5496096 (M.D. Ga. Aug. 12, 2020) .........................................................3

*Coffee v. Gen. Motors Acceptance Corp.,*
   30 F.Supp.2d 1376 (S.D. Ga. 1998) .........................................................................4

*Gonsalvez v. Celebrity Cruises Inc.,*
   750 F.3d 1195 (11th Cir. 2013) ................................................................................2

*Gowen Oil Co. v. Foley & Lardner, LLP,*
   2013 WL 909903 (S.D. Ga. Mar. 6, 2013) ..............................................................7

*Griffin Indus., Inc. v. Irvin,*
   496 F.3d 1189 (11th Cir. 2007) ................................................................................8

*Kapordelis v. Gainesville Surgery Ctr., L.P.,*
   2011 WL 3652325 (N.D. Ga. Aug. 19, 2011) .........................................................3

*Klopfenstein v. Deutsche Bank Sec., Inc.,*
   592 F. App'x 812 (11th Cir. 2014) ......................................................................9, 10

*La Grasta v. First Union Sec., Inc.,*
   358 F.3d 840 (11th Cir. 2004) ..................................................................................2

*Loftin v. KPMG LLP,*
   2003 WL 22225621 (S.D. Fla. Sept. 10, 2003) .......................................................5

*Loftin v. KPMG LLP,*
   Case No. 9:02-cv-81166 (S.D. Fla.) .........................................................................5

# TABLE OF AUTHORITIES

**Page(s)**

*Luczak v. Farnham*,
    842 F. App'x 374 (11th Cir. 2021) .................................................................7, 10

*Mobolaji v. Bravo Brio Rest. Grp.*,
    2019 WL 11505379 (N.D. Ga. Feb. 16, 2019) ....................................................6

*Morris v. Weyerhaeuser Co.*,
    2006 WL 8435968 (S.D. Ga. Mar. 31, 2006) .......................................................3

*Raak Tech., Inc. v. Marx CryptoTech, LP*,
    2016 WL 9451440 (N.D. Ga. May 2, 2016) ........................................................3

*Therrell v. Georgia Marble Holdings Corp.*,
    960 F.2d 1555 (11th Cir. 1992) ............................................................................3

*Tree Surgery, Inc. v. Terex Corp.*,
    2018 WL 11350262 (N.D. Ga. Dec. 10, 2018) ..................................................10

*Turk v. Morris, Manning & Martin, LLP*,
    593 F.Supp.3d 1258 (N.D. Ga. 2022) .................................................................10

*Tye v. HCBJR, LLC*,
    2018 WL 11488854 (N.D. Ga. Jan. 29, 2018) ...................................................12

**STATE CASES**

*ALR Oglethrope, LLC v. Fidelity Nat'l Title Ins.*,
    361 Ga. App. 776 (2021) ..............................................................................13, 15

*Coe v. Proskauer Rose, LLP*,
    314 Ga. 519 (2022) .............................................................................. 3, passim

*Crawford v. Johnson*,
    227 Ga. App. 548 (1997) ....................................................................................14

*Dist. Owners Ass'n, Inc. v. AMEC Envtml & Infra., Inc.*,
    322 Ga. App. 713 (2013) ....................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

*Havenbrook Homes, LLC v. Infinity Real Estate Investments, Inc.*,
  356 Ga. App. 477 (2020) ....................................................................13

*Hoffman v. Ins. Co. of N.A.*,
  241 Ga. 328 (1978) ..............................................................................4

*Hyman v. Jordan*,
  201 Ga. App. 852 (1991) .....................................................................3

*Kaylor v. Rome City Sch. Dist.*,
  267 Ga. App. 647 (2004) .....................................................................6

*Newell Recycling of Atlanta, Inc.*,
  288 Ga. 236 (2010), ...........................................................................12

*Proceeding By Davidson, Sochor, Ragsdale & Cohen*,
  164 N.Y.S.3d 769, 777 (2022) ...........................................................12

*Roberts v. Langdale*,
  185 Ga. App. 122 (1987) ...................................................................14

*Rolleston v. Cherry*,
  226 Ga. App. 750 (1997) ..............................................................14, 15

*Shores v. Troglin*,
  260 Ga. App. 696 (2003) .................................................................6, 7

*Wallace v. Bock*,
  279 Ga. 744 (2005) ..............................................................................4

## STATE STATUTES

O.C.G.A. § 9-3-96...............................................................................6, 7

O.C.G.A. § 51-12-33...............................................................................15

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b)(6)............................................................................................2

# TABLE OF AUTHORITIES

**Page(s)**

**OTHER RULES**

11th Circuit Local Rule 36-2 .........................................................................9

## **INTRODUCTION**

In 1997, the Cácereses received what they allege to be a negligently prepared opinion letter from R.J. Ruble, an attorney at Brown & Wood. For the next twenty-five years, the Cácereses sat on their hands, even after the IRS filed an action in 2018 seeking to hold them liable for engaging in the very tax shelter transactions that were the subject of Ruble's opinion letter. Georgia law is clear that under these circumstances, the Cácereses' breach of contract, professional negligence, and negligent misrepresentations claims (collectively, the "legal malpractice claims") are untimely. Nor can they bring a claim for common-law indemnification against Sidley based on the federal government's direct claims against the Cácereses, which were founded on the Cácereses' own conduct (rather than on any theory of vicarious liability). The Court should dismiss the Complaint with prejudice.

## **ARGUMENT**

### A.    **The Cácereses' Legal Malpractice Claims Are Time-Barred**

The Cácereses effectively concede that the statute of limitations for their legal malpractice claims is four years. Under Georgia law, the statutes of limitations for those claims began to run in 1997. Yet the Cácereses did not file their Complaint until January 13, 2023. Furthermore, they allege no facts that

1

would support tolling the running of the statute of limitations even though the IRS

filed its complaint on June 27, 2018. Despite their efforts to salvage the

unsalvageable, the Cácereses' claims must be dismissed.

### 1.      The Cácereses' Legal Malpractice Claims Are Plainly Untimely and Subject to Dismissal Under Fed. R. Civ. P. 12(b)(6)

The Cácereses have pleaded themselves out of court. As discussed in

Sidley's opening brief, Dkt. No. 13-1 at 18, the Eleventh Circuit has held that a

plaintiff's claims may be dismissed on timeliness grounds when, as here, "it is

apparent from the face of the complaint that the claim is time-barred." *Gonsalvez v.*

*Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (citation and internal

quotation marks omitted). That is true even though statute of limitations is an

affirmative defense, as the Cácereses' own cited authority explains. *See La Grasta*

*v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other*

*grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (concluding that

although "[a] statute of limitations bar is an affirmative defense," dismissal is

appropriate "if it is apparent from the face of the complaint that the claim is time-

barred." (internal quotation marks omitted)); Dkt. No. 15 at 6 (citing *La Grasta*).

Here, it is indisputable that the legal malpractice claims are untimely on the

face of the Complaint. The four-year limitations period began to run at the time of

Sidley's alleged breach of professional duties, breach of contract, and receipt of

payment in 1997.[1] The opposition attempts to muddy the waters by arguing that none of the claims began to accrue until 2021, when the Eleventh Circuit concluded that the IRS's 2018 action against the Cácereses was timely, because the Cácereses could not have been "damaged" by Ruble's misrepresentations before then. Dkt. No. 15 at 8–11, That argument is foreclosed by law and makes no sense.

The Court need look no further than the opposition's citations to see that courts have resoundingly rejected the Cácereses' argument that a claim for breach of contract or professional negligence accrues from the time the plaintiff suffers damage. "Under well-settled Georgia law, a breach of contract claim arises at the time of the breach, *not the time actual damages result or are ascertained*." *Raak Techs., Inc. v. Marx CryptoTech, LP*, 2016 WL 9451440, at *3 (N.D. Ga. May 2, 2016) (emphasis added and internal quotation marks omitted); *see also Central Baptist Church of Albany Georgia, Inc. v. Church Mut. Ins.*, 2020 WL 5496096

---

[1] The date the Cácereses discovered their claim is irrelevant. Georgia courts have "squarely" rejected applying a discovery rule to breach of contract, professional negligence, and negligent misrepresentations claims. *Kapordelis v. Gainesville Surgery Ctr., L.P.*, 2011 WL 3652325, at *3 (N.D. Ga. Aug. 19, 2011) (breach of contract); *see also Coe v. Proskauer Rose, LLP*, 314 Ga. 519, 528 (2022) (negligent misrepresentation); *Hyman v. Jordan*, 201 Ga. App. 852, 853 (1991) (professional negligence); *Therrell v. Georgia Marble Holdings Corp.*, 960 F.2d 1555, 1561–62 (11th Cir. 1992). That rule occasionally produces "harsh result[s]," but "harshness is no shield to a statute of limitations defense." *Morris v. Weyerhaeuser Co.*, 2006 WL 8435968, at *6 (S.D. Ga. Mar. 31, 2006).

(M.D. Ga. Aug. 12, 2020) (even though damages are an element of a breach of contract claim, "[a] plaintiff may bring a claim for breach even before damage results, because the statute of limitations runs from the time the contract is broken" (internal quotation marks omitted)); *Wallace v. Bock*, 279 Ga. 744, 747 (2005).

The same is true for a professional negligence claim, where the statute of limitations "begins to run from the date the attorney breached the duty owed to the client." *Hoffman v. Ins. Co. of N.A.*, 241 Ga. 328, 329 (1978). The opposition does not cite to any authority holding otherwise. Because the Complaint alleges Ruble breached the contract and his obligations as an attorney when he authored the opinion letter some time on or before April 10, 1997, *see* Dkt. No. 1-1 ¶¶ 23–28, 36–37, 42–43, the statutes of limitations began to run on the Cácereses' breach of contract and professional negligence claims in 1997—not 2021.

The Cácereses' accrual arguments for their negligent misrepresentations claim fare no better. The Georgia Supreme Court held in *Coe* that the statute of limitations for negligent misrepresentations claims begins to run from the date the plaintiff "first" suffers a "pecuniary loss" from the defendant's misrepresentations. 314 Ga. at 526, 528. That is so even if the plaintiff suffers "additional, later economic damages" arising from the same misrepresentations. *Id.* at 528; *see also Coffee v. Gen. Motors Acceptance Corp.*, 30 F.Supp.2d 1376, 1382 (S.D. Ga.

1998) ("It is unnecessary . . . for Plaintiffs to have experienced their *entire* injury"

for negligent misrepresentations claim to accrue). This rule prevents plaintiffs from

circumventing the statute of limitations through artful pleading of their damages.

The Cácereses do not dispute that, like the plaintiffs in *Coe*, they *could have*

sought to "recover[] fees paid to Sidley in 1997" or "defense costs" for the

expenses they incurred defending against the 2018 IRS action. Dkt. No. 15 at 10.

These incurred costs started the limitations period long before 2021 and distinguish

this case from *Loftin v. KPMG LLP*, 2003 WL 22225621 (S.D. Fla. Sept. 10,

2003), where it was unclear if the plaintiff would suffer any injury at all. *See id.* at

*7; *see also* Amended Complaint, *Loftin v. KPMG LLP*, Case No. 9:02-cv-81166

(S.D. Fla.), Dkt. No. 25.

The Cácereses' attempt to tie the accrual of their claims to the Eleventh

Circuit's 2021 decision in the IRS case also does not make any logical sense. The

Cácereses started to incur legal fees to defend against the IRS case when it was

brought in 2018. The notion that the district court proceedings were of no

consequence and that nothing significant took place until an intermediate appellate

decision was issued is untenable.

The Cácereses do not dispute that if their legal malpractice claims accrued in

1997, they are untimely. It is therefore apparent from the face of the Complaint

that the claims are time-barred and should be dismissed absent tolling, which for the reasons discussed *infra*, does not apply.

### 2.    Tolling Cannot Save the Cácereses' Untimely Claims

The Cácereses cannot rely on tolling to save their plainly untimely claims. First, as discussed in Sidley's opening brief, Dkt. No. 13-1 at 14–18, the Complaint does not allege that Sidley perpetrated a separate and independent fraud upon the Cácereses that concealed their claims or that the Cácereses acted diligently to discover them, both of which are required for tolling under O.C.G.A. § 9-3-96. That absence is telling, given that Georgia state courts—where the Cácereses filed their action before it was removed—"require" plaintiffs to allege facts supporting tolling, to the extent those facts exist. *Mobolaji v. Bravo Brio Rest. Grp.*, 2019 WL 11505379, at *4 n.6 (N.D. Ga. Feb. 16, 2019); *see also Kaylor v. Rome City Sch. Dist.*, 267 Ga. App. 647, 650 (2004). Second, because any potential tolling would have ended in 2018, when the IRS filed its action, the Cácereses' legal malpractice claims are time-barred even with tolling and should be dismissed with prejudice.

#### (a)         *Tolling Does Not Apply*

To qualify for tolling, plaintiffs must allege a *separate* act of fraud—beyond the legal malpractice itself—that deterred them from filing suit. *See Shores v.*

*Troglin*, 260 Ga. App. 696, 696 (2003); *Luczak v. Farnham*, 842 F. App'x 374, 378 (11th Cir. 2021). The Complaint does not do so.

Instead of pointing to any separate, independent act of fraudulent concealment alleged in the Complaint, the opposition asserts, citing *Coe*, that an attorney's failure to disclose his or her negligence is itself an act of fraudulent concealment under O.C.G.A. § 9-3-96, and that no additional allegations are necessary for tolling. Dkt. No. 15 at 13. *Coe* did not so hold. Because the defendant law firm in *Coe* did not dispute "that the Coes carried their burden to show fraud" under O.C.G.A. § 9-3-96, the opinion did not address fraudulent concealment. 314 Ga. at 530 n.19. The Court's reference to an attorney's disclosure obligations concerned O.C.G.A. § 9-3-96's *separate* requirement that plaintiffs act with reasonable diligence to discover their claims. 314 Ga. at 530–32.

The opposition's citations to allegations in the Complaint that Ruble failed to disclose certain information in his opinion letter are beside the point. Dkt. No. 15 at 13. Those allegations go to the merits of the Cácereses' malpractice claims—they say nothing about the existence of a separate act of concealment that prevented the Cácereses from discovering those claims. *See Luczak*, 842 F. App'x at 378; *cf. Gowen Oil Co. v. Foley & Lardner, LLP*, 2013 WL 909903, at *4 (S.D. Ga. Mar. 6, 2013) (sufficient allegations of tolling where complaint alleged

independent fraud in addition to underlying malpractice). The Cácereses' failure to allege an act of fraudulent concealment dooms their effort to invoke tolling. But even if it did not, tolling does not apply because the Complaint does not allege that the Cácereses acted with reasonable diligence to discover their claims after the IRS filed its action in 2018. *See* Dkt. No. 13-1 at 16–18.

The Cácereses urge this Court to conclude otherwise by asserting that the Court *must* credit as true a single sentence in the Complaint alleging that the Cácereses "had no reason to believe that Sidley's advice was incorrect" until 2021. Dkt. No. 15 at 16. The Court's "duty to accept the facts in the complaint as true," however, does not extend to "ignor[ing] specific factual details of the pleading in favor of general or conclusory allegations" or to allegations that are contradicted by the documents to which they refer. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

Here, the Complaint's other allegations—and the IRS complaint, which is incorporated by reference—make clear that the Cácereses had reason to think that Ruble's opinion letter was negligently prepared by 2018. *See* Dkt. No. 13-1 at 21. That is because the filing of the IRS action against the Cácereses indisputably put them on actual or constructive notice of their legal malpractice claims by 2018, regardless of whether the IRS action was ultimately determined to be timely or

subject to other potential defenses. If, as the Cácereses argue, a complaint filed by the IRS for fraudulent transfer is not enough to put a plaintiff on notice of a potential malpractice claim concerning a legal opinion blessing the legality of those transfers, it is difficult to imagine any facts that would.

The facts in this case strongly resemble those in the Eleventh Circuit's decision in *Klopfenstein v. Deutsche Bank Secs., Inc.*, 592 F. App'x 812 (11th Cir. 2014), which affirmed the dismissal of the plaintiff's fraud claims on substantially similar facts.[2] The Cácereses attempt to diminish *Klopfenstein*'s significance by pointing to the Georgia Supreme Court's subsequent decision in *Coe*. Dkt. No. 15 at 15. But contrary to the Cácereses' representations, *Coe* did not "directly reject[]" or undermine *Klopfenstein*'s reasoning regarding reasonable diligence. *Id.*.

In *Coe*, the Georgia Supreme Court observed that a client "exercising reasonable diligence" is entitled to rely on their attorney's disclosures or lack thereof "at least until other facts come to light that would cause a reasonably diligent person to revisit the issue." 314 Ga. at 531. The Court then concluded that the defendant's "vaguely" crafted engagement letter and two news articles were not facts that would cause a reasonably diligent client to question their attorney's

---

[2] The Cácereses also suggest that *Klopfenstein* should be disregarded because it is unpublished. Dkt. No. 15 at 15. That is contrary to Rule 36-2 of the Eleventh Circuit, which authorizes citing unpublished decisions as persuasive authority.

disclosures as a matter of law. *Id.* at 531–32. In *Klopfenstein*, the Eleventh Circuit held that a direct communication from the IRS asserting that the agency "intended to disallow the deductions" the plaintiff had taken as part of a tax shelter transaction *was* sufficient to trigger a plaintiff's obligation to exercise reasonable diligence for tolling purposes. 592 F. App'x at 814–15. The two decisions do not conflict, and the Complaint's allegations make clear that the Cácereses' circumstances more closely resemble *Klopfenstein* than *Coe*.

Because the legal malpractice claims are untimely on their face and the Cácereses do not allege any basis for tolling, the Court should dismiss them. *See, e.g.*, *Luczak*, 842 F. App'x at 378; *Barcelona v. Fogelgren*, 664 F. App'x 884, 886 (11th Cir. 2016); *Turk v. Morris, Manning & Martin, LLP*, 593 F.Supp.3d 1258, 1296 (N.D. Ga. 2022).[3]

          (b)    *Even With Tolling, The Claims Are Untimely Because They Were Filed Five Years After The IRS Sued The Cácereses*

Dismissal is also appropriate because the claims are untimely even with tolling. The Cácereses do not meaningfully dispute that if the Court rejects their

---

[3] The opposition's citation to *Ace Tree Surgery, Inc. v. Terex Corp.*, 2018 WL 11350262 (N.D. Ga. Dec. 10, 2018), is misplaced. Dkt. No. 15 at 7. Unlike the Cácereses, the plaintiffs in *Ace Tree* alleged "a basis for tolling the statutes." 2018 WL 11350262, at *4.

theory of tolling (which it should, *see supra* pp. 6–10), any tolling would have ended in 2018, when the IRS filed its action. Nor do they dispute that under a four-year limitations period, their legal malpractice claims are untimely because they waited until 2023 to file their Complaint. Instead, they argue that even if the "IRS action triggered the statute of limitations," their breach of contract claim—but not their professional negligence and negligent misrepresentation claims—"would be timely" because the six-year limitations period for written contracts applies and does not expire until 2024. Dkt. No. 15 at 12. That argument fails.

As the Cácereses themselves acknowledge, the Complaint does not allege the existence of a written contract. Dkt. No. 15 at 12 n.1. All the Complaint alleges is that "Plaintiffs entered into a contract with Sidley whereby Sidley agreed to . . . provide a tax legal opinion and tax consulting services for Plaintiffs in exchange for the Plaintiffs' agreement to pay Sidley." Dkt. No. 1-1 ¶ 34. From this description and the fact that Sidley is a "sophisticated law firm," the Cácereses ask the Court to "infer" that the contract must have been in writing. Dkt. No. 15 at 12 n.1.[4]

---

[4] Sidley is not aware of any cases involving a Georgia breach of contract action, where the court simply assumed or inferred the existence of a written instrument without any allegations to that effect. The absence of authority is not surprising, as any other result would make a mockery of the written contract requirement. In

That is not proper for two reasons. First, courts "should not assume that the plaintiff can prove facts that were not alleged." *Carvalho-Knighton v. Univ. of S. Fla. Bd. of Trs.*, 2016 WL 7666137, at *2 (M.D. Fla. Mar. 18, 2016). That is especially true here, where the opposition all but admits that the Cácereses do not have a copy of any written contract.[5] Presumably, that is why they do not ask for leave to amend the Complaint to allege the existence of one. *See* Dkt. No. 15 at 12 n.1. Second, New York did not require written engagement letters between attorneys and their clients prior to 2002, so there is no basis in either law or fact to assume the existence of a written contract here. *See Proceeding by Davidson, Sochor, Ragsdale & Cohen*, 164 N.Y.S.3d 769, 777 (N.Y. Sur. Ct. 2022).

Because all of the legal malpractice claims are subject to a four-year statute of limitations, and because that limitations period would have ended in 2022 even with tolling, the Court should dismiss the Cácereses' claims as time-barred.

---

*Newell Recycling of Atlanta, Inc.*, 288 Ga. 236 (2010), which the opposition cites, there was a dispute as to whether the alleged written terms constituted a *complete* written contract. *Id.* at 238. Here, by contrast, the Complaint does not allege a written instrument, *see* Dkt. No. 1-1 ¶ 34, or any other essential details about the contract such as the date of the agreement or its terms. *See Tye v. HCBJR, LLC*, 2018 WL 11488854, at *10 (N.D. Ga. Jan. 29, 2018).

[5] The Cácereses' accusation that Sidley failed to keep the Cácereses' file is spurious. Dkt. No. 15 at 12 n.1. To the extent any files existed, as Sidley advised the Cácereses' counsel, they would have been lost or destroyed in the September 11 terrorist attacks on the World Trade Center, which housed Sidley's New York office where Ruble worked.

### B.   <u>The Complaint Fails to State A Claim For Common-Law Indemnification</u>

This Court should also dismiss the Cácereses' claim for common-law indemnification because the claim fails as a matter of law. Georgia courts have consistently held that there can be no claim for common-law indemnification when, as here, the plaintiff seeks indemnification for claims arising out of his or her own misconduct and the plaintiff is not being held vicariously liable for the defendant's conduct. *See, e.g.*, *ALR Oglethrope, LLC v. Fid. Nat'l Title Ins.*, 361 Ga. App. 776, 787 (2021), *cert denied*, S22C0400 (2022); *Havenbrook Homes, LLC v. Infinity Real Est. Invs., Inc.*, 356 Ga. App. 477, 483 (2020).

Once again, the opposition does not engage with this authority. Instead, the Cácereses insist that they have stated a claim for common-law indemnification because the IRS action "seeks to impute" Ruble's knowledge to the Cácereses to prove that the they knew or should have known that the purpose of the tax shelter transactions was to defraud the IRS and, therefore, "to hold the Cácereses liable . . . because of tortious acts committed by Sidley." Dkt. No. 15 at 19.

That argument mischaracterizes the IRS complaint. The IRS complaint makes clear that the government's fraudulent transfer claims against the Cácereses are predicated on the Cácereses' *own knowledge and intent*. *See* Dkt. No. 14-1 ¶¶ 24, 41, 53–54, 145, 158. The IRS complaint's references to Ruble's conduct are

part of its overarching allegation that the Cácereses knowingly and intentionally hired attorneys to help them evade federal taxes. *Id.* ¶¶ 24–25, 37–40 (alleging the Cácereses "hired attorney R.J. Ruble . . . to draft a tax opinion letter purporting to release them of personal liability for [UPC's] capital gains taxes" because "they knew that neither [UPC] nor Skandia intended to pay capital gains taxes"). Far from trying to hold the Cácereses liable for Sidley's conduct, the IRS seeks to hold the Cácereses liable for their own conduct. Accordingly, the Cácereses cannot state a claim for common-law indemnification, as their cited authority acknowledges. *See Crawford v. Johnson*, 227 Ga. App. 548, 559 (1997) ("Crawford may not seek contribution for liability arising from his own acts of moral turpitude.").

The other cases cited in the opposition do not hold otherwise. Contrary to the Cácereses' assertions, the court in *Roberts v. Langdale*, 185 Ga. App. 122 (1987), did not "affirm[] that a common law indemnity claim is cognizable" if an attorney's "faulty advice causes the client's damages." Dkt. No. 15 at 20. The sole issue presented on appeal in that case was whether a claim for legal malpractice requires proof of negligence. *Roberts*, 185 Ga. App. at 123. The Cácereses' reliance on *Rolleston v. Cherry*, 226 Ga. App. 750 (1997), is similarly misplaced. *Cherry* concluded that the trial court did not err in charging the jury on the plaintiff's common-law indemnification claim against her attorney because the

plaintiff's liability in a separate action for abusive litigation "was at least partially predicated upon acts for which" the plaintiff and her attorney "could be considered joint tortfeasors." *Id.* at 754. Here, by contrast, the Complaint does not allege that Sidley was a joint tortfeasor as to the government. Even if it did, the claim would fail as a matter of law because "after the enactment of [O.C.G.A. § 51-12-33]" in 2005, "a defendant may not seek indemnification from another defendant as a joint tortfeasor simply based on allegations that the other defendant's negligence actually caused the harm." *ALR Oglethrope, LLC*, 361 Ga. App. at 785–87.

The law is unequivocal. In Georgia, common-law indemnification extends only to claims of vicarious liability, where the defendant has an obligation "to make good any loss or damage another has incurred by acting at his request or for his benefit." *Dist. Owners Ass'n, Inc. v. AMEC Env't & Infrastructure, Inc.*, 322 Ga. App. 713, 715–16 (2013). Because the Complaint does not allege that the IRS action seeks to recover from the Cácereses on a theory of vicarious liability for Sidley's actions, the Cácereses' claim for common-law indemnification must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Sidley respectfully requests that the Cácereses' Complaint be dismissed in its entirety with prejudice.

DATED: April 17, 2023       CAPLAN COBB LLC

By:       */s/ Michael A. Caplan*

MICHAEL A. CAPLAN (GA Bar No. 601039)
mcaplan@caplancobb.com
JARRED A. KLORFEIN (GA Bar No. 562965)
jklorfein@caplancobb.com
CAPLAN COBB LLC
75 Fourteenth Street, N.E.
Suite 2700
Atlanta, Georgia 30309
Telephone:  (404) 596-5600
Facsimile:   (404) 596-5604

DATED:  April 17, 2023      MUNGER, TOLLES & OLSON LLP

By:       */s/ Brad D. Brian*
BRAD D. BRIAN (*pro hac vice*)
brad.brian@mto.com
JOHN B. MAJOR (*pro hac vice*)
john.major@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

XIAONAN APRIL HU (*pro hac vice*)
april.hu@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500E
Washington, D.C. 20001-5369
Telephone:  (202) 220-1100

Facsimile:    (202) 220-2300

*Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing was prepared in Times New Roman font,

14-point type, and complies with Local Rule 5.1(C).

This 17th day of April, 2023.

/s/ Brad D. Brian
BRAD D. BRIAN
Admitted *pro hac vice*
brad.brian@mto.com

*Attorney for Defendant*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 17, 2023, I electronically filed the foregoing document through the Court's CM/ECF system, which will automatically send electronic notification of such filing to all counsel of record.

This 17th day of April, 2023.

<div style="margin-left:50%;">

*/s/ Brad D. Brian*  
BRAD D. BRIAN  
Admitted *pro hac vice*  
brad.brian@mto.com

*Attorney for Defendant*

</div>