## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Luis Alfredo Cáceres and )
Luis Angel Cáceres, Individually, )
as executor of the Estate of Alfredo )
Cáceres, and as trustee of the Luis )
Angel Cáceres Charitable )
Remainder Unitrust, )
                                       )      Case No. 1:23-CV-00844-SDG
        Plaintiffs, )
                                        )
    v. )
                                         )
Sidley Austin LLP, )
                                         )
        Defendant. )

## CÁCERESES' RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Sidley's motion to dismiss the Amended Complaint suffers from the same

fatal defects as its original motion: until the Cácereses settled with the IRS, they

suffered no cognizable injury and, in fact, substantially benefited from the tax-

minimizing deal structure Sidley recommended. The Cácereses' reporting of the

UPC Transaction based on Sidley's tax opinion drew no negative attention from

the IRS whatsoever between 1998, when it was first reported, and 2018, when the

IRS sued them. During that time, the Cácereses had no reason to suspect Sidley

had provided faulty advice, nor would any reasonable person suspect they

would be harmed by having followed Sidley's advice. Sidley, however, knew

from the outset that the counterparty the Cácereses dealt with was a serial tax shelter promoter—and failed to disclose this information to the Cácereses at any point. When the IRS began to pursue them for the unpaid debts of Henco Holding Corp., the Cácereses quickly secured dismissal of the IRS claims as untimely—only to later have that decision reversed on appeal.

Had the Cácereses filed claims against Sidley at any time between 1998 and 2021, those claims would have been unsustainable because the Cácereses had suffered no damages, and any claim to the contrary would have been mere speculation. *Raak Techs., Inc. v. Marx CryptoTech, LP*, 2016 WL 9451440, at *3 (N.D. Ga. May 2, 2016) ("[t]he 'true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result.'") (quoting *Gamble v. Lovett Sch.*, 180 Ga. App. 708, 710, 350 S.E.2d 311, 312-13 (1986)) (additional citation omitted). Sidley successfully obtained dismissal of another tax shelter client's malpractice claim as unripe for this very reason. *Loftin v. KPMG, LLP*, No. 02–81166–CIV, 2003 WL 22225621, at *8-9 (S.D. Fla. 2002) (dismissing tax shelter malpractice claim against Sidley as not ripe until plaintiff reached final resolution against the IRS). For this reason, the Cácereses' claims are timely under well-established Georgia law because the damages they seek did not arise, and they had no cognizable breach of contract or malpractice claims, until 2021 at the earliest. Regardless, there are additional

questions of fact regarding whether the statute of limitations was tolled due to Sidley's deliberate concealment of the basis for their cause of action. Finally, Sidley does not dispute the timeliness of the Cácereses' common-law indemnity claim, but instead asks the Court to ignore the allegations in the Amended Complaint supporting that claim. Both arguments fail, and Sidley's Motion to Dismiss should be denied at this early procedural stage.

## Factual Background

The Cácereses controlled 100% of the stock of UPC Holding Corp. ("UPC"), the sole asset of which was a 50.5% interest in a food service business they helped start from scratch, Belca Foodservice Corp. ("Belca"). Am. Compl. ¶ 14. Over time and with the Cácereses' investment of sweat equity, Belca appreciated to be worth hundreds of millions of dollars. *Id.* On January 31, 1997, UPC sold its interest in Belca, and then in April of that year, the Cácereses sold their UPC stock to a subsidiary of Skandia Capital Group, UP Acquisitions (the "UPC Transaction"). *Id.* ¶ 18. Skandia later renamed UPC "Henco Holding Corp." ("Henco"). *Id.* ¶ 9.

Prior to the UPC Transaction, the Cácereses retained Sidley as special tax counsel to provide an independent tax opinion confirming that the UPC Transaction was structured to legitimately minimize the tax consequences on the Cácereses from the sale. *Id.* ¶ 2. Sidley opined that the Cácereses could not be

held liable for any federal income tax imposed on UPC relating to the UPC Transaction, even if UPC and its new owner Skandia failed to pay those taxes (as they were contractually obligated to do under the stock purchase agreement). *Id.* ¶¶ 20-21.

For over twenty years, Sidley's opinion appeared to be correct. In 2018, the IRS sued the Cácereses for $56 million in unpaid tax liabilities of UPC (the "Tax Litigation"). *Id.* ¶ 29. In the Tax Litigation, the IRS alleged that the Cácereses engaged in fraudulent transfers under Ga. Code Ann. §§ 18-2-21 and 18-2-22. To make its case, the IRS needed to establish that the Cácereses had actual knowledge that the intent of the UPC Transaction was to defraud UPC's creditors (namely, the IRS). *Id.* ¶ 67. Given that over twenty years had elapsed since the UPC Transaction, the IRS's claim was facially untimely, and in May 2019, a district court agreed, dismissing the IRS claims with prejudice. *Id.* ¶ 30. In January 2021, however, the Eleventh Circuit disagreed, reinstating the IRS claims against the Cácereses. *Id.* Upon remand, the Cácereses faced a trial on the merits of the IRS's fraudulent transfer claim. *Id.* In July 2023, the Cácereses and the IRS settled those claims, with the Cácereses paying approximately $7 million to resolve all liability associated with the UPC Transaction. *Id.* ¶ 32. The Cácereses and the IRS later stipulated to dismiss the Tax Litigation with prejudice. *Id.* On November 29, 2023, in anticipation of oral argument then scheduled, this Court

directed the parties to be prepared to address whether the Cácereses had

standing to bring the claims against Sidley, given that the Tax Litigation

remained unresolved. This prompted the Cácereses to move for leave to file an

amended complaint to include factual allegations regarding the conclusion of the

Tax Litigation, which the Court granted on December 7, 2023. ECF Nos. 20, 22.

     The Cácereses brought the present action against Sidley alleging four

counts: breach of contract, negligent misrepresentations, professional negligence,

and common-law indemnity. *Id.* ¶¶ 36-71. The Cácereses allege that Sidley knew,

but concealed, material facts about the UPC Transaction, including that the UPC

transaction would not legally achieve the promised tax results, *id.* ¶ 24, and that

Skandia's intermediary was working in concert with the Cácereses other tax

advisors, KPMG LLP (suggesting a conflict of interest) and was insolvent, *id.* ¶¶

26-27, and that the UPC Transaction was likely to be found an asset sale and

liquidation rendering the Cácereses personally liable for UPC's corporate taxes.

*Id.* ¶ 28.

<u>**Legal Standard**</u>

     Because this action was removed to federal court, the Federal Rules of

Civil Procedure govern the pleading standard applied to the Amended

Complaint. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d

1245, 1260 (11th Cir. 2015) (denying a motion to dismiss predicated on state-law

pleading requirements because "'[t]he rules of procedure that apply in federal cases—even those in which the controlling substantive law is that of a state—are the Federal Rules of Civil Procedure.'") (citations omitted). Those rules require only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"At the motion to dismiss stage, 'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" *Pries v. GreenPath, Inc.*, 528 F. Supp. 3d 1353, 1355 (M.D. Ga. 2021) (denying motion to dismiss claim on statute of limitations grounds) (internal quotation marks and citations omitted) (quoting *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011)). At the motion to dismiss stage, the complaint need only given defendant "fair notice what the claim is and the grounds upon which it rests." *Id*. at 1355 (citing *Twombly*).

Plaintiffs are not required, however, to negate a defendant's potential affirmative defenses—including a statute of limitations bar—in a complaint. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (denying motion to dismiss because "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred.") (citations omitted) *abrogated on other grounds by Twombly v. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955 (2007).

At this juncture in the case and based solely on the allegations pled, Sidley's motion to dismiss should be denied without prejudice to what the factual record will show.

## ARGUMENT

### A. Statute Of Limitations Is an Affirmative Defense Plaintiffs Need Not Plead Around.

Plaintiffs are not required to plead around potential affirmative defenses in a complaint; the burden to establish a statute of limitations defense resides with the defendant. Sidley attempts to invert the parties' burden at the pleading stage, contending that the Amended Complaint should be dismissed for failing to allege that "the Cácereses acted diligently to uncover their claims." (Br. at 2.) But the law is clear that the Cácereses were not required to allege any facts about their diligence to uncover claims. *La Grasta*, 358 F.3d at 845 ("A statute of limitations bar is 'an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint.'") (alteration in original) (quoting *Tregenza v. Great American Comm. Co.*, 12 F.3d 717, 718 (7th Cir. 1993)).

This argument is an attempt to impose a higher standard on the Cácereses at the pleading stage than the Federal Rules of Civil Procedure and well-established case law require. *Ace Tree Surgery, Inc. v. Terex Corp.*, 2018 WL 11350262, at *3 (N.D. Ga. Dec. 10, 2018) (denying motion to dismiss on statute of limitations grounds because "a plaintiff has no obligation to anticipate and

negate such a defense in his complaint.") (citations omitted). To do so would force the Cácereses to preemptively plead facts foreclosing affirmative defenses on which Sidley bears the burden of proof. *Smith v. Duff and Phelps, Inc.,* 5 F.3d 488, 492 n. 9 (11th Cir. 1993) ("It is beyond dispute that the defendants have the burden of proof in establishing the elements of the affirmative defense of the statute of limitations.").

For this reason alone, Sidley's motion to dismiss the Cácereses' claims for breach of contract, professional negligence, and negligent misrepresentation should be denied.

**B. The Cácereses' Claims Are Timely.**

Even if the Cácereses did bear the burden of pleading sufficient facts to defeat a statute of limitations defense, the allegations of the Amended Complaint—particularly when read in the light most favorable to the Cácereses—establish that the claims were timely filed.

1. The Cácereses had no cognizable claims until 2021.

Sidley claims that three of the Cácereses four causes of action—breach of contract, professional negligence, and negligent misrepresentation—are time-barred. Not so. The Cácereses engaged Sidley for tax advice regarding whether the proposed tax treatment for sale of UPC stock would be respected **if litigated in tax court**. Am. Compl. ¶¶ 20-21. They enjoyed the benefit of that bargain—i.e.,

reduced taxes on the UPC Transaction—until the Eleventh Circuit reinstated the Tax Litigation against them. *Id.* ¶¶ 1-4, 29-32. Until that time, there was no ripe breach of contract nor malpractice claim because Sidley's advice that the Cácereses would not be personally liable for UPC's corporate taxes had proven true: the Cácereses enjoyed complete freedom from IRS scrutiny for over twenty years. *Id.* That the IRS sued the Cácereses in 2018 did not alter that calculus, because the IRS claim was immediately dismissed as time-barred in May of 2019. The Cácereses did not even arguably lose the benefit of their bargain with Sidley until the Eleventh Circuit ultimately reversed and reinstated the Tax Litigation in 2021—litigation that was not resolved, and did not result in any cognizable damages to the Cácereses, until July 2023. *Id.*

Sidley claims that the statute of limitations begins to run when the first breach of the agreement occurs, but "[t]he 'true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result.'" *Raak Techs.*, 2016 WL 9451440, at *3 (denying motion to dismiss where breach, as alleged by plaintiff, occurred in 2015—not in 2008, as defendant argued) (quoting *Gamble*, 180 Ga. App. At 710, 350 S.E.2d at 312-13). "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) *resultant damages* (3) to the party who has the right to complain about the contract being broken." *Brown v. Wells Fargo Bank, N.A.*, No.

3:17-cv-00044-TCB-RGV, 2018 U.S. Dist. LEXIS 223128, at *23-24 (N.D. Ga. Oct. 11, 2018) (dismissing breach of contract claim brought by a plaintiff who failed to allege any damages).

The Cácereses do not allege anything about, and do not seek to recover, fees paid to Sidley in 1997; nor do they allege or seek to recover attorneys' fees related to the Tax Litigation. Rather, they seek only to recover damages that arise directly from Sidley's negligent opinion: namely, that the Cácereses have now been required to pay approximately $7 million for the corporate tax obligations of UPC as a result of the Tax Litigation, which Sidley advised would not happen. *See* Am. Compl. ¶¶ 41, 52, 63. The Cácereses only seek to recover damages resulting from their direct liability to the IRS, and therefore could only arise once the Eleventh Circuit reinstated the Tax Litigation and that litigation was fully resolved.

This fact distinguishes the present action from *Coe v. Proskauer Rose, LLP*, which Sidley relies on, because there, "[t]he damages that the Coes alleged with respect to their negligent misrepresentation and fraud claims include the fees that they paid in reliance on what the Coes now contend are misrepresentations and material nondisclosures." 878 S.E.2d 235, 243 (2022). Here, where the Cácereses allege nothing about the fees paid nor seek such damages, *Coe* is inapposite on this issue.

Nor did the Cácereses fail to exercise reasonable diligence in discovering the basis for their claims against Sidley. As an initial matter, it is (again) not the Cácereses burden to plead any steps they may have taken that constitute reasonable diligence. *Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 977 (11th Cir. 2015) (denying a motion to dismiss based on a plaintiff's supposedly "dilatory" enforcement of rights: "The complaint's silence regarding what might or might not have happened between 2010 and 2013 did not give the district court license to assume that Twin City had failed to take certain actions during that period.") (per curiam). And it is apparent from the face of the Amended Complaint that the Cácereses were anything but dilatory. Sidley's advice necessarily involved some risk that the Cácereses might have to litigate their tax liability (and thereby incur attorneys' fees); the mere filing of an untimely action by the IRS would not have deprived the Cácereses of the benefit of the bargain, let alone revealed that Sidley was professionally negligent or made negligent misrepresentations.

Sidley is also mistaken as to the statute of limitations applicable to the Cácereses' breach of contract claim, which is *six* years for written contracts, not four. *Newell Recycling of Atlanta, Inc. v. Jordan Jones and Goulding, Inc.*, 288 Ga. 236, 237, 703 S.E.2d 323, 325 (2010) (denying summary judgment and holding that the six-year statute of limitations contained in OCGA § 9-3-24 applied to a

professional malpractice claim based on a written contract, rather than the four-year statute of limitation contained in OCGA § 9-3-25). The Amended Complaint alleges that Plaintiffs engaged Sidley to provide a written tax opinion, that Plaintiffs paid Sidley for such opinion, and that Sidley provided the written tax opinion. Am. Compl. ¶¶ 36-42. Based on these allegations, "at the very least, an issue of fact exist[s] as to the existence of a written contract." *Newell Recycling*, 703 S.E.2d at 324 (2010). Furthermore, Sidley does not and cannot dispute that a written engagement letter existed.[1]

Thus, even if Sidley were correct that the untimely-filed IRS action triggered the statute of limitations, the Cácereses breach of contract claim would still be timely because it was filed less than six years after the IRS first sued in 2018.

2. Sidley's Conduct Tolled the Cácereses Claims.

While, as discussed above, *Coe v. Proskauer Rose, LLP* is inapposite to the accrual of the Cácereses' claims, it is applicable to Sidley's argument that tolling

---

[1] The Cácereses requested a copy of their file from Sidley pre-filing, but Sidley claimed it had none. It is reasonable to infer that a sophisticated law firm would provide a tax opinion letter only under a written agreement, so the six-year statute of limitations applies. *See Bailey v. Wheeler*, 843 F.3d 473, 482 (11th Cir. 2016) (denying a motion to dismiss because "a court reviewing a motion to dismiss must draw all reasonable inferences from the factual allegations in a plaintiff's complaint in the plaintiff's favor.") (citing *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010)). Sidley's failure to provide or keep the Cácereses file should not be allowed to prevent discovery of the facts relating to Sidley's liability, particularly if it is dispositive to a claim.

does not apply. On parallel facts, the Georgia Supreme Court recently held that Georgia's statute of limitations on a negligent misrepresentation claim against a law firm who opined on a tax shelter transaction *was* tolled based on the law firm's failure to disclose material facts about the transaction alerting the Coes to a cause of action despite a lawyer's duty to do so. *Coe*, 314 Ga. at 530, 577 S.E.2d at 245.

Sidley selectively ignores factual allegations in the Amended Complaint that support similar fraudulent concealment tolling here, including that "Sidley did not disclose that it knew or should have known that Skandia, as the new owner and manager of UPC, did not intend to pay the taxes owed but would instead use a Son of BOSS tax shelter to avoid paying it," Am. Compl. ¶ 23, that "Sidley knew or should have known, but did not advise the Cácereses, that if the transaction were examined, the IRS would not respect the intermediary as legitimate," *Id.* ¶ 28, and that prior to the Eleventh Circuit Court of Appeals reinstating the IRS's claims against the Cácereses in 2021, "the Cácereses had no reason to believe that Sidley's advice was incorrect or that the Cácereses would suffer any injury associated with the UPC Transaction" because "Sidley continu[ed] to stand by its opinion and . . . fail[ed] to disclose material facts it knew about the transaction." *Id.* ¶ 31, 34. Each of these allegations belies Sidley's claim that "silence is all the FAC alleges in its effort to invoke tolling" (Br. at 2),

particularly in light of the allegation that "Plaintiffs put a high degree of trust in Sidley" and "reasonably expected that if Sidley learned that its prior advice was incorrect that it would communicate as much" because "Sidley owed a duty of care to Plaintiffs which required the transmittal of accurate and not misleading information to Plaintiffs." Am. Compl. ¶ 33, 44.

Under Georgia law, the statute of limitations is tolled based on a fiduciary's mere concealment of relevant information that would give rise to a claim. *See Goldston v. Bank of Am. Corp.*, 259 Ga. App. 690, 693-94, 577 S.E.2d 864, 868-69 (2003) (reversing grant of motion to dismiss based on tolling because, in a "relationship of trust and confidence," "'silence when one should speak, or failure to disclose what ought to be disclosed, is as much a fraud in law as [is] an actual . . . false representation.'") (citations omitted). In applying this rule to similar facts, *Coe* holds that, where a lawyer-defendant had a "confidential relationship" with the client-plaintiff, there is a heightened duty for the lawyer to affirmatively disclose material information about the transaction on which it advised—and a reduced duty on the plaintiff to uncover such information on their own. *Coe*, 314 Ga. at 530, 878 S.E.2d at 245 ("a confidential relationship imposes a greater duty on a defendant to reveal what should be revealed, and a lessened duty on the part of a plaintiff to discover what should be discoverable through the exercise of ordinary care.").

The Coes' confidential relationship with Proskauer arose because they retained Proskauer to opine on a tax shelter transaction, just as here, where the Cácereses retained Sidley to provide them with tax advice. As a result, like Proskauer in *Coe*, Sidley also had a heightened obligation to disclose any defects in that advice. *Id.* at 531, n.22, 577 S.E.2d at 246, n.22 (rejecting Proskauer's characterization that "information, involving highly complex investment and tax transactions" was "so 'widely known' as to establish, as a matter of law, that the Coes, in exercising reasonable diligence, should have discovered their claims before 2011.").

Sidley also argues that the Cácereses failed to take reasonably diligent steps to discover their causes of action, relying extensively on the unpublished opinion in *Klopfenstein v. Deutsche Bank Securities, Inc.*, 592 F. App'x 812 (11th Cir. 2014). But *Coe* directly rejected this argument in the context of legal malpractice claims. *Coe*, 314 Ga. at 531, 577 S.E.2d at 245 ("We fail to see why a person exercising reasonable diligence would not be entitled to rely on the disclosure or lack thereof made by his or her attorney even after the legal engagement was completed").[2] On these facts, *Coe* is not only more recent but controlling, and Sidley fails to even address its holding on this issue.

_____

[2] The facts in *Klopfenstein* are also distinguishable. There, the Court found lack of diligence as a matter of law largely because the plaintiff had been sued by clients

Furthermore, whether the Cácereses exercised proper diligence is a question of fact for the jury not to be decided, as the *Coe* court held, on summary judgment—and certainly not at an even earlier stage of the litigation, on a motion to dismiss. *Id.* at 533, 577 S.E.2d at 247 (citing *Sanders v. Looney*, 247 Ga. 379, 381, 276 S.E.2d 569, 572 (1981)). The Cácereses alleged (and that allegation must be credited as true) that, prior to the IRS reinstating its claim against them in January 2021, they "had no reason to believe that Sidley's advice was incorrect or that the Cácereses would suffer any injury associated with the UPC Transaction." Am. Compl. ¶¶ 30-31. These allegations are sufficient to survive a motion to dismiss.

Sidley is well aware of this. In Sidley's reply in support of its original motion to dismiss, Sidley relied on *Turk v. Morris, Manning & Martin, LLP*, where a court granted (in part) a motion to dismiss on statute of limitations grounds. 593 F.Supp.3d 1258, 1296 (N.D. Ga. 2022). But since that time, the *Turk* court granted the plaintiffs leave to file an amended complaint that contains similar allegations of fraudulent concealment to those asserted by the Cácereses in the Amended Complaint because the Court found the amendment would not be

---

eight years before filing against Deutsche Bank and those clients' claims "were nearly identical to the claims that Klopfenstein has brought here" and he "did not identify any reasonably diligent steps he took in light of that lawsuit to explore his own potential claims." 592 F. App'x at 816.

futile. *Turk v. Morris, Manning & Martin, LLP*, No. 1:20-cv-2815-AT, 2023 U.S. Dist. LEXIS 38248, at *39 (N.D. Ga. Feb. 13, 2023). The *Turk* decision is now notably absent from Sidley's renewed motion to dismiss.

Thus, even if the Cácereses' claims accrued prior to the Eleventh Circuit's 2021 ruling, the Amended Complaint sufficiently alleges detailed allegations of fraudulent concealment tolling to put Sidley on notice or, at the very least, the allegations create questions of fact for the jury to decide.

## C. Plaintiffs' Common-Law Indemnity Claim States a Valid Claim for Relief.

Sidley acknowledges that the Cácereses' claim for common-law indemnity is timely under Georgia law, as such claims are subject to a 20-year statute of limitations from the date of an underlying judgment. *Auto-Owners Ins. Co. v. Anderson*, 252 Ga. App. 361, 364, 556 S.E.2d 465, 467 (2001) (denying a motion for summary judgment based on the statute of limitations because "[t]he statute of limitation for a claim of indemnity is 20 years from the settlement or final judgment"). Sidley nonetheless seeks to dismiss the indemnity claim on the grounds that the Amended Complaint is "devoid of any allegations of vicarious or imputed liability," but this ignores the Cácereses' allegations that the IRS's imposition of liability in the Tax Litigation was based on knowledge imputed to them as a result of Sidley's negligent misrepresentations and professional negligence.

"An action for indemnity allows one who has been required to pay damages caused by the tort of a third party to recover against that party; indemnification contemplates imputed liability arising from the torts of another." *Emergency Professionals of Atlanta v. Watson*, 288 Ga. App. 473, 475, 654 S.E.2d 434, 436 (2007) (citing *Auto-Owners Ins. Co. v. Anderson*, 252 Ga. App. 361, 363 (2001)). Long-established Georgia law holds that the common-law "duty to indemnify arises 'by operation of **law**, *independently of* ***contract***.'" *Harris v. Albany Lime & Cement Co.*, 291 Ga. App. 474, 478, 662 S.E.2d 160, 164 (2008) (emphasis in original) (citing *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 557, 583 S.E.2d 220, 224 (2003).

The Cácereses allege that, as result of the Tax Litigation, they were required to pay the IRS approximately $7 million for UPC's unpaid tax liability. Am. Compl. ¶ 32. The Cácereses also allege Sidley committed tortious acts—specifically, negligent misrepresentations and professional negligence resulting from Sidley's knowledge of the scheme. *Id.* ¶ 66. The only remaining element the Cácereses must plead to establish the element of common law indemnity is that their liability in the Tax Litigation arose out of imputation of Sidley's tortious acts. The Cácereses have done so.

The Cácereses' potential liability to the IRS in the Tax Litigation arose under Georgia's fraudulent transfer statute (Ga. Code Ann. §§ 18-2-21 and 18-2-

22, as they were effective in 1997), which is predicated on the IRS proving that the UPC Transaction was executed with the *intent* to defraud UPC's creditors (namely, the IRS), and that the Cácereses knew or should have known of that intent. Am. Compl. ¶ 67. The IRS's evidence of what the Cácereses knew (or should have known) in the Tax Litigation included whatever knowledge its advisors knew. *See, e.g., Tricarichi v. Commissioner*, No. 23630-12, T.C. Memo 2015-201, at *53 (T.C. Oct. 14, 2015) (imposing transferee liability in analogous stock sale tax shelter based on constructive knowledge of what "Petitioner *and his advisers*" knew or should have known); *see also Roylston v. Bank of Am., N.A.*, 290 Ga. App. 556, 560, 660 S.E.2d 412, 417 (2008) (denying motion to dismiss because, under Georgia law, knowledge of an agent—e.g., an attorney—is imputed to the principal if acquired in service thereto). In order to establish the knowledge element of its claim, the IRS *specifically alleged* the Cácereses knew or should have known of the tax evasion purpose of the UPC transaction precisely *because* they hired R.J. Ruble, a Sidley partner, to write a tax opinion letter. Am. Compl. ¶¶ 65-68 (quoting IRS Compl. against Cácereses).

Indeed, in 2008, the IRS issued a new notice regarding "Midco" or "intermediary" transactions like the UPC Transaction, making explicit that a tax professional's knowledge would be imputed to their client in the event the IRS pursued the client. *See* IRS Notice 2008-111 re: Intermediary Transaction Tax

Shelters (Section 4: "A person engages in the transaction. . . **if any of the following knows or has reason to know** the transaction is structured to effectuate the Plan [i.e., not pay the corporation's tax] . . . (iii) any advisor of that [shareholder] engaged by [that shareholder] to advise it with respect to the transaction.").[3] The Cácereses' liability in the Tax Litigation was premised on knowledge Sidley had and failed to disclose, but which the IRS sought to impute, to the Cácereses.

The Cácereses allege that, in fact, *only* R.J. Ruble, the Sidley partner who signed its tax opinion, was aware that Skandia, the counterparty that acquired the Cácereses' UPC stock, intended to employ illegitimate tax evasion strategies to avoid paying UPC's taxes. *Id.* ¶ 69. The Cácereses' liability for UPC's unpaid taxes was entirely premised on the tortious acts committed by Sidley. Taken in the light most favorable to the Plaintiffs, nothing further is required at the pleading stage.

This is not a unique situation. In *Roberts v. Langdale*, a plaintiff sought indemnity from his attorney for liability resulting from the attorney's representation of him as a guarantor under two promissory notes. 185 Ga. App. 122, 363 S.E.2d 591 (1987). While the plaintiff there failed to prove the attorney's

---

[3] Available at https://www.irs.gov/pub/irs-drop/n-08-111.pdf.

advice was negligent, *Roberts* affirms that a common law indemnity claim is cognizable under Georgia law if, as here, the attorney's faulty advice causes the client's damages. *Id*. at 123-24, 363 S.E.2d at 592-93; *see also In Rolleston v. Cherry*, 226 Ga. App. 750, 487 S.E.2d 354 (1997) (upholding indemnity jury instruction where the plaintiff faced liability based on her attorney's professional negligence). Similarly, in *Crawford v. Johnson*, 227 Ga. App. 548, 489 S.E.2d 552 (1997), a retirement home maintained a common-law indemnity claim against the executor of an estate and the estate's attorney, alleging that the executor and attorney wrongfully depleted the estate. The court of appeals found that the trial court erred in ruling, as a matter of law on summary judgment, that the client could not seek indemnity for the attorney's conduct. *Id*. at 549, 489 S.E.2d at 555. Notably, the court held that the plaintiff could maintain a common-law indemnity claim against the attorney, to the extent its acts caused the jury's award. *Id*. at 552, 489 S.E.2d at 557. Here, in accord with the above Georgia authority, the Cácereses allege that Sidley's tortiously negligent advice caused the Cácereses to enter the UPC Transaction and that Sidley's knowledge was imputed to its clients, the Cácereses, thereby creating the Cácereses liability to the IRS.

As a result, the Amended Complaint adequately alleges a common-law indemnity claim and Sidley's motion to dismiss should be denied.

## Conclusion

For the foregoing reasons, Sidley's Motion to Dismiss should be denied.

Respectfully submitted,

/s/Michael E. Brooks

BROOKS & WARNER LLC
1768 Century Boulevard NE, Suite B
Atlanta, Georgia  30345
(404) 681-0720 – Brooks Direct
(404) 681-0730 – Warner Direct
(404) 681-0780 – Fax

Michael E. Brooks
Georgia Bar No. 084710
mbrooks@brooksandwarner.com
Jill Warner
Georgia Bar No. 378472
jwarner@brooksandwarner.com

SPERLING & SLATER, P.C.
55 West Monroe St., Suite 3200
Chicago, Illinois 60603
T - (312) 641-4882
F - (312) 641-6492

Scott F. Hessell
Admitted Pro Hac Vice
shessell@sperling-law.com
Clayton Faits
Admitted Pro Hac Vice
cfaits@sperling-law.com

Attorneys for Plaintiffs

CERTIFICATION AS TO FONT AND POINT SELECTION

In accordance with Local Rule 7.1(D), the undersigned certifies that this brief was prepared with Book Antiqua 13, a font and point selection approved by the Court in Local Rule 5.1(C).

/s/Michael E. Brooks
Michael E. Brooks

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2024, I electronically filed the foregoing

CÁCERESES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO

DISMISS with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following:

Brad D. Brian, Esq.                     Michael A. Caplan, Esq.
John B. Major, Esq.                     Jarred A. Klorfein, Esq.
Munger Tolles & Olson LLP               Caplan Cobb LLC
350 South Grand Avenue, Suite 50th Floor    75 14th Street NE, Suite 2700
Los Angeles, California 90071           Atlanta, Georgia 30309

Xiaonan April Hu, Esq.
Munger Tolles & Olson LLP
601 Massachusetts Avenue, N.W., Suite 500E
Washington, DC 20001-5369

                                        /s/Michael E. Brooks
BROOKS & WARNER LLC                     Michael E. Brooks
1768 Century Boulevard NE, Suite B      Georgia Bar No. 084710
Atlanta, Georgia 30345                  mbrooks@brooksandwarner.com
(404) 681-0720 – Brooks Direct
(404) 681-0780 – Fax                    Attorney for Plaintiffs