# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Luis Alfredo Cáceres and Luis Angel
Cáceres, Individually, as executor of the
Estate of Alfredo Cáceres, and as
trustee of the Luis Angel Cáceres
Charitable Remainder Unitrust,

      Plaintiffs,

  vs.

Sidley Austin LLP,

      Defendant.

Case No. 1:23-CV-00844-SDG

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

ARGUMENT........................................................................................ 1

    A.    The Cácereses' Legal Malpractice Claims Are Time-Barred .............. 1

        1.    The Cácereses' Legal Malpractice Claims Are Plainly Untimely and Subject to Dismissal Under Fed. R. Civ. P. 12(b)(6) ................................................................................ 2

        2.    Tolling Cannot Save the Cacereses' Untimely Claims.............. 6

            (a)    The Cácereses Do Not Allege Any Separate Fraud ........ 7

            (b)    The Cácereses Do Not Allege Reasonable Diligence......................................................................... 8

            (c)    Even With Tolling, The Claims Are Untimely Because They Were Filed Five Years After The IRS Complaint ............................................................... 11

    B.    The FAC Fails to State A Claim For Common-Law Indemnification .................................................................................. 13

CONCLUSION.................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Barcelona v. Fogelgren,*
664 F. App'x 884 (11th Cir. 2016) ................................................................. 10

*Beal v. Hartford Fire Ins. Co.,*
2020 WL 13587898 (N.D. Ga. Dec. 1, 2020) ..................................................... 3

*Carvalho-Knighton v. Univ. of S. Fla. Bd. of Trustees,*
2016 WL 7666137 (M.D. Fla. Mar. 18, 2016) ................................................. 13

*Cent. Baptist Church of Albany Georgia, Inc. v. Church Mut. Ins.,*
2020 WL 5496096 (M.D. Ga. Aug. 12, 2020) ...................................................... 2

*Coffee v. Gen. Motors Acceptance Corp.,*
30 F.Supp.2d 1376 (S.D. Ga. 1998) ...................................................................... 4

*Davidson, Sochor, Ragsdale & Cohen,*
164 N.Y.S.3d 769 (2022) ........................................................................................ 12

*Gonsalvez v. Celebrity Cruises Inc.,*
750 F.3d 1195 (11th Cir. 2013) ............................................................................. 2

*Griffin Indus., Inc. v. Irvin,*
496 F.3d 1189 (11th Cir. 2007) ............................................................................. 9

*Kapordelis v. Gainesville Surgery Ctr., L.P.,*
2011 WL 3652325 (N.D. Ga. Aug. 19, 2011) ...................................................... 2

*Klopfenstein v. Deutsche Bank Securities, Inc.,*
592 F. App'x 812 (11th Cir. 2014) ................................................................. 9, 10

*La Grasta v. First Union Sec., Inc.,*
358 F.3d 840 (11th Cir. 2004) ................................................................................ 2

*Loftin v. KPMG LLP,*
2003 WL 22225621 (S.D. Fla. Sept. 10, 2003) ................................................. 5, 6

*Luczak v. Farnham,*
842 F. App'x 374 (11th Cir. 2021) .................................................................. 7, 10

*Mobolaji v. Bravo Brio Rest. Grp.*,
2019 WL 11505379 (N.D. Ga. Feb. 26, 2019) ................................................... 6

*Morris v. Weyerhaeuser Co.*,
2006 WL 8435968 (S.D. Ga. Mar. 31, 2006) ...................................................... 3

*Raak Techs., Inc. v. Marx CryptoTech, LP*,
2016 WL 9451440 (N.D. Ga. May 2, 2016) ...................................................... 2, 3

*Therrell v. Georgia Marble Holdings Corp.*,
960 F.2d 1555 (11th Cir. 1992) ........................................................................ 3

*Turk v. Morris, Manning & Martin, LLP*,
593 F.Supp.3d 1258 (N.D. Ga. 2022) .............................................................. 10

*Tye v. HCBJR, LLC*,
2018 WL 11488854 (N.D. Ga. Jan. 29, 2018) ................................................... 12

**STATE CASES**

*ALR Oglethrope, LLC v. Fidelity Nat'l Title Ins. Co.*,
361 Ga. App. 776 (2021) ............................................................................. 13, 15

*Coe v. Proskauer Rose, LLP*,
314 Ga. 519 (2022) ............................................................................. 2, *passim*

*Crawford v. Johnson*,
227 Ga. App. 548 (1997) ................................................................................ 14

*Dist. Owners Ass'n, Inc. v. AMEC Env't & Infrastructure, Inc.*,
322 Ga. App. 713 (2013) ................................................................................ 15

*Goldston v. Bank of America Corporation*,
259 Ga. App. 690 (2003) .............................................................................. 7, 8

*Havenbrook Homes, LLC v. Infinity Real Estate Invs., Inc.*,
356 Ga. App. 477 (2020) ................................................................................ 13

*Hoffman v. Ins. Co. of N.A.*,
241 Ga. 328 (1978) .......................................................................................... 4

*Hunter, Maclean, Exley & Dunn, P.C. v. Frame*,
269 Ga. 844 (1998) .............................................................................. 7, 8, 11

*Hyman v. Jordan*,
201 Ga. App. 852 (1991) ................................................................. 2

*Jankowski v. Taylor, Bishop & Lee*,
246 Ga. 804 (1980) ........................................................................ 5

*Kaylor v. Rome City Sch. Dist.*,
267 Ga. App. 647 (2004) ................................................................. 6

*Newell Recycling of Atlanta, Inc. v. Jones*,
288 Ga. 236 (2010) ....................................................................... 12

*Roberts v. Langdale*,
185 Ga. App. 122 (1987) ............................................................... 14

*Rolleston v. Cherry*,
226 Ga. App. 750 (1997) ............................................................... 15

*Shores v. Troglin*,
260 Ga. App. 696 (2003) ................................................................. 7

*Wallace v. Bock*,
279 Ga. 744 (2005) ......................................................................... 3

*Wilson v. Phillips*,
230 Ga. App. 290 (1998) ................................................................. 7

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) .................................................................... 2

**OTHER RULES**

U.S. Court of Appeals for the Eleventh Circuit Local Rule 36-2 ............................ 9

## INTRODUCTION

In 1997, the Cácereses paid for what they allege to be a negligently prepared opinion letter from R.J. Ruble, an attorney at Brown & Wood. For the next twenty-five years, the Cácereses sat on their hands, even after the IRS filed an action on June 27, 2018 seeking to hold them liable for engaging in the very tax shelter transactions that were the subject of Ruble's letter. Georgia law is clear that, under these circumstances, the Cácereses' breach of contract, negligence, and negligent misrepresentation claims (collectively, the "legal malpractice claims") are untimely. Nor can the Cácereses bring a common-law indemnification claim against Sidley based on the federal government's direct claims against the Cácereses, which were founded on the Cácereses' own misconduct. The Court should dismiss the First Amended Complaint ("FAC") with prejudice.

## ARGUMENT

### A. The Cácereses' Legal Malpractice Claims Are Time-Barred

The Cácereses' legal malpractice claims are untimely. Under Georgia law, the four-year statutes of limitations for those claims began to run in 1997 and certainly no later than the filing of the IRS complaint in 2018. Yet the Cácereses did not file this action until January 13, 2023. In addition, the FAC confirms that the Cácereses cannot meet the requirements for tolling. Because the Cácereses' claims are unsalvageable, the Court should dismiss them with prejudice.

**1. The Cácereses' Legal Malpractice Claims Are Plainly Untimely and Subject to Dismissal Under Fed. R. Civ. P. 12(b)(6)**

As discussed in Sidley's Motion, district courts may dismiss claims on timeliness grounds when, as here, "it is apparent from the face of the complaint that the claim is time-barred." *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1997 (11th Cir. 2013) (cleaned up). That is true even though statute of limitations is an affirmative defense, as the Cácereses' own authority explains. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007); Opp. at 6–7.

The FAC demonstrates that each of the legal malpractice claims is untimely.

<u>Breach of Contract</u>. "Under well-settled Georgia law, a breach of contract claim arises at the time of the breach, not the time actual damages result or are ascertained." *Raak Techs., Inc. v. Marx CryptoTech, LP*, 2016 WL 9451440, at *3 (N.D. Ga. May 2, 2016) (citation and internal quotation marks omitted). That is so even though, as the Cácereses argue, Opp. at 9–10, damages are an element of a breach of contract claim.[1] *See Cent. Baptist Church of Albany Georgia, Inc. v.*

---

[1] The date the Cácereses discovered their claims is irrelevant, although the face of the FAC confirms that they were on notice when the IRS filed its complaint against them. Georgia courts have "squarely" rejected applying a discovery rule to breach of contract, professional negligence, and negligent misrepresentation claims. *Kapordelis v. Gainesville Surgery Ctr., L.P.*, 2011 WL 3652325, at *3 (N.D. Ga. Aug. 19, 2011) (contract); *Coe*, 314 Ga. at 528 (negligent misrepresentation); *Hyman v. Jordan*, 201 Ga. App. 852, 853 (1991) (professional negligence);

*Church Mut. Ins.*, 2020 WL 5496096 (M.D. Ga. Aug. 12, 2020) (limitations period "runs from the time the contract is broken," "even before damage results"); *Wallace v. Bock*, 279 Ga. 744, 747 (2005).

The Cácereses' argument that their breach of contract claim could not have accrued until 2021—when the Eleventh Circuit reinstated the IRS action—ignores this settled rule that the limitations period for a breach of contract claim begins to run "at the time of the breach." *Raak*, 2016 WL 9451440, at *3. Because the FAC alleges that Sidley (through Ruble) breached its contractual obligations by preparing the 1997 opinion letter, FAC ¶¶ 40, 42, the claim accrued in 1997. *Beal v. Hartford Fire Ins. Co.*, 2020 WL 13587898, at *6 (N.D. Ga. Dec. 1, 2020) ("[A] breach of contract action in Georgia . . . is ripe even where the amount of damages is nominal or unknown"). The Cácereses' position not only ignores settled Georgia law, but the impact of the 2018 IRS complaint. As the limitations period for breach of a non-written contract is four years,[2] the claim is untimely.

Professional Negligence. The analysis is similarly straightforward for the Cácereses' professional negligence claim. The Georgia Supreme Court has held

---

*Therrell v. Georgia Marble Holdings Corp.*, 960 F.2d 1555, 1561 (11th Cir. 1992). That rule occasionally produces "harsh result[s]," but "harshness is no shield to a statute of limitations defense." *Morris v. Weyerhaeuser Co.*, 2006 WL 8435968, at *6 (S.D. Ga. Mar. 31, 2006).

[2] For the reasons discussed *infra* pp. 12–13, the six-year limitations period for breach of a written instrument does not apply.

for decades that the four-year statute of limitations for a professional negligence claim "begins to run from the date the attorney breached the duty owed to the client." *Hoffman v. Ins. Co. of N.A.*, 241 Ga. 328, 329 (1978).  The Cácereses do not contend otherwise in their opposition.  Here, the FAC alleges that Sidley breached its duty to the Cácereses when, among other things, Ruble "prepar[ed] an opinion letter that falsely stated Plaintiffs would not be responsible for [UPC's] tax liability."  FAC ¶ 60.  This conduct took place in 1997.  The professional negligence claim therefore accrued in 1997 and lapsed in 2001, rendering the claim untimely.  And even when the 2018 IRS complaint directly challenged the Ruble opinion on which the Cácereses had relied, they did not file this action until 2023.

Negligent Misrepresentation.  The negligent misrepresentation claim is no different from both a legal and factual perspective.  The Georgia Supreme Court held in *Coe v. Proskauer Rose, LLP*, 314 Ga. 519, 527–28 (2022), that the limitations period for negligent misrepresentation begins to run when the plaintiff "first" suffers a "pecuniary loss" from the misrepresentations.  That is so even if the plaintiff suffers "additional, later economic damages."  *Id.* at 528; *see Coffee v. Gen. Motors Acceptance Corp.*, 30 F.Supp.2d 1376, 1382 (S.D. Ga. 1998) ("It is unnecessary . . . for Plaintiffs to have experienced their *entire* injury" for claim to accrue).  This rule prevents plaintiffs from circumventing the statute of limitations through artful pleading as to the categories of damages they seek.

The Cácereses do not dispute that, like the plaintiffs in *Coe*, they *could have* sought to "recover[] fees paid to Sidley in 1997" or defense costs they started to incur in 2018 to defend against the IRS complaint. Opp. at 10. They merely contend that in this action, they "do not" seek to recover those costs, so those costs did not commence the limitations period. *Id.* But that argument has been squarely rejected by *Coe* and by the Georgia Supreme Court's decision in *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804 (1980), which held that the cause of action for legal malpractice "arises . . . before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence." *Id.* at 806 (citation and internal quotation marks omitted). As the Georgia Supreme Court held in *Jankowski*, "[a]ny appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue." *Id.* (citation and internal quotation marks omitted). Because it is undisputed that the Cácereses suffered "appreciable harm" arising out of the purportedly negligent opinion letter as early as when they paid fees to Sidley in 1997 and certainly no later than when they started incurring fees in the IRS action in 2018, the four-year limitations period for the negligent misrepresentation claim expired by 2022.

These incurred costs—the existence of which the Cácereses do not dispute— distinguish this case from *Loftin v. KPMG LLP*, 2003 WL 22225621 (S.D. Fla. Sept. 10, 2003). In *Loftin*, it was unclear if the plaintiff would suffer any injury at

all, as the complaint there only alleged that the plaintiff was being audited by the IRS; no claim had been asserted by the IRS, and no action had been commenced. *Id.* at *3. There were also no allegations in the complaint that the plaintiff paid Sidley for the opinion letter he received. *Id.* at *7; *see Loftin*, No. 9:02-cv-81166 (S.D. Fla. 2003), ECF No. 25. By contrast, here, the Cácereses suffered two prior instances of pecuniary loss—one in 1997, when they paid Sidley fees for the opinion letter; and one in 2018, in connection with their defense costs in the IRS action. Accordingly, even if the Cácereses did not have standing when they first filed suit to seek damages *for payments made to the IRS*—because "the amount and nature of the payment remain unknown," *Loftin*, 2003 WL 22225621, at *7, and had yet to be incurred—the Cácereses' overarching claim for negligent misrepresentations had already accrued and expired because the Cácereses had *already* suffered multiple pecuniary losses even before any payment to the IRS.

## 2. Tolling Cannot Save the Cacereses' Untimely Claims

The Cácereses cannot rely on tolling to save their claims because the FAC does not allege that (i) Sidley perpetrated a separate and independent fraud upon the Cácereses that concealed their legal malpractice claims, or (ii) the Cácereses acted diligently to discover their claims. *Mobolaji v. Bravo Brio Rest. Grp.*, 2019 WL 11505379, at *4 n.6 (N.D. Ga. Feb. 26, 2019) (Georgia courts "require" plaintiffs to allege facts to support tolling); *Kaylor v. Rome City Sch. Dist.*, 267 Ga.

App. 647, 650 (2004); Mot. at 14–19.  Regardless, any potential tolling would have ended in 2018, when the IRS filed its complaint against the Cácereses.

(a)    *The Cácereses Do Not Allege Any Separate Fraud*

To qualify for tolling, the Cácereses must allege a "separate independent actual fraud"—beyond the malpractice itself—that deterred them from filing suit.  *Shores v. Troglin*, 260 Ga. App. 696, 697 (2003); *Luczak v. Farnham*, 842 F. App'x 374, 378 (11th Cir. 2021).  Such an independent fraud must constitute "concealment . . . by positive affirmative act, not by mere silence."  *Wilson v. Phillips*, 230 Ga. App. 290, 290–91 (1998).  The FAC alleges nothing of that sort.  All it alleges is that Sidley "never withdrew its written opinion."  FAC ¶ 33.  Sidley's alleged failure to withdraw its opinion is not affirmative concealment—it is, at most, the type of "mere silence" that cannot trigger tolling.  *Wilson*, 230 Ga. App. at 290–91; *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 847–48 (1998) (tolling requires "something more than a 'mere failure, with fraudulent intent, to disclose'" (citation omitted)).

Neither *Goldston v. Bank of America Corporation*, 259 Ga. App. 690 (2003), nor *Coe*, both of which the opposition cites, holds otherwise.  In *Goldston*, the plaintiff had filed a claim *for fraud* based on "alleged affirmative acts [of fraud]" by the defendant, which the court held was sufficient to invoke tolling.  *Id.* at 694.  But *Goldston* specifically distinguished *Hunter* (a case involving a legal

malpractice action in which tolling did not apply) on the grounds that "there was absolutely no evidence" in *Hunter* "by which a trier of fact could conclude that the defendant concealed information so as to show fraud." *Id.* at 695. So too here. The FAC is devoid of any allegations that Sidley engaged in any separate, affirmative fraud that deterred the Cácereses from bringing their claims.

*Coe* is likewise inapposite. Because the defendant law firm in *Coe* did not dispute "that the Coes carried their burden to show fraud" under O.C.G.A. § 9-3-96, the Court did not address fraudulent concealment in its opinion. 314 Ga. at 530 n.19. The Court's reference to an attorney's disclosure obligations concerned the *separate* tolling requirement that plaintiffs act with reasonable diligence to discover their claims. *Id.* at 530–32. The Cácereses' failure to identify any separate and independent fraud dooms their effort to invoke tolling.

### (b) The Cácereses Do Not Allege Reasonable Diligence

The Cácereses also cannot invoke tolling because the FAC does not allege that the Cácereses acted with reasonable diligence to discover their claims after the IRS filed its action in 2018. *See* Mot. at 16–18. The Cácereses argue otherwise based on the FAC's allegation that the Cácereses "'had no reason to believe that Sidley's advice was incorrect'" until 2021. Opp. at 16 (citation omitted). But the Court's "duty to accept the facts in the complaint as true" does not extend to "ignor[ing] specific factual details of the pleading in favor of general or conclusory

allegations" or to allegations that are contradicted by documents incorporated by reference. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

Here, the FAC's other allegations—and the 2018 IRS complaint against the Cácereses—make clear that the Cácereses should have, by 2018 at the latest, started to investigate their claims. Mot. at 21. Among other things, the IRS complaint revealed that Ruble had been "convicted for writing tax opinion letters that blessed bogus tax shelters" and had "received a sentence of six-and-a-half years." IRS Compl. ¶ 39. At that point, the Cácereses were on notice that the tax advice they had received from Ruble was likely flawed.

The facts in this case strongly resemble those in the Eleventh Circuit's decision in *Klopfenstein v. Deutsche Bank Securities, Inc.*, 592 F. App'x 812 (11th Cir. 2014), which affirmed the dismissal of claims on substantially similar facts.[3] In *Klopfenstein*, the Eleventh Circuit held that a direct communication from the IRS asserting that the agency "intended to disallow the deductions" the plaintiff had taken as part of a tax shelter transaction was sufficient to trigger a plaintiff's obligation to exercise reasonable diligence. 592 F. App'x at 814–15.

The Cácereses attempt to diminish *Klopfenstein*'s significance by pointing to the Georgia Supreme Court's subsequent decision in *Coe*. Opp. at 15. But

---

[3] The Cácereses also suggest that *Klopfenstein* should be disregarded because it is unpublished. Opp. at 15. That is contrary to Rule 36-2 of the Eleventh Circuit, which authorizes citing unpublished decisions as persuasive authority.

contrary to the Cácereses' representations, *Coe* did not "directly reject[]" *Klopfenstein*'s reasoning regarding reasonable diligence. Opp. at 15. In *Coe*, the Georgia Supreme Court observed that a client "exercising reasonable diligence" is entitled to rely on their attorney's disclosures or lack thereof "at least until other facts come to light that would cause a reasonably diligent person to revisit the issue." 314 Ga. at 531. The Court then concluded that a "vaguely" crafted engagement letter and two news articles were insufficient to cause a reasonably diligent client to question their attorney's advice. *Id.* at 531–32. That holding does not conflict with *Klopfenstein*, which held that plaintiff-specific communications raising concerns trigger a plaintiff's duty to investigate potential claims. The Cácereses' circumstances, after they were sued by the IRS in 2018, far more closely resemble *Klopfenstein* than *Coe*.

Because the legal malpractice claims are untimely and the Cácereses do not allege any basis for tolling, the Court should dismiss them. *Luczak*, 842 F. App'x at 378; *Barcelona v. Fogelgren*, 664 F. App'x 884, 886 (11th Cir. 2016); *Turk v. Morris, Manning & Martin, LLP*, 593 F.Supp.3d 1258, 1296 (N.D. Ga. 2022).[4]

---

[4] The Cácereses claim that *Turk* supports their tolling argument, Opp. at 16–17, but *Turk* underscores the insufficiency of the Cácereses' allegations. *Turk* granted leave to amend because the plaintiffs alleged that *after* the IRS began an audit, the defendants "reiterated and reassured" them that they would still be able to claim their deductions "notwithstanding . . . the audit." *Turk*, No. 1:20-cv-02815 (N.D. Ga. 2022), ECF No. 340 at 29–31. That is precisely the type of allegation the

Dismissal is also appropriate because the claims are untimely even with tolling.  Tolling only extends the limitations period until the Cácereses should have learned of their potential claims.  *Hunter*, 269 Ga. at 848.  For the reasons discussed above, the Cácereses should have learned of their claims by 2018 at the latest, when the IRS filed its action.  The Cácereses do not dispute that under a four-year limitations period, their legal malpractice claims are untimely because they waited until 2023 to file this action.

The Cácereses nonetheless argue that even if the "IRS action triggered the statute of limitations," their contract claim—but not their professional negligence and misrepresentation claims—"would [] be timely" because the six-year limitations period for written contracts applies and does not expire until 2024.  Opp. at 12.

That argument fails because the FAC does not allege the existence of a written contract.  Sidley identified the Cácereses' failure to allege the existence of a written contract in the parties' prior briefing, and the Cácereses admitted that they failed to allege any writing.  *Compare* ECF No. 15 at 12 n.1 *with* Opp. at 12 n.1.  Despite now having had an opportunity to amend, the Cácereses *still* do not

---

Cácereses omit.  Indeed, there is no allegation that the Cácereses had any communication with Ruble or Sidley after receiving the 1997 opinion.

allege a written contract.  *See generally* FAC.  As before, the FAC alleges only that "Plaintiffs entered into a contract with Sidley whereby Sidley agreed to . . . provide a tax legal opinion and tax consulting services for Plaintiffs in exchange for the Plaintiffs' agreement to pay Sidley."  FAC ¶ 37.  Plaintiffs therefore cannot rely on the six-year limitations period applicable to written contracts.

The Cácereses also ask the Court to "infer" a written contract based on the fact that Sidley is a "sophisticated law firm."  Opp. at 12 n.1.[5]  The Court should reject this request.  Not only did the Cácereses fail to amend their complaint to allege the existence of a written contract, their Opposition does not claim that the Cácereses *could* make such an amendment.  There is every reason to believe that the Cácereses cannot allege the existence of a written contract,[6] especially since New York did not require written engagement letters prior to 2002.  *Proceeding by Davidson, Sochor, Ragsdale & Cohen*, 164 N.Y.S.3d 769, 777 (2022).

---

[5] Sidley is not aware of any cases involving a Georgia breach of contract action in which the court simply assumed or inferred the existence of a written instrument without any allegations to that effect.  In *Newell Recycling of Atlanta, Inc. v. Jones*, 288 Ga. 236 (2010), which the Opposition cites, there was a dispute as to whether an alleged writing constituted a *complete* written contract.  *Id.* at 238.  Here, by contrast, the FAC does not allege any written instrument, FAC ¶ 33, or any other essential details about the contract such as the date of the agreement or its terms.  *See Tye v. HCBJR, LLC*, 2018 WL 11488854, at *10 (N.D. Ga. Jan. 29, 2018).

[6] The Cácereses' accusation that Sidley failed to keep the Cácereses' file is spurious.  Opp. at 12 n.1.  To the extent any files existed, as Sidley advised Cácereses' counsel, they would have been lost in the September 11 terrorist attacks on the World Trade Center, which destroyed the Brown & Wood/Sidley offices at the time.

Under these circumstances, the Cácereses cannot claim the benefit of a limitations period for a written instrument whose existence they do not, and in all likelihood cannot, allege. *See Carvalho-Knighton v. Univ. of S. Fla. Bd. of Trustees*, 2016 WL 7666137, at *2 (M.D. Fla. Mar. 18, 2016). Because all of the legal malpractice claims are subject to a four-year statute of limitations, and because that limitations period would have ended in 2022 even with tolling, the Court should dismiss the Cácereses' claims as time-barred.

**B.** **The FAC Fails to State A Claim For Common-Law Indemnification**

The Court should also dismiss the claim for common-law indemnification. Georgia courts have consistently rejected claims for common-law indemnification when, as here, plaintiffs seek indemnification for their own misconduct rather than vicarious liability for the defendant's conduct. *ALR Oglethrope, LLC v. Fidelity Nat'l Title Ins. Co.*, 361 Ga. App. 776, 787 (2021); *Havenbrook Homes, LLC v. Infinity Real Estate Invs., Inc.*, 356 Ga. App. 477, 483 (2020).

The Opposition does not engage with this authority. Instead, the Cácereses insist that they have stated a claim because the IRS action purportedly "sought to impute" Ruble's knowledge to the Cácereses to prove that they knew their tax shelter transactions were fraudulent, and, therefore, the IRS action sought to "imput[e]" Sidley's "tortious acts" to the Cácereses. Opp. at 20.

That argument mischaracterizes the IRS complaint. The IRS complaint makes clear that the government's fraudulent transfer claims against the Cácereses were predicated on the Cácereses' *own knowledge and intent*. IRS Compl. ¶¶ 24, 41, 53–54, 145, 158. The IRS complaint's references to Ruble's conduct were part of its overarching allegation that the Cácereses knowingly and intentionally hired attorneys to help them evade federal taxes. *Id.* ¶¶ 24–25, 37–40 (the Cácereses "hired attorney R.J. Ruble . . . to draft a tax opinion letter purporting to release them of personal liability for [UPC's] capital gains taxes" because "they knew that neither [UPC] nor Skandia intended to pay capital gains taxes"). Far from trying to hold the Cácereses liable for Sidley's conduct, the IRS complaint sought to hold the Cácereses liable for their own misconduct.[7] Accordingly, the Cácereses cannot state a claim for common-law indemnification, as even the Cácereses' authority holds. *Crawford v. Johnson*, 227 Ga. App. 548, 549 (1997) ("Crawford may not seek contribution for liability arising from his own acts of moral turpitude.").

The other cases cited in the Opposition do not hold otherwise. Contrary to the Cácereses' assertions, the court in *Roberts v. Langdale*, 185 Ga. App. 122 (1987), did not "affirm[] that a common law indemnity claim is cognizable" if an

---

[7] The Cácereses' reliance on IRS Notice 2008-111 to establish vicarious liability is misplaced. Opp. at 20. Not only does the text of the Notice itself make clear that it "does not affect the legal determination of . . . whether such person is liable, at law or in equity," IRS Notice 2008-111 § 1, the Notice does not speak to the specific claims pursued by the 2018 IRS complaint—the complaint itself does.

attorney's "faulty advice causes the client's damages." Opp. at 21. The sole issue presented on appeal in that case was whether a claim for legal malpractice requires proof of negligence; the case did not address an indemnification claim. *Id.* at 123.

The Cácereses' reliance on *Rolleston v. Cherry*, 226 Ga. App. 750 (1997), is similarly misplaced. *Cherry* deemed an indemnification claim against an attorney viable because the plaintiff's liability in an action for abusive litigation "was at least partially predicated upon acts for which" the plaintiff and her attorney "could be considered joint tortfeasors." *Id.* at 754. Here, by contrast, the FAC does not allege that Sidley was a joint tortfeasor as to the government or that Sidley could have been held jointly liable for fraudulent transfer alongside the Cácereses. Even if it did, the claim would fail as a matter of law because "after the enactment of [O.C.G.A. § 51-12-33]" in 2005, "a defendant may not seek indemnification from another defendant as a joint tortfeasor simply based on allegations that the other defendant's negligence actually caused the harm." *ALR Oglethrope, LLC*, 361 Ga. App. at 785–87; *Dist. Owners Ass'n, Inc. v. AMEC Env't & Infrastructure, Inc.*, 322 Ga. App. 713, 715–16 (2013). Because the FAC does not allege that the IRS action sought to recover from the Cácereses on a theory of vicarious liability for Sidley's actions, the claim for common-law indemnification must be dismissed.

## CONCLUSION

Sidley respectfully requests that the FAC be dismissed with prejudice.

DATED: January 18, 2024          CAPLAN COBB LLC

By:        */s/ Michael A. Caplan*
_____

MICHAEL A. CAPLAN (GA Bar No. 601039)
mcaplan@caplancobb.com
JARRED A. KLORFEIN (GA Bar No. 562965)
jklorfein@caplancobb.com
CAPLAN COBB LLC
75 Fourteenth Street, N.E., Suite 2700
Atlanta, Georgia 30309
Telephone:  (404) 596-5600
Facsimile:   (404) 596-5604

DATED: January 18, 2024       MUNGER, TOLLES & OLSON LLP

By:        */s/ Brad D. Brian*
_____
BRAD D. BRIAN (*pro hac vice*)
brad.brian@mto.com
JOHN B. MAJOR (*pro hac vice*)
john.major@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

XIAONAN APRIL HU (*pro hac vice*)
april.hu@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001-5369
Telephone:  (202) 220-1100
Facsimile:   (202) 220-2300

*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing was prepared in Times New Roman font, 14-point type, and complies with Local Rule 5.1(C).

This 18th day of January, 2024.

*/s/ Michael A. Caplan*
MICHAEL A. CAPLAN
GA Bar No. 601039
mcaplan@caplancobb.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2024, I electronically filed the foregoing document through the Court's CM/ECF system, which will automatically send electronic notification of such filing to all counsel of record.

This 18th day of January, 2024.

/s/ Michael A. Caplan
MICHAEL A. CAPLAN
GA Bar No. 601039
mcaplan@caplancobb.com

*Attorney for Defendant*