# Exhibit B

FILED by _WC_ D.C.

Jun 11 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

| | |
|---|---|
| PETER T. LOFTIN,<br><br>    Plaintiff,<br><br>    vs.<br><br>KPMG LLP, FIRST UNION NATIONAL BANK/WACHOVIA CORPORATION, QA INVESTMENTS LLC, QUELLOS GROUP LLC, PRESIDIO GROWTH LLC, and SIDLEY AUSTIN BROWN & WOOD LLP,<br><br>    Defendants. | CASE NO. 02-81166-CIV-RYSKAMP |

## MOTION BY DEFENDANT SIDLEY AUSTIN BROWN & WOOD LLP
## TO DISMISS PURSUANT TO FED. R. CIV. PRO. 12(b)(1), 12(b)(6) AND 9(b)

923803.6

89/kb

## I.     **INTRODUCTION**

Plaintiff Peter T. Loftin ("Plaintiff"), having made nearly $130 million on which he has yet to pay a penny of tax, now seeks money from the law firm Sidley Austin Brown & Wood LLP ("Brown & Wood")[1] to compensate him for alleged tax-related damages he may never suffer.  According to Plaintiff, Brown & Wood (and others) "fraudulently induced" him to engage in certain securities transactions (known as "FLIP" and "BLIP") to offset nearly $130 million of capital gains.  The IRS now is auditing Plaintiff's tax returns, and he is negotiating with the IRS to settle his tax liability.  But before the IRS even has concluded its audit, let alone made a determination of tax liability, Plaintiff seeks to recover for any and all taxes, interest, and penalties that <u>might</u> – <u>at some point in the future</u> – be assessed against him.  Plaintiff has brought this suit against Brown & Wood even though his own Corrected Amended Complaint:

- Makes no allegation that the IRS has assessed any additional tax, interest, or penalties against Plaintiff; and

- Concedes that the only communications Plaintiff had with Brown & Wood were in the form of "opinion" letters, sent months after Plaintiff already had committed to and engaged in the securities transactions at issue in this case.

While Brown & Wood strongly asserts that Plaintiff's claims are totally without merit, this Court need not reach that question because they fail as a matter of law.  First, those claims – based on speculation that at some time in the future Plaintiff <u>may</u> have to pay tax on his capital gains, along with interest and penalties thereon – are not yet ripe for adjudication, and therefore are subject to dismissal under Rule 12(b)(1).

Second, even if this lawsuit had ripened into a justiciable controversy, each of Plaintiff's claims is barred by Plaintiff's own factual allegations.  Plaintiff's RICO claim is barred because the RICO statute expressly excludes fraud in connection with the purchase or sale of securities as a "predicate" for RICO liability.  In addition, Plaintiff has not alleged he has suffered any "injury" within the meaning of RICO.

---

[1] Sidley Austin Brown & Wood LLP is the successor to  Brown & Wood LLP as a result of a merger in 2001.

1

Third, Plaintiff's state law claims for fraud, negligent misrepresentation, breach of fiduciary duty, and malpractice are barred by (1) his explicit admissions that he entered into each of the transactions before he received any representations from Brown & Wood and (2) his failure to allege that he relied on Brown & Wood in filing his tax returns. These admissions preclude Plaintiff from establishing the essential element of reliance for his fraud and negligent misrepresentation claims. They also preclude Plaintiff from showing that the Brown & Wood tax opinions caused him to enter into those transactions or caused him to file his allegedly false tax returns, a necessary element of both his breach of fiduciary duty and malpractice claims.

Fourth, the Complaint falls far short of Rule 9(b)'s standard for pleading fraud-based claims. Although claiming that Brown & Wood "made numerous material misrepresentations and failed to disclose material information" to him, Plaintiff has failed to specify each of the false statements allegedly made by Brown & Wood and to explain why they were false.

None of Plaintiff's claims can be amended to state a claim. Accordingly, this Court should dismiss Brown & Wood from the Complaint with prejudice.

## II.     BACKGROUND AND RELEVANT FACTS

### A.     The 1997 FLIP Transaction

In 1997, after Plaintiff made $30 million from the sale of his interest in a telecommunications company, he approached his bank (First Union) for "investment advice." Corrected Amended Complaint ("CAC") ¶¶ 19, 20.[2] On August 6, 1997, Plaintiff met with First Union representatives, who encouraged him to retain KPMG for tax planning services. CAC ¶ 20-21. The next day, Plaintiff met with various First Union and KPMG representatives, who presented the FLIP tax strategy. CAC ¶ 22. At this meeting, Plaintiff was allegedly "assured that he would either make substantial money or incur large capital losses, or both, on the investments to offset the taxable gains that he had incurred in his sale of FiberSouth," and "that

---

[2] Brown & Wood was not present and does not know what was said at any meetings that Plaintiff alleges that he had with other Defendants. Brown & Wood accepts these allegations for purposes of this motion to dismiss only.

he would receive a legal opinion from a large, well-known law firm," that would "certify the 'economic substance' of KPMG's tax strategy for Mr. Loftin and the operational aspects of the investments." CAC ¶¶ 23, 24. Nowhere does Plaintiff allege that Brown & Wood was mentioned at these meetings.

At the conclusion of these meetings, Plaintiff "agreed to implement the FLIP tax strategy and to engage KPMG to prepare his tax returns." CAC ¶ 31. Plaintiff alleges that he had committed to the FLIP transaction "before he had even received KPMG's own opinion, let alone Brown & Wood's." CAC ¶ 33. Plaintiff then engaged in a series of securities transactions that were concluded by December 1997, making a profit of at least $486,294. CAC ¶ 38. KPMG delivered its opinion letter to him on June 8, 1998, and Brown & Wood's letter followed on June 15, 1998. CAC ¶ 33. But according to Plaintiff, by then "it hardly mattered what the opinion said because Mr. Loftin was already committed." CAC ¶ 33 (emphasis added).

Plaintiff filed his 1997 federal income tax return in October 1998. Plaintiff does not allege that Brown & Wood had anything to do with the preparation or the filing of his tax return. CAC ¶ 60(f).

**B.      The 1999 BLIP Transaction**

In 1999, Plaintiff made another $65 million from the sale of interests in his telecommunications business and made tens of millions more from his investment portfolio. CAC ¶¶ 45, 46. This time he contacted KPMG directly for tax advice. CAC ¶ 46. After discussions with KPMG, Plaintiff agreed to enter into the BLIP transaction. CAC ¶ 48. As part of BLIP, Plaintiff "participated in a series of transactions involving investments in foreign currency-based securities." CAC ¶ 49. As before, Brown & Wood was not involved in the discussions with Plaintiff. And as before, Brown & Wood "provided an after-the-fact 'more than likely' opinion letter that Mr. Loftin did not receive until after he had entered into the [BLIP] deal." CAC ¶ 51 (emphasis added). Thus, the Brown & Wood opinion letter allegedly "further

reassured Mr. Loftin that he was making a reasonable, sound and prudent decision to invest in a valid bona fide investment." CAC ¶ 44 (emphasis added).

Plaintiff's 1999 and 2000 federal income tax returns apparently included deductions attributable to the BLIP transaction. Plaintiff does not allege that Brown & Wood had any role in the preparation or filing of these tax returns. CAC ¶ 60(g), (h). Further, Plaintiff filed his 2000 return in 2001, after he learned that the IRS had initiated an audit of his 1997 tax return. CAC ¶¶ 54, 60(h).

### C.    **Brown & Wood's Alleged Role**

The central allegation in Plaintiff's complaint is that but for "Defendants' fraud," he never would have engaged in the FLIP and BLIP transactions and thereby would have avoided potential interest, penalties, and legal fees he may face as a result of his IRS audit. CAC ¶¶ 34, 52, 89. But according to the Complaint, Brown & Wood's role was limited to two discrete activities.

First, Brown & Wood purportedly "lent the tax strategies enormous perceived credibility and legitimacy by putting its name and reputation behind them." CAC ¶ 58  Notwithstanding Plaintiff's glaring failure to allege that anyone even mentioned Brown & Wood to him, he claims that "Brown & Wood knew that its name was being used in pitch meetings to sell clients on the tax strategies and consented to its name being used in this fashion, all in exchange for a fee." CAC ¶ 58.

Second, Brown & Wood allegedly made unspecified "false and misleading" statements in its opinion letters. CAC ¶ 60(e) (the Brown & Wood "opinion contained numerous materially false and misleading statements regarding the likely tax impact of the FLIP transactions."); CAC ¶ 60(j) (same as to the BLIP transaction). The complaint does not, however, identify which statements in the opinion letters were "false and misleading," why they are false, or how they may have deceived Plaintiff.

923803.6                                4

**D.      Current Status of IRS Audit**

In October 2000, the IRS made a formal information request of Plaintiff, and initiated an audit of his 1997 tax return.  CAC ¶ 54.  The IRS has since undertaken audits of Plaintiff's 1999 and 2000 tax returns.  CAC ¶ 5.  Plaintiff has "committed to pursue settling his tax liability with the IRS" and alleges that he "will likely have to make substantial tax repayments, plus undetermined interest, and is subject to potential penalties."  Id.

## III.      ARGUMENT

**A.      The Complaint Must Be Dismissed Because Plaintiff Cannot Meet His Burden of Showing That His Claims Against Brown & Wood Are Ripe for Adjudication.**

Ripeness, a subset of the standing doctrine, has both a jurisdictional and a prudential component.  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, ___ U.S. ___, 2003 WL 21210427, at *4 (May 27, 2003); *Johnson v. Sikes*, 730 F.2d 644, 648 (11th Cir. 1984).  On the jurisdictional side, Article III of the Constitution prohibits federal courts from hearing actions that do not present a live "Case or Controversy."  U.S. Const. art. III, § 2, cl. 1; *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 138 (1974).  The prudential aspect of ripeness allows federal courts to determine that "a resolution of the dispute should come at a later date, if at all," even if jurisdiction is otherwise available.  1 Laurence H. Tribe, *American Constitutional Law* § 3-10, at 335 (3d ed. 2000).  Thus, "'[e]ven when the constitutional minimum has been met . . . prudential considerations may still counsel judicial restraint.'"  *Digital Props., Inc. v. City of Plantation,* 121 F.3d 586, 589 (11th Cir. 1997) (quoting *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 940 n.12 (D.C. Cir. 1986)).  Ripeness is, in sum, "a question of timing," *Blanchette*, 419 U.S. at 140, "its basic rationale [being] to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).

As the party invoking federal jurisdiction, Plaintiff  bears the burden of establishing that his claims against Brown & Wood are "ripe" for judicial determination.  *E.g., Warner Cable*

*Comms., Inc. v. City of Niceville*, 911 F.2d 634, 640 (11th Cir. 1990); *Coalition for Sustainable Res., Inc. v. United States Forest Serv.*, 259 F.3d 1244, 1249 (10th Cir. 2001).

In *Abbott Labs*, the Supreme Court directed courts faced with "ripeness" questions to "resolve 'whether there is sufficient injury to meet Article III's requirement of a case or controversy and . . . whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court.'" *Digital Props., Inc.,* 121 F.3d at 589 (quoting *Cheffer v. Reno,* 55 F.3d 1517, 1524 (11th Cir. 1995) (interpreting *Abbott Labs*, 387 U.S. at 149)). More specifically, this Court must ensure: (1) that Plaintiff satisfies his burden of showing that his claims are fit for a judicial decision, and (2) that the parties will not suffer undue hardship if the Court withholds its immediate consideration. *Cheffer*, 55 F.3d at 1524; *Abbott Labs*, 387 U.S. at 149; s*ee, e.g., Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1581 (Fed. Cir. 1993). As explained below, Plaintiff cannot establish that his claims are ripe.

1. **Plaintiff's Claims Against Brown & Wood Are Not Ripe Because They Are Contingent Upon a Final Resolution of the IRS's Claim Against Plaintiff.**

Plaintiff maintains that Brown & Wood is liable to him under a variety of theories based on the Brown & Wood "opinion letters" he received after he already had engaged in the tax-related transactions. He apparently seeks damages based upon his tax liability to the IRS if the deductions attributable to the transactions are disallowed. CAC ¶ 5. He has not alleged that he has paid any part of his tax liability, but merely that he "is currently in negotiations with the IRS to settle his tax liability." *Id.* He predicts that he "will likely have to make substantial tax repayments, plus undetermined interest, and is subject to potential penalties." *Id.* ¶ 55.

Under Florida law, the mere existence of a dispute between the IRS and a taxpayer does not "conclusively establish[] an injury upon which to base a professional malpractice action." *Peat, Marwick, Mitchell & Co. v. Lane*, 565 So. 2d 1323, 1326 (Fla. 1990).[3] Rather, a cause of action for professional malpractice cannot accrue "until the underlying legal proceeding" on

---

[3] *Peat, Marwick* involved a claim for accounting malpractice. The court expressly stated, however, that the elements of a cause of action alleging accounting malpractice are identical to those for a legal malpractice claim. 565 So. 2d at 1326.

which the malpractice claim is based has "been completed on appellate review," *id.* at 1325-26, or a final settlement has been executed by the parties. *Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido* ("*Perez-Abreu*"), 790 So. 2d 1051, 1054 (Fla. 2001). The reason for this rule is that until there has been an irrevocable settlement of the dispute between the IRS and Plaintiff, or a complete litigation of the legality of Plaintiff's tax treatment, "there [is] no injury" to him. *Peat, Marwick*, 565 So. 2d at 1326. "To hold otherwise would mean that [a lawyer's] client would have an action for malpractice as soon as the client received a 'Ninety-Day Letter' from the IRS. That result is contrary to common sense and reason." *Id. See also Glucksman v. Persol N. Am., Inc.*, 813 So. 2d 122, 126 (Fla. Dist. Ct. App. 2002) (legal malpractice action not ripe until the execution of the out-of-court settlement extinguishes the parties' right to sue).

The same reasoning applies to Plaintiff's remaining causes of action against Brown & Wood. Until there is a final settlement between the IRS and Plaintiff or a determination of his tax liability, Plaintiff does not have even a colorable basis upon which to base his fraud, negligent misrepresentation, breach of fiduciary duty, and civil RICO claims.

Moreover, until Plaintiff's right to sue has been extinguished, there can be no assurance that the parties will not choose to litigate the IRS's claims, where a court may ultimately conclude that Plaintiff's tax treatment was legitimate and legal. Falsity is a necessary element of all Plaintiff's fraud-based causes of action against Brown & Wood and, as a practical matter, all of his other claims as well. *Lopez-Infante v. Union Cent. Life Ins. Co.*, 809 So. 2d 13, 15 (Fla. 2002) (fraud); *Fla. Women's Med. Clinic, Inc. v. Sultan*, 656 So. 2d 931, 933 (Fla. Dist. Ct. App. 1995) (negligent misrepresentation); *Byrne v. Nezhat*, 261 F.3d 1075, 1114 (11th Cir. 2001) (civil RICO). If a court determines that Plaintiff's deductions were proper, Plaintiff will be unable to show falsity as a matter of law.

*Halder v. Standard Oil Co.*, 642 F.2d 107 (5th Cir. 1981), aptly illustrates these principles.[4] Plaintiff in *Halder* leased a service station from defendant Standard Oil. *Id.* at

---

[4] Decided on April 6, 1981, *Halder* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as precedent all of the decisions of the former Fifth Circuit handed down prior to September 30, 1981).

923803.6

7

108-09. Upon learning that the State planned to seize the station under its eminent domain powers, the plaintiff asked Standard for a share of any condemnation proceeds the company might eventually receive. *Id*. at 109. After Standard failed to respond, the plaintiff filed suit. *Id*.

The Eleventh Circuit affirmed the district court's dismissal on ripeness grounds, holding that the district court properly refused to decide such an "abstract, hypothetical, or contingent question[]" as whether Standard should be obliged to share funds that it <u>might</u> receive at some future date. *Id*. at 110, 112. The court explained:

> [Plaintiff's] complaint posits a hypothetical set of facts which might form a basis for relief. If Georgia takes parcel 45 under power of eminent domain, and if compensation received by [defendant] includes compensation based upon loss of business opportunity or good will, and if [defendant] does not fairly apportion that compensation between [defendant] and [plaintiff], then [plaintiff] would be entitled to file a civil action. However, "it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." []
>
> [Plaintiff's] fear that he may not receive condemnation proceeds when and if condemnation occurs does not confer jurisdiction on the district court.

<u>Id</u>. at 110-11 (footnote and citations omitted). *See also Maryland Ins. Co. v. Attorneys' Liability Assurance Soc'y, Ltd.*, 748 F. Supp. 627, 628 (N.D. Ill. 1990) (concluding that claim brought by a legal malpractice insurer against another insurer was not ripe for adjudication notwithstanding that the underlying suit was very close to settlement).

At least one federal district court, confronted with facts similar to those in the case at bar, has held that the matter was not yet ripe for decision. The plaintiffs in *Hirshfield v. Winer*, Nos. 87 CIV. 8079, 8640-41, 1989 WL 120584 (S.D.N.Y. Oct. 3, 1989), filed a claim alleging their attorneys had negligently prepared a tax opinion promising favorable tax treatment (falsely, according to the IRS) at the same time that the plaintiffs debated the correctness of their tax treatment in proceedings against the government. *Id*. at *2. The district court dismissed the plaintiffs' action on ripeness grounds, observing that any "possible future injury [would be] entirely dependent upon the IRS's ability to sustain its position" regarding plaintiffs' supposed

tax deficiency. *Id*. "Not only are the alleged potential damages conjectural," explained the court, but "the alleged wrongful conduct committed by" the plaintiffs' attorneys was also

> conditioned upon the outcome of the IRS proceeding. At this point, any decree of a conclusive character . . . would be premised upon a hypothetical state of facts. Accordingly, the complaint must be dismissed . . . without prejudice to refiling[,] should the results of the IRS proceeding demonstrate that plaintiffs have a colorable grievance.

*Id*.; *see also Southern Ute Indian Tribe v. La Plata County*, 94-1310, 1995 WL 427683, at *2 (10th Cir. July 20, 1995) ("The threat of imposed taxes does not supply the finality necessary to a determination that a claim is fit for judicial review.").

If Plaintiff's dispute with the IRS is litigated, and <u>if</u> a court concludes that Plaintiff's tax treatment comports with federal law, and <u>if</u> Plaintiff's deductions are thereby shown to have been proper, then Plaintiff's claims against Brown & Wood will disappear. Only <u>if</u> the dispute is resolved in a manner favorable to the IRS may Plaintiff litigate his alleged fraud, malpractice, RICO, and negligent misrepresentation claims against Brown & Wood. These "ifs" are exactly the sort of uncertainty that the ripeness doctrine was designed to avoid. As one leading commentator has explained, "[t]he central concern [of ripeness doctrine] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." 13A Charles Alan Wright, et al., *Federal Practice and Procedure: Jurisdiction 2d* § 3532, at 112 (1984); *see Warner Cable Comms., Inc.*, 911 F.2d at 642 (same).

Until Plaintiff's dispute with the IRS has been resolved, Plaintiff cannot show – as he must – that his claims against Brown & Wood are fit for adjudication. Accordingly, they must be dismissed without prejudice for lack of jurisdiction.

**2.      <u>Dismissing for Lack of Ripeness Will Not Cause the Parties Undue Hardship.</u>**

Plaintiff cannot establish that the parties will suffer undue hardship if this Court withholds its consideration of his claims against Brown & Wood. *See Abbott Labs*, 387 U.S. at 149; <u>Cheffer</u>, 55 F.3d at 1524. To the contrary, Brown & Wood will suffer significant harm if it

923803.6                                                        9

is compelled to defend claims which ultimately may prove baseless and non-actionable if Plaintiff's tax dispute is resolved in his favor. Adjudicating Plaintiff's claims against Brown & Wood now could unnecessarily waste the litigants' and the Court's resources, and would violate the policies at the heart of the prudential ripeness doctrine – a doctrine designed at least in part to "protect[] federal courts from . . . wasting their resources." *Digital Props.,* 121 F.3d at 589.

This is not a case in which "delayed resolution of [the] issues would foreclose" the availability of relief to Plaintiff. *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 82 (1978). A dismissal now would not interfere with Plaintiff's ability to pursue his claims against Brown & Wood at some later date, <u>if</u> a final resolution of his dispute with the IRS (by settlement or litigation) gives rise to a valid cause of action. Nor would dismissal of these claims have any broad-reaching effects beyond the parties. *See Pac. Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 201-202 (1983) (hardship to the parties shown where court's decision would have an impact on important community interests). Plaintiff's claims against Brown & Wood should be dismissed for lack of jurisdiction.

**B.**      **The RICO Claim Should Be Dismissed Because It Fails to State a Claim For Relief.**

**1.**      **The RICO Claim is Barred by the Private Securities Litigation Reform Act of 1995 [18 U.S.C. § 1964(c)].**

In 1995, Congress amended the RICO statute to remove securities fraud as a predicate act in civil suits. Private Securities Litigation Reform Act ("PSLRA") § 107, Pub. L. No. 104-67, 109 Stat. 737 (1995). Section 1964(c) now provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [18 U.S.C.] section 1962." 18 U.S.C. § 1964(c).

Congress made clear that its amendment was "intended not simply 'to eliminate securities fraud as a predicate offense . . . ,' but also to prevent a plaintiff from 'pleading . . . mail or wire fraud[] as predicate acts under civil RICO <u>if such offenses are based on conduct that would have been actionable as securities fraud</u>." *Bald Eagle Area School Dist. v. Keystone Fin.*

923803.6                                              10

*Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (emphasis added) (citing Conference Committee Report, in H.R. Conf. Rep. No. 104-369, reprinted in 1995 U.S.C.C.A.N. 730, 746); *see also ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1319 (S.D.N.Y. 1997) (legislative history was "unequivocal in stating that where allegations of mail and wire fraud derive from conduct otherwise actionable as securities fraud, no RICO claim will lie").

Plaintiff asserts predicate acts of mail and wire fraud induced him to "enter into the FLIP" and "BLIP" tax strategies. CAC ¶¶ 5, 70. Through "FLIP," Plaintiff allegedly purchased and sold "warrants," "shares," and "options" (CAC ¶ 38); through "BLIP," he allegedly "participated in a series of transactions involving investments in foreign currency-based securities." CAC ¶ 49. In effect, Plaintiff alleges that Defendants defrauded him in connection with "the purchase and/or sale of securities"[5] – precisely the conduct Congress eliminated as a basis for RICO liability. 18 U.S.C. § 1964(c); *and see Florida Evergreen Foliage v. E.I. Dupont de Nemours*, 165 F. Supp. 2d 1345, 1356 (S.D. Fla. 2001) (RICO claim alleging wire and mail fraud based on conduct also the subject of a securities fraud action barred by § 1964(c)). As a result, the RICO claim is barred as a matter of law, and should be dismissed with prejudice.

## 2. The RICO Claim Fails Because Plaintiff Alleges No RICO Injury.

Even if the RICO claim were based on conduct other than alleged fraud in the purchase and sale of securities, it would be subject to dismissal because it fails to allege an "injury" within the meaning of RICO. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985) (a plaintiff "only has standing if . . . he has been injured in his business or property"). Federal courts have repeatedly held that to satisfy RICO's injury requirement, a plaintiff must plead and prove an actual, concrete monetary loss (*i.e.*, an "out-of-pocket" loss). *See, e.g., In re Taxable Mun. Bond Sec. Lit.,* 51 F.3d 518, 523 (5th Cir. 1995) (RICO claim dismissed for failure to show conclusive financial loss); *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70-71 (9th Cir. 1994) (patients who had not paid out money as a result of alleged scheme that reduced their insurance benefits could

---

[5] *See* 15 U.S.C. § 77b(a)(1) (defining "security" to include "shares" and "warrants").

923803.6             11

not show required concrete financial loss).  None of the "injuries" Plaintiff alleges constitutes an "injury" within the meaning of RICO.  *See* CAC ¶ 70.

First, Plaintiff's claims for the return of  "millions of dollars in fees" and "additional tax liability, interest and possible penalties," CAC ¶ 70, do not satisfy the RICO injury requirement because they are speculative and contingent on future events.  *See, e.g., Imagineering v. Kiewit Pac. Co.,* 976 F.2d 1303, 1310-11 (9th Cir. 1992) (RICO claim dismissed because alleged injury required speculation that other events would have occurred); *Lincoln House v. Dupre,* 903 F.2d 845, 847 (1st Cir. 1990) (allegation of RICO injury that is contingent on outcome of separate litigation is purely speculative and not ripe for resolution).  Plaintiff has not been required to pay the "additional tax liability, interest and possible penalties," and therefore has not suffered a RICO injury.  *See Jones v. Baskin Flaherty Elliot and Mannino*, 670 F. Supp. 597, 599 (W.D. Pa 1987) ("hypothetical possibility of a future tax prosecution does not present a ripe dispute for this court, and will not suffice as an injury to  confer standing" under RICO);  *Hunter v. Union Corp.*, No. C-93-2987, 1994 WL 1058668, at *2 (N.D. Cal. Dec. 23, 1994) ("potential future tax liabilities will not suffice to show the requisite injury for a RICO claim").  Further, "lost opportunities" to pursue alternative investments is not an "injury" under RICO.  *Anderson v. Kutak, Rock & Campbell (In re Taxable Mun. Bond Sec. Litig.)*, 51 F.3d 518, 523 (5th Cir. 1995) ("lost opportunity . . . does not constitute an injury that confers [RICO] standing").

Second, attorney's fees and costs are not "the type of proprietary damage for which RICO provides compensation."  *Local 355, Hotel, Motel, etc. v. Pier 66 Co.*, 599 F. Supp. 761, 765 (S.D. Fla. 1984).

**C.**    **The State Law Claims Are Barred And Should Be Dismissed With Prejudice.**

**1.**    **Plaintiff's Fraud and Negligent Misrepresentation Claims Should Be Dismissed With Prejudice Because He Concedes He Did Not Act In Reliance On Any Statements in the Brown & Wood Opinion Letters.**

An indispensable element of both fraud and negligent misrepresentation claims is proof of actual reliance.  Both negligent and fraudulent misrepresentation claims "require the

Defendant to induce the Plaintiff to rely on the representations to her detriment, resulting in injury."[6] *Patterson v. Downtown Med. & Diagnostic Center, Inc.*, 866 F.Supp. 1379, 1383 (M.D. Fla. 1994); *see also M/I Schottenstein Homes, Inc. v. Azam*, 813 So.2d 91, 94-95 (Fla. 2002) (reliance on the alleged false statement is an essential element of a fraud claim); *Vernon v. Steven L. Mabe Builders*, 430 S.E.2d 676, 679 (N.C. Ct. App. 1993) ("[B]oth false misrepresentation (*i.e.*, fraud) and negligent misrepresentation share two essential elements: (1) the supplying by the defendant of false information, and (2) reliance on the false statement by the plaintiff."), *rev'd on other grounds*, 444 S.E.2d 191 (N.C. 1994).

As made clear on the face of his complaint, Plaintiff could not have relied on the Brown & Wood opinion letters in entering into the FLIP and BLIP transactions because he received the letters <u>months after</u> he already had entered into the transactions at issue. *See* CAC ¶ 38 (Plaintiff engaged in the FLIP transaction in 1997); CAC ¶ 33 (Plaintiff received Brown & Woods' FLIP opinion letter on June 15, 1998). As the Complaint puts it, "[b]y [the time Plaintiff received Brown & Wood's opinion letter on June 15, 1998], of course, <u>it hardly mattered what the opinion said because Mr. Loftin was already committed</u>." CAC ¶ 33. *See also* CAC ¶ 51 ("Brown & Wood, as ever, provided an <u>after-the-fact</u> 'more than likely' opinion letter that [Plaintiff] did not receive until after he had entered into the [BLIP] deal") (emphasis added). Therefore, Plaintiff could not have relied on Brown & Wood's letters in any way. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So.2d 1210, 1213-14 (Fla. Dist. Ct. App. 1995) (dismissing action for fraudulent misrepresentation because at time alleged misrepresentation was made, plaintiff had "already made the decision" to change her position and thus could not have acted to her detriment in reliance on the misrepresentation); *Filler v.*

---

[6] In deciding which state's law should be applied to Loftin's state law claims, this Court must look to Florida choice-of-law rules. *See Starkenstein v. Merrill Lynch Pierce Fenner & Smith Inc.*, 572 F.Supp. 189, 191 (M.D. Fla. 1983) (citing *First S. Fed. Sav. & Loan Ass'n v. First S. Sav. & Loan Ass'n*, 614 F.2d 71, 73 (5th Cir. 1980)). Since 1980, Florida courts have followed the "significant relationships test" set forth in § 145 of the Restatement (Second) of Conflict of Laws to determine which state's substantive law should apply. *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980). While New York, North Carolina, and Florida all have arguable interests in the application of their law to this dispute, the elements of Plaintiff's state law claims – fraud, negligent misrepresentation, breach of fiduciary duty, and legal malpractice – are materially identical in all three states. Thus, there is no need at this stage for the Court to choose among these states' laws for purposes of deciding this motion.

*Hanvit Bank*, 247 F. Supp. 2d 425, 430 (S.D.N.Y. 2003) ("For the plaintiffs to allege reliance, as required for actionable fraud under both federal and common law, plaintiffs must allege with particularity that Defendants made false statements *prior to* [the plaintiffs' act of detrimental reliance]").  Further, Plaintiff nowhere alleges that he relied on any representations from Brown & Wood in filing his income tax returns.  CAC ¶ 60(f), (g), (h).  Plaintiff's claims for fraud and negligent misrepresentation should be dismissed with prejudice.

> **2.**        **The Legal Malpractice And Breach Of Fiduciary Duty Claims Also Must Be Dismissed Because Plaintiff Cannot Allege Any Causal Connection Between His Decision To Engage In The FLIP and BLIP Transactions And His Later Receipt Of Brown & Wood's Opinion Letters.**

For both his breach of fiduciary duty and legal malpractice claims, Plaintiff must allege, among other things, causation.  *See Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002) ("The elements of a claim for breach of fiduciary duty are:  the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages."); *Olmsted v. Emmanuel*, 783 So.2d 1122, 1125 (Fla. Dist. Ct. App. 2001) ("To prevail on a claim of legal malpractice, a plaintiff must establish the existence of three essential elements:  (1) that the defendant attorney was employed by the plaintiff; (2) that the defendant attorney neglected a reasonable duty owed to the plaintiff; and (3) that such negligence was the proximate cause of loss to the plaintiff.").[7]

"Even assuming a breach of fiduciary duty, [plaintiff] cannot recover without proof of causation."  *Bernstein v. True*, 636 So.2d 1364, 1367 (Fla. Dist. Ct. App. 1994) (citing *Schmidt v. Bryant*, 312 So.2d 209 (Fla. Dist. Ct. App. 1975)).  Likewise, "proof that the attorney's negligence proximately caused the client's harm is necessary for recovery" on a legal malpractice claim.  *Jones v. Law Firm of Hill & Ponton*, 223 F.Supp.2d 1284, 1287 (M.D. Fla. 2002).  "[A] party cannot recover damages for legal malpractice unless it is shown that the

---

[7]        *Accord Teague v. Isenhower*, 579 S.E.2d 600, 602 n.1 (N.C. Ct. App. 2003); *Rorrer v. Cooke*, 329 S.E.2d 355, 369 (N.C. 1985); *Liller v. Quick Stop Food Mart, Inc.*, 507 S.E.2d 602, 604 (N.C. Ct. App. 1998); *Reibman v. Senie*, 756 N.Y.S.2d 164, 164 (N.Y. App. Div. 2003); *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 37 (S.D.N.Y. 2002).

923803.6                                    14

lawyer neglected a reasonable duty which was the proximate cause of the client's loss." *Id*. at 1288.

The only communications that Plaintiff alleges he had with Brown & Wood are his receipt of the two opinions letters – each sent months after Plaintiff had engaged in the transaction that was the subject of each letter. For the reasons discussed above, Plaintiff has failed to state actionable claims for legal malpractice or breach of fiduciary duty against Brown & Wood. He has not alleged – and cannot allege – any facts showing that his decision to enter the FLIP and BLIP transactions was causally related in any way to the legal advice or opinions contained in the Brown & Wood opinion letters, which he admits he did not receive until months after the relevant deals had already closed. Because Plaintiff's inability to allege causation is fatal to these two claims, they too should be dismissed with prejudice.

**D.      In The Alternative, Each of Plaintiff's Claims Should Be Dismissed For Failure To Plead Fraud With The Specificity Required By Rule 9(b).**

Each of Plaintiff's claims against Brown & Wood should be dismissed for failure to plead fraud with particularity. Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This rule "serves an important purpose in fraud actions by alerting Defendants to the 'precise misconduct with which they are charged' and protecting Defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citation omitted). It gives Defendants "sufficient notice of what the plaintiff complains to enable them to frame a response," and it "prevent[s] fishing expeditions to uncover unknown wrongs." *C.S.I.R. Enters., Inc. v. Sebrite Agency, Inc.*, 214 F.Supp.2d 1276, 1281 (M.D. Fla. 2002).

Rule 9(b) therefore requires a plaintiff to allege in detail:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the

content of such statements and the manner in which they misled the plaintiff, and (4) what the Defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2002) (citation omitted). Here, Plaintiff's allegations against Brown & Wood fail to meet the particularity requirements of Rule 9(b) in at least two critical ways.[8]

### 1. Plaintiff Fails To Identify The "False And Misleading" Statements Allegedly Contained In Brown & Wood's Opinion Letters.

According to the Complaint, the *only* communications Plaintiff received from Brown & Wood were the firm's June 1998 and December 1999 opinion letters. The 1998 letter, which analyzed the tax implications of the FLIP transaction, was a 39-page opinion containing a detailed analysis of the pertinent sections of the Internal Revenue Code and the relevant cases in support of Brown & Wood's opinion. The 1999 letter was a 75-page opinion that discussed at length the possible tax consequences of the BLIP transaction.[9] Despite having been in possession of these exhaustive opinion letters for years, Plaintiff cannot identify in his complaint even *one* statement in those letters that is allegedly false or misleading. Instead, he simply asserts –without any elaboration – that Brown & Wood "knowingly issued a false and misleading boilerplate tax opinion," and that the two letters "contained numerous materially false and misleading statements regarding the likely tax impact of the transactions." CAC ¶¶ 12, 60(e).

---

[8] Because all of Plaintiff's claims arise out of the same core allegation of fraudulent conduct, *see, e.g.,* CAC ¶¶ 2, 4, 5, 12, 21, 33, 44, the strictures of Rule 9(b) apply to each claim. *See Avnet, Inc. v. American Motorists Ins. Co.*, 684 F.Supp. 814, 815 (S.D.N.Y. 1988) ("[T]he rule extends to averments of fraud or mistake, whatever may be the theory of legal duty – statutory, tort, contractual, or fiduciary.") (quoting *Shapiro v. Miami Oil Producers*, 84 F.R.D. 234, 236 (D. Mass. 1979)); *Durham v. Business Management Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (RICO claim based on mail and wire fraud statutes is subject to Rule 9(b)); *Heyman*, 277 B.R. at 37-38 (breach of fiduciary duty premised on fraud); *Peters v. Metro. Life Ins. Co*, 164 F.Supp.2d 830, 836 (S.D. Miss. 2001); *In re Rezulin Prods. Liab. Lit.*, 133 F.Supp.2d 272, 285 (S.D.N.Y. 2001) (negligent misrepresentation claim alleging fraudulent intent, Rule 9(b)). For the same reason, his aiding and abetting claims must also meet the rule's heightened pleading requirements. *See Filler v. Hanvit Bank*, 247 F.Supp.2d 425, 431 (S.D.N.Y. 2003).

[9] The Brown & Wood opinion letters are attached as Exhibits 3 and 5 to the Affidavit of Stephen L. Ascher filed in support of KPMG's motion to dismiss.

923803.6          16

But Rule 9(b) clearly requires more: Plaintiff must allege, at a minimum, (i) precisely what false statements or material omissions were made, (ii) the content of such statements or omissions, and (iii) the manner in which they misled him. *Ziemba*, 256 F.3d at 1202. Plaintiff must do more than hang his claims on a generalized, conclusory allegation of fraud, as he has done here. *See, e.g., Latimer v. Hall Fin. Group, Inc.*, No. 90 C 0156, 1990 WL 133225, at *7 (N.D. Ill. Sept. 13, 1990) ("Plaintiffs' claims against Andersen cannot be sustained under Rule 9(b) by simply alleging that projections were misleading or false."). "If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion." *United States ex rel. Clausen v. Laboratory Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), *cert. denied*, 123 S. Ct. 870 (2003).

> **2. Plaintiff's Complaint Indiscriminately Attributes Fraudulent Conduct To All The Defendants As A Whole.**

Plaintiff's claims should also be dismissed because he has failed to differentiate between the Defendants and set forth separately the acts complained of as to each individual defendant. As the Eleventh Circuit has made clear, Rule 9(b) is not satisfied where, as here, the complaint vaguely and indiscriminately charges wrongdoing to an entire group of Defendants. *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1381 (11th Cir. 1997). This is especially true when "geographic and temporal realities make plain that all of the Defendants could not have participated in every act complained of." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *see also Landy v. Mitchell Petroleum Tech. Corp.*, 734 F.Supp. 608, 623 (S.D.N.Y. 1990) ("Yet read literally, plaintiffs' pleading states that *all* Defendants mailed misleading materials during the entire period of 1983 to 1986. It is just this sort of uncertainty in pleadings of fraud claims that Rule 9(b) was designed to prevent.") (emphasis in original).

In this case, Plaintiff has simply "lumped together" all of the Defendants under a blanket accusation of fraud – a dragnet tactic that flatly violates Rule 9(b). *Brooks*, 116 F.3d at 1381; *see also Filler*, 247 F.Supp.2d at 430 ("To meet the pleading requirements of Rule 9(b), a complaint may not simply 'clump [] Defendants together in vague allegations.'") (citation

923803.6                                                17

omitted). For instance, in the Second, Third, and Fourth Claims of his complaint, Plaintiff makes no effort to distinguish between the various Defendants, incorporates by reference all prior factual sections of the complaint even if they could not possibly apply to all Defendants, and randomly attributes *unspecified* "material misrepresentations" to all six Defendants. *See, e.g.,* CAC ¶¶ 73, 84. Under even the most generous application of Rule 9(b), Plaintiff's complaint would not survive the pleading stage.

Indeed, Plaintiff's allegations as to Brown & Wood do not pass muster under Rule 8(a), which requires a "short and plain statement of the claim," let alone Rule 9(b). For over a decade, the Eleventh Circuit has repeatedly condemned "shotgun" complaints – pleadings that charge several Defendants with blanket misconduct but make no effort to isolate each Defendant's particular role in the misconduct and in which separate claims are alleged by simply "incorporating" all of the facts set forth in preceding paragraphs and counts. *See, e.g., Sikes v. Teleline*, 281 F.3d 1350, 1356 n.9 (11th Cir. 2002); *Pelletier v. Zweifel*, 921 F.2d 1465, 1517-18 (11th Cir. 1991). Plaintiff's state law claims here are alleged in precisely this impermissible "shotgun" format. Each count "repeats and realleges" all the preceding paragraphs, makes purely conclusory allegations, indiscriminately incorporates all the facts previously alleged elsewhere in the complaint, and accuses the Defendants as a whole of committing various unidentified fraudulent acts. *See* CAC ¶¶ 72-102. Such a complaint violates both Rule 8(a) and 9(b) of the Federal Rules of Civil Procedure. *See Magluta*, 256 F.3d at 1284. For this reason alone, Plaintiff's state law claims should be dismissed. *See id*.

E.     **Plaintiff's Aiding And Abetting Claims Should Be Dismissed Because The Complaint Does Not Allege A Single Fact Suggesting That Brown & Wood Had Knowledge Of The Other Defendants' Alleged Fraud.**

To state a claim for aiding and abetting either fraud or breach of fiduciary duty, Plaintiff must plead facts showing (1) the existence of an underlying fraud or breach, (2) Defendant's *knowledge* of that fraud or breach, and (3) Defendant's substantial assistance or encouragement of the fraud or breach. *See Cromer Finance Ltd. v. Berger,* 137 F.Supp.2d 452, 470 (S.D.N.Y.

923803.6                                                18

2001) (noting elements of aiding and abetting fraud); *AmeriFirst Bank v. Bomar*, 757 F.Supp. 1365, 1380 (S.D. Fla. 1991) (noting elements of aiding and abetting breach of fiduciary duty). The complaint, however, contains no facts that even remotely suggest Brown & Wood had "knowledge" of any such alleged wrongdoing.[10]

In fact, Plaintiff has done nothing more than assert – without any factual support – that Brown & Wood "knew" of an allegedly fraudulent scheme. *See* CAC ¶ 77. While state of mind may be averred generally without running afoul of Rule 9(b), there must still be some minimal "factual basis" to support allegations of knowledge. *In re Cascade Int'l Sec. Lit.*, 840 F.Supp. 1558, 1578 (S.D. Fla. 1993); *see also Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987) ("Although Rule 9(b) permits knowledge to be averred generally, plaintiffs must still plead the events which they claim give rise to an inference of knowledge."); *Fromer v. Yogel*, 50 F.Supp.2d 227, 247 (S.D.N.Y. 1999) ("While the knowledge or scienter element need not be pleaded with particularity, it does require allegations 'that provide at least a minimal factual basis for . . . conclusory allegations of scienter.'") (citation omitted).

There is no such minimal factual basis alleged here. According to the complaint itself, the only thing that Brown & Wood "knew" was that "its name was being used in pitch meetings to sell clients on the tax strategies," and that Brown & Wood would receive a fee. CAC ¶ 58; *see also* CAC ¶ 33. Plaintiff fails to allege any facts suggesting that Brown & Wood knew in advance what anyone would say in these meetings, much less that Brown & Wood knew of any alleged false and misleading representations. Here, Plaintiff does not even allege that the other Defendants ever mentioned Brown & Wood in these meetings or that Plaintiff was even aware of Brown & Wood until he received an opinion letter from the firm.

### IV.    CONCLUSION

Because this action is not yet ripe for adjudication, it should be dismissed without prejudice for lack of jurisdiction. However, should the Court determine that Plaintiff has met his

---

[10] The purported RICO claims, both under Section 1962(c) and 1962(d) are subject to dismissal for the same reason.

923803.6                                                     19

burden to prove that his controversy with Brown & Wood is justiciable, Brown and Wood

respectfully submits that the entire action should be dismissed with prejudice.

Respectfully submitted this **11**<sup></sup>th day of June, 2003.

BOOSE CASEY CIKLIN LUBITZ MARTENS
McBANE & O'CONNELL


By:     /s/ Anna Patricia Morales Christiansen for
          Richard L. Martens
          (Florida Bar No. 219908)
          Boose Casey Ciklin Lubitz Martens
              McBane & O'Connell
          Northbridge Tower - 19th Floor
          515 North Flagler Drive
          West Palm Beach, FL  33401
          Tel:  (561) 832-5900 • Fax:  (561) 655-2015

                    - and -

          Brad D. Brian
          Richard E. Drooyan
               *Pro Hac Vice*
          Munger, Tolles & Olson LLP
          355 South Grand Avenue, 35th Floor
          Los Angeles, CA  90071-1560
          Tel:  (213) 683-9100 • Fax:  (213) 687-3702

Attorneys for Defendant
SIDLEY AUSTIN BROWN & WOOD LLP

923803.6                                         20

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing document was

furnished by facsimile and by U.S. first class mail this **11th** day of June, 2003, to:

R. Timothy Vannatta, Esq.                        Attorneys for Plaintiff,
Milberg Weiss Bershad Hynes & Lerach LLP         Peter T. Loftin
5355 Town Center Road, Suite 900
Boca Raton, FL  33486

Telephone:  (561) 361-5000
**Facsimile:  (561) 367-8400**

Brad N. Friedman, Esq.                           Attorneys for Plaintiff,
Rachel S. Fleishman, Esq.                        Peter T. Loftin
One Pennsylvania Plaza
New York, NY  10119

Telephone:  (212) 594-5300
**Facsimile:  (212) 868-1229**

David C. Goodwin, Esq.                           Attorneys for Defendant,
John F. O'Sullivan, Esq.                         KPMG LLP
Julie E. Nevins, Esq.
Akerman Senterfitt
Sun Trust International Center
One Southeast Third Avenue, Suite 2800
Miami, FL  33131-1704

Telephone:  (305) 374-5600
**Facsimile: (305) 374-5095**

Stephen L. Ascher, Esq.                          Attorneys for Defendant,
Kronish Lieb Weiner & Hellman LLP                KPMG LLP
1114 Avenue of the Americas
New York, NY  10036-7798

Telephone:  (212) 479-6000
**Facsimile:  (212) 479-6275**

Thomas K. Equels, Esq.                           Attorneys for Defendants,
Mary Teresa Kogut, Esq.                          QA Investments LLC and
Holzman Equels                                   Quellos Group LLC
2601 South Bayshore Drive, Suite 600
Miami, FL  33133

Telephone:  (305) 859-7700
**Facsimile:  (305) 859-9996**

Brian A. Sun, Esq.      Attorneys for Defendants,
Yolanda Orozco, Esq.     QA Investments LLC and
O'Neill, Lysaght & Sun LLP   Quellos Group LLC
100 Wilshire Boulevard, Suite 700
Santa Monica, CA  90401

Telephone:  (310) 451-5700
**Facsimile:  (310) 399-7201**

Joseph Ianno, Esq.      Attorneys for Defendant,
Carlton Fields, P.A.      First Union National Bank /
222 Lakeview Avenue, Suite 1400 Wachovia Corporation
West Palm Beach, FL  33401

Telephone:  (561) 659-7070
**Facsimile:  (561) 659-7368**

George D. Ruttinger, Esq.   Attorneys for Defendant,
Crowell & Moring LLP    First Union National Bank /
1001 Pennsylvania Avenue N.W.  Wachovia Corporation
Washington, DC  20004-2595

Telephone:  (202) 624-2670
**Facsimile:  (202) 628-5116**

/s/ Anna Patricia Morales Christiansen for
    Richard L. Martens

TABLE OF CONTENTS

Page

I.    INTRODUCTION................................................................................................. 1

II.   BACKGROUND AND RELEVANT FACTS..................................................... 2

     A.    The 1997 FLIP Transaction ................................................................ 2

     B.    The 1999 BLIP Transaction................................................................ 3

     C.    Brown & Wood's Alleged Role........................................................... 4

     D.    Current Status of IRS Audit ................................................................ 5

III.   ARGUMENT ..................................................................................................... 5

     A.    The Complaint Must Be Dismissed Because Plaintiff Cannot Meet His Burden of Showing That His Claims Against Brown & Wood Are Ripe for Adjudication.............................................................. 5

          1.    Plaintiff's Claims Against Brown & Wood Are Not Ripe Because They Are Contingent Upon a Final Resolution of the IRS's Claim Against Plaintiff. ................................................. 6

          2.    Dismissing for Lack of Ripeness Will Not Cause the Parties Undue Hardship. ............................................................. 10

     B.    The RICO Claim Should Be Dismissed Because It Fails to State a Claim For Relief. ....................................................................... 10

          1.    The RICO Claim is Barred by the Private Securities Litigation Reform Act of 1995 [18 U.S.C. § 1964(c)]. ................ 10

          2.    The RICO Claim Fails Because Plaintiff Alleges No RICO Injury. ....... 11

     C.    The State Law Claims Are Barred And Should Be Dismissed With Prejudice. ................................................................................. 13

          1.    Plaintiff's Fraud and Negligent Misrepresentation Claims Should Be Dismissed With Prejudice Because He Concedes He Did Not Act In Reliance On Any Statements in the Brown & Wood Opinion Letters. ....................................................... 13

          2.    The Legal Malpractice And Breach Of Fiduciary Duty Claims Also Must Be Dismissed Because Plaintiff Cannot Allege Any Causal Connection Between His Decision To Engage In The FLIP and BLIP Transactions And His Later Receipt Of Brown & Wood's Opinion Letters.......................... 14

     D.    In The Alternative, Each of Plaintiff's Claims Should Be Dismissed For Failure To Plead Fraud With The Specificity Required By Rule 9(b). .............. 15

-i-

TABLE OF CONTENTS
(continued)

1.  Plaintiff Fails To Identify The "False And Misleading" Statements Allegedly Contained In Brown & Wood's Opinion Letters. ................... 16

2.  Plaintiff's Complaint Indiscriminately Attributes Fraudulent Conduct To All The Defendants As A Whole. ....................................... 17

E.  Plaintiff's Aiding And Abetting Claims Should Be Dismissed Because The Complaint Does Not Allege A Single Fact Suggesting That Brown & Wood Had Knowledge Of The Other Defendants' Alleged Fraud..................... 19

IV.  CONCLUSION ................................................................................................. 20