# Exhibit C

FILED by _WC_ D.C.
ELECTRONIC

**Jul 14 2003**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

| | |
|---|---|
| PETER T. LOFTIN, | Case No.  02-81166-CIV-RYSKAMP |
| Plaintiff, | |
| v. | |
| KPMG LLP, FIRST UNION NATIONAL BANK/WACHOVIA CORPORATION, QA INVESTMENTS LLC, QUELLOS GROUP LLC, PRESIDIO GROWTH LLC, and SIDLEY AUSTIN BROWN & WOOD LLP, | |
| Defendants. | |

**REPLY MEMORANDUM OF  DEFENDANT SIDLEY AUSTIN BROWN & WOOD LLP
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS
PURSUANT TO FED. R. CIV. 12(B) (1), 12(B) (6) AND 9(B)**

933290.1

## I.    <u>INTRODUCTION</u>

In its Motion to Dismiss, Sidley Austin Brown & Wood LLP ("Brown & Wood") demonstrated that Plaintiff's claims are not ripe, and fail on the merits regardless.  In response, Plaintiff simply concludes -- without analysis or support -- that the consistent, controlling authorities on which Brown & Wood relies are "inapposite," while repeatedly insisting that the Complaint contains allegations that it does not, in fact, contain.

Plaintiff urges that "[a]ll of Brown & Wood's authorities" mandating dismissal of Plaintiff's claims on ripeness grounds should be ignored because Plaintiff is soon going to settle with the IRS.  Plaintiff cites nothing in support of this position and, indeed, the law is to the contrary.  *See, e.g., Md. Ins. Co. v. Attorneys' Liability Assurance Society, Ltd.*, 748 F. Supp. 627, 630 (N.D. Ill. 1990) (regardless of how near the parties are to settlement, claim, if any, is not ripe until the parties have actually settled).  The law likewise forecloses Plaintiff's argument (which simply ignores the case authorities cited by Brown & Wood in its Opening Memorandum) that his claims are "ripe" because he has paid attorneys to negotiate a settlement with the IRS.  *See, e.g., A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Corp.*, 559 F.2d 928, 932 (4th Cir. 1977) (demand for attorney fees not ripe until actual liability on the underlying malpractice claim has been demonstrated).

Next, Plaintiff attempts to avoid the PSLRA's statutory bar to his RICO claim by inventing a new doctrine.  Although Plaintiff bought securities to effectuate the "FLIP" and "BLIP" transactions, he urges that Brown & Wood's alleged misconduct is not actionable as "securities fraud" because it was not "in connection with" the purchase or sale of securities.  According to Plaintiff, the "object" of the alleged fraud was not the sale of securities, but rather the sale of allegedly incorrect tax advice.  The Supreme Court, however, already has determined that the "in connection with" element of securities fraud is met where, as Plaintiff alleges here, the sale of securities is made to further an allegedly fraudulent scheme.  *SEC v. Zandford,* 535 U.S. 813, 819-20 (2002).  The PSLRA bars Plaintiff's RICO claim, which should be dismissed with prejudice.

In response to Brown & Wood's observation that Plaintiff has pleaded himself out of reliance and proximate cause by admitting that "it hardly mattered what the [Brown & Wood opinion letters] said because [Plaintiff] was already committed" to the transaction, Plaintiff

1

simply invents several new allegations of reliance and causation that appear nowhere in his Complaint. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). In any event, Plaintiff's new theories are meritless and cannot save his Complaint from dismissal.

Finally, Plaintiff makes a feeble attempt to defend his fraud allegations from Rule 9(b) scrutiny. Plaintiff purports to quote from the Complaint to prove he has adequately specified which Brown & Wood statements were false. Once again, the allegations on which Plaintiff says he relies are simply not in the Complaint. As to how these nonexistent allegations are false, Plaintiff says only that the answer is "self-evident." Thus the Complaint fails to satisfy the requirements of Rule 9(b) and his state law claims should be dismissed on that ground as well.

## II.    ARGUMENT

**A.    Plaintiff Fails To Show That His Claims Are Ripe For Adjudication.**

Plaintiff offers only two paper-thin arguments to carry the burden of showing his claims are ripe. First, Plaintiff insists that "Mr. Loftin owes the IRS money," and at some point "is going to pay it, period." Opp. at 7.[1] Unfortunately for Plaintiff, settlement agreements that are "just about" to happen, or are "nearly completed," as a matter of law, are insufficient to provide the finality required to satisfy the *Abbott Labs* ripeness requirement.

In *Maryland Insurance Co.*, 748 F. Supp. at 627, as here, Plaintiff argued that its claims were ripe for adjudication because the underlying malpractice action was very "close to settlement," and "[a]ll parties fully expect that the settlement will be approved and finalized in the next month or so." *Id.* at 628, 630.

The district court disagreed:

---

[1] Plaintiff cites paragraphs 5, 55, and 67 of his Complaint as though they support this assertion, which they do not. Paragraph 5 states that "Mr. Loftin is currently in negotiations with the IRS to settle his tax liability . . . ." CAC ¶ 5 (emphasis added). Paragraph 55 of the Complaint provides that "Mr. Loftin has now committed to pursue settling his tax liability with the IRS and will likely have to make substantial tax repayments . . . ." CAC ¶ 55 (emphases added). Paragraph 67 of the Complaint has nothing to do with the status of Plaintiff's negotiations with the IRS. These are hardly the definitive statements that Plaintiff suggests they are, nor are the arguments of counsel in a brief evidence of anything.

933290.1

> [U]ntil [the settlement] really happens the settlement remains a contingency, however probable its accomplishment may now appear. And the <u>accomplishment</u> of such a settlement marks the bright line between a declaration of possible <u>future</u> rights and duties and a declaration of actual <u>present</u> rights and duties—the bright line between tomorrow and today, between nonjusticiability and justiciability in Article III terms.

*Id.* (footnote omitted) (emphases in original); *accord In re Cendant Corp. Derivative Litig.*, 96 F. Supp. 2d 394, 395-97 (D.N.J. 2000) (the plaintiff's contribution claims were not ripe even where class action settlement had only to be approved by the court and was so "probable" and "reasonably estimable" that the defendant corporation had already written it off); *Parker v. United States*, 948 F. Supp. 24, 26 (E.D.N.C. 1996) (action brought by attorneys against former client seeking reimbursement of legal fees pursuant to client's settlement of lawsuit was not ripe for adjudication because "[t]he court has before it no evidence that there has indeed been a final settlement"); *Zakak v. Broida & Napier, P.A.*, 545 So.2d 380, 381 (Fla. Dist. Ct. App. 1989) ("So long as the order confirming settlement remained subject to reconsideration, the [plaintiffs] could not possess a matured cause of action."). Plaintiff here cites no cases to the contrary.

Moreover, assuming Plaintiff completes a settlement with the IRS at some point in the future, the terms of that settlement will dictate whether Plaintiff can show injury and pursue this litigation. Despite Plaintiff's contrary suggestions, it is obvious that he has not conceded liability to the IRS and offered to write a check for back taxes. Assuming a settlement occurs, it may result in Plaintiff being substantially better off. None of this can be known until a settlement actually occurs, if ever.

Next, Plaintiff urges that his claims are ripe because he has paid new lawyers to negotiate with the IRS and sue people. This argument has been repeatedly rejected by the courts. *See, e.g.*, *Ludwig*, 559 F.2d at 932 (demand for expenses, including attorneys fees, is not ripe for adjudication until there is actual liability on the underlying claim); *Armstrong v. Ala. Power Co.*, 667 F.2d 1385, 1388 (11th Cir. 1982) (same, quoting *Ludwig*); *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 848 (1st Cir. 1990) (same); *Perez-Abreu v. Taracido*, 790 So.2d 1051, 1054 (Fla. 2001) (same).

Plaintiff cites only one case in support of his position, and it effectively shows why his claims are not ripe. In *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334 (11th Cir. 2001), the

3

933290.1

defendants were law firms hired to draft a will and deed of trust. *Id.* at 1336. Before the instruments could go into effect, plaintiff discovered they contained an error that might ultimately lead to adverse tax consequences. *Id.* at 1337. After correcting the problem, plaintiffs filed a malpractice action against their former attorneys, seeking to recover for the expense of their efforts. *Id.* The *Porter* court held that plaintiff's claims were ripe for adjudication, even though plaintiff had never been audited by the IRS. *Id.* at 1338-40. The court expressly distinguished between attorney malpractice cases in which a secondary dispute involving the lawyer's work had <u>already</u> developed by the time suit against the attorney was filed, and those in which no dispute had yet materialized:

> Both *Peat, Marwick* [and an analogous case] "draw a distinction between knowledge of actual harm from legal malpractice and knowledge of <u>potential</u> harm." [*Peat, Marwick*, 565 So. 2d at 1326.] In both cases, the plaintiffs followed the advice of the defendant professionals, even though others thought that the advice was wrong. <u>Because they followed the incorrect advice, the harm did not become an actuality until a court rendered a judgment holding that the legal instruments failed to fulfill their purpose.</u> In contrast, the Trustees here <u>did not follow the advice of the Defendants</u>, and instead, took steps to cure the potential problem prior to any IRS action or any court determination.

*Id.* at 1339 (emphases added) (citation omitted).

In contrast to *Porter*, Plaintiff alleges he <u>did</u> follow the advice of his tax preparers, <u>did</u> (at least initially, *see* CAC ¶ 55) contest the IRS's deficiency determination, and <u>remains</u> locked in a dispute with the agency. Unlike the plaintiffs in *Porter*, therefore, Plaintiff will suffer harm only <u>if</u> his dispute with the IRS is resolved in a manner adverse to him (whether through litigation or the execution of a final settlement agreement that causes Plaintiff damage). Having saved millions of dollars by employing certain tax treatments, Plaintiff can hardly show that he has suffered an injury merely by hiring attorneys to defend their validity.

Plaintiff also suggests that his claim is ripe because he paid fees to Brown & Wood. Opp. at 7. As of now, there is no evidence that Plaintiff will suffer harm from paying Brown & Wood; therefore paying Brown & Wood cannot constitute harm.

4

933290.1

### B.      Plaintiff Cannot State A Claim Under RICO.

#### 1.      Plaintiff's "Spin" Cannot Save His Claim From The PSLRA Statutory Bar.

Plaintiff attempts to evade the PSLRA bar to his RICO claim by arguing that Brown & Wood's alleged fraud was not "perpetrated 'in connection with' the purchase or sale of a security." Opp. at 10. Citing cases that offer no support for his position, Plaintiff simply asserts that the "in connection with" element of a federal securities fraud claim is met only where "the sale of the securities is the 'object' of the fraud, as opposed to an incidental attribute of the fraud."[2] *Id.* This argument demonstrates a fundamental misunderstanding of the securities laws.

First, Plaintiff does not dispute the tax investment was a security, or that he bought a security. Second, in *SEC v. Zandford*, 535 U.S. 813 (2002), the Supreme Court made clear that the "in connection with" element is met where, as Plaintiff alleges here, the sale of securities is made to further an allegedly fraudulent scheme. *Id.* at 819-20. In *Zandford,* a stockbroker sold his client's securities and transferred the proceeds to the stockbroker's own account without the client's knowledge or consent. The SEC filed a civil action against the stockbroker, alleging that he had engaged in a scheme to defraud his client in violation of § 10(b) and Rule 10b-5. The stockbroker argued that the sale of securities was "perfectly lawful," and the "subsequent misappropriation of the proceeds" did not "have[] the requisite connection with the sales." The Supreme Court rejected this argument, holding that the stockbroker's "fraud coincided with the sales" because "each sale was made to further [his] fraudulent scheme" to abscond with his client's money. 535 U.S. at 820.

In this case, Plaintiff alleges as part of his RICO claim that the supposed mail and wire fraud allegedly perpetrated by Brown & Wood was "committed in an effort to induce Mr. Loftin to invest in the transactions and, in turn, pay millions of dollars in fees . . . to the Enterprise." CAC ¶ 69. The transactions, of course, consisted of the purchase and sale of securities. CAC ¶¶ 38, 49. In other words, according to Plaintiff, the sale of the securities was made to further the allegedly fraudulent scheme, meeting the "in connection with" test, and raising the PSLRA's statutory bar. *See also Behlen v. Merrill Lynch*, 311 F.3d 1087, 1093-94 (11th Cir. 2002) (rejecting argument that a scheme to defraud individuals into paying fees and commissions by

---

[2] None of the cases on which Plaintiff relies articulates anything like the test Plaintiff proposes.

5

933290.1

inducing them to buy securities is not a fraud "in connection with" the purchase or sale of a security); *Dudek v. Prudential Sec., Inc.*, 295 F.3d 875, 879 (8th Cir. 2002) ("in connection with" requirement met where "defendants' misconduct caused plaintiffs to invest in" tax-deferred securities that provided no additional tax benefits, but which in turn required plaintiff to pay defendants extra fees and costs).[3]  Plaintiff's RICO claim is foreclosed by the PSLRA and should be dismissed with prejudice.

**2.**  **Counsel's Insistence That Plaintiff "Will" Pay Back Taxes Does Not Constitute An Alleged Injury Within The Meaning Of RICO.**

Even if Plaintiff could overcome the PSLRA bar (which he cannot), his RICO claim still fails.  Plaintiff insists that he has pleaded a RICO injury because "there is no contingency about whether [Plaintiff] <u>will</u> have to pay the IRS on account of the FLIP and BLIP strategies," and because he allegedly paid "'millions' in fees to the Enterprise members."  Opp. at 13 (emphasis added).  Neither argument has merit.

First, even if Plaintiff had pleaded in his Complaint that "there is no contingency about whether [he] will have to pay the IRS" – which he has not – he still could not establish standing to bring a RICO claim.[4]  His use of the term "will have to pay" concedes that <u>he has not yet paid</u> the IRS and therefore has not suffered any actual injury to his business or property.  *See Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70-71 (9th Cir. 1994) ("speculative injuries do not serve to confer standing under RICO, <u>unless they become concrete and actual</u>" (emphasis added)).  Until Plaintiff has made payment, he has not been injured within the meaning of RICO.

Second, for the same reasons that payment of fees to Brown & Wood, without more, cannot render Plaintiff's premature claims ripe, it also cannot constitute a RICO injury.  Fees are not "wrongfully" paid unless a potential plaintiff did not get that for which he bargained.  *Cf. Bennett v. Berg*, 685 F.2d 1053, 1058 (8th Cir. 1982) (RICO standing found where "the value of [plaintiffs'] contracts is different than [plaintiffs] were led to expect").  Plaintiff, however, never

---

[3]  It is unclear why Plaintiff cites *Neibel v. Trans World Assurance Co.*, 108 F.3d 1123 (9th Cir. 1997).  That case did not involve securities and does not discuss the PSLRA.

[4]  As noted above, Plaintiff continually tries to recharacterize the allegations in his Complaint.  "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Car Carriers,* 745 F.2d at 1107; *accord Payne v. Ryder System, Inc. Long Term Disability Plan*, 173 F.R.D. 537, 540 (M.D. Fla. 1997) (citing *Car Carriers*).

933290.1

alleges that he did not get what he bargained for; instead, he alleges that he <u>may not</u> get what he bargained for.  *See* CAC ¶ 55.

**C.      Plaintiff's New Reliance and Causation Theories Cannot Salvage His Claims.**

Confronted with the incontrovertible fact that he already had "committed" to and closed the FLIP and BLIP transactions many months <u>before</u> he ever received the Brown & Wood letters, Opp. at 13, Plaintiff offers three newly-minted theories of reliance and causation – none of which appear anywhere in his Complaint.  These theories, which the Court cannot consider in any event because they do not appear in the Complaint, fail as a matter of law.

**1.      KPMG's Promise To Deliver An Opinion From An Unidentified Law Firm Was Not A Statement By Brown & Wood Or An Actionable False Statement.**

Plaintiff's assertion that he relied on KPMG's alleged oral promise that a "major Wall Street law firm" would someday deliver to him a favorable opinion letter (Opp. at 3, 14) cannot state a claim <u>against Brown & Wood</u>.  According to Plaintiff, it was KPMG – not Brown & Wood – that made the promise.  Brown & Wood cannot be held liable for a statement it never made.  *Morgan v. W.R. Grace & Co.*, 779 So.2d 503, 506 (Fla. Dist. Ct. App. 2000).  Moreover, KPMG's alleged "promise of future action" in the form of a Brown & Wood opinion letter (which was in fact delivered) is not an actionable false statement of past or existing fact.  *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So.2d 168, 172 (Fla. Dist. Ct. App. 1994).

**2.      Plaintiff Cannot Allege That The Delivery Of The FLIP Opinion Was Intended To Induce Him To Engage In The Later BLIP Transaction.**

Plaintiff also asserts in Opposition (but not in his Complaint) that he never would have entered into the separate <u>BLIP</u> transaction had he not first received Brown & Wood's opinion letter for the <u>FLIP</u> transaction.  Opp. at 14, 16.  Clearly, Plaintiff could not have <u>reasonably</u> relied on a legal opinion regarding the tax consequences of one transaction in deciding to enter into a distinct and different transaction.  *See* CAC ¶¶ 38, 49 (describing distinct FLIP and BLIP transactions).

Moreover, to state a cause of action for fraud or negligent misrepresentation, Plaintiff must allege that Brown & Wood <u>intended</u> its FLIP opinion letter to induce Plaintiff to enter into the BLIP transaction.  *E.g., Meterlogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp.2d 1346, 1363 (S.D. Fla. 2000); *Fla. Women's Med. Clinic, Inc. v. Sultan*, 656 So.2d 931, 933 (Fla. Dist. Ct. App. 1995).  Plaintiff does not – and obviously could not – allege this element.  Plaintiff had not

7

933290.1

even received the money that he sought to shelter from taxes through the BLIP transaction until 1999 – <u>after</u> Brown & Wood had delivered its FLIP opinion. Under Plaintiff's theory, when Brown & Wood opined in June 1998 on the potential tax ramifications of the 1997 FLIP transaction, it also allegedly somehow intended to induce Plaintiff to enter into a separate securities transaction that did not yet then exist to shelter $100 million in capital gains that also did not yet then exist.

Plaintiff's malpractice and fiduciary duty claims fail under Plaintiff's new theory for essentially the same reason. To prove that his alleged damages from the BLIP deal were proximately caused by Brown & Wood's FLIP opinion, Plaintiff must establish that Brown & Wood could have "reasonably foreseen" in 1998 not only that Plaintiff would reap in 1999 an additional $100 million from his business and investment activities, but that there would be a "BLIP" transaction in which he could invest to reduce his taxes on those gains – all before Plaintiff (much less Brown & Wood) even knew he would have gains. Proximate cause analysis is not an exercise in clairvoyance. *See, e.g., Hairston v. Alexander Tank & Equip. Co.*, 311 S.E.2d 559, 565 (N.C. 1984) (proximate causation does not mean defendant must "foresee events which are merely possible but only those which are reasonably foreseeable"); *accord McCain v. Florida Power Corp.*, 593 So.2d 500, 502 (Fla. 1992). Plaintiff's strained attempt to make the FLIP transaction the legal cause of the BLIP transaction fails as a matter of law.

### 3. <u>Plaintiff's Contention That He Relied On The Brown & Wood Letters Contradicts The Complaint</u>.

Finally, Plaintiff claims – yet again for the first time in his Opposition brief – that he would not have filed tax returns reflecting the effects of the FLIP and BLIP transactions if he had not received the Brown & Wood opinion letters. Opp. at 4, 14, 15. In his Complaint, however, Plaintiff alleges only that the post-transaction Brown & Wood opinion letters induced him to "invest" in the transactions (*see* CAC ¶¶ 44, 70), not file his tax returns.[5] *See Schlaifer Nance & Co v. Estate of Andy Warhol*, 119 F.3d 91 (2d Cir. 1997) (affirming JNOV in fraud trial where plaintiffs received a fraudulent legal opinion <u>after</u> parties concluded their agreement). Further,

---

[5] Likewise, Plaintiff's suggestion that he would not have filed <u>any</u> of the relevant tax returns if he had had any inkling that the IRS might potentially disallow his claimed deductions is belied by the Complaint. Plaintiff filed his year 2000 tax return with the challenged BLIP deductions in 2001 – long <u>after</u> the IRS had already initiated an audit of Plaintiff's 1997 tax return. CAC ¶¶ 54, 60(h).

8

933290.1

Paragraph 60 of the Complaint (which Plaintiff cites in support of this theory) contains no allegation that Plaintiff relied on work done or representations made by Brown & Wood in deciding to file his tax returns.

**D.      Rule 9(b) Requires The Complaint Be Dismissed.**

**1.      Plaintiff Still Has Not Identified Which Statements In Brown & Wood's Opinions Are False Or Explained Why They Are False.**

Citing only paragraph 60 of his Complaint, Plaintiff contends that he has satisfied Rule 9(b) because he supposedly alleges that Brown & Wood made two false statements: (1) that it was "more likely than not" the FLIP transaction would survive IRS scrutiny, and (2) that it was "more likely than not" the BLIP transaction would survive IRS scrutiny. Opp. at 17.

Once again, neither of these two alleged false statements appears in Paragraph 60 – or anywhere else in the Complaint. Paragraph 60 alleges only that the FLIP and BLIP opinions "contained numerous materially false and misleading statements regarding the likely tax impact of the transactions." CAC ¶ 60(e), (j).

Furthermore, even if the two statements actually had been alleged in the Complaint, they do not satisfy the demands of Rule 9(b). "Rule 9(b) requires the identification of . . . the specifics of the misrepresentations and how they are considered false[.]" *Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F.Supp. 1562, 1574 (S.D. Fla. 1993) (emphasis added). Plaintiff's allegations do not meet either of these requirements. Although he claims (in his Opposition) that Brown & Wood falsely stated the FLIP and BLIP transactions were "'more likely than not' to survive IRS scrutiny," the actual opinion letters enumerate multiple conclusions (four in the 39-page FLIP opinion and six in the 75-page BLIP opinion) and spell out in detail why each of those specific conclusions is "more likely than not" to be deemed true for tax purposes. *See* Ascher Aff., Exh. 3 (at 4-5) and Exh. 5 (at 12). Plaintiff does not even attempt to identify which of those ten conclusions is false or misleading, much less explain how or why they are misleading. Rule 9(b) requires at least this much. *See, e.g., Theoharous v. Fong*, 256 F.3d 1219, 1226 (11th Cir. 2001) (Rule 9(b) not satisfied where "plaintiffs failed to plead any particular facts indicating whether or how any of these statements were false or misleading").

933290.1

**2.**   **Plaintiff Has Not Properly Alleged That Brown & Wood Had Any Knowledge Of The Other Defendants' Alleged Fraud.**

Plaintiff argues that his Complaint, viewed in the most favorable light, sufficiently alleges that Brown & Wood "knew" of the other defendants' alleged fraud.  Opp. at 19.

Plaintiff fails to appreciate the difference between purely conclusory allegations of knowledge such as the ones he has made here, *see* CAC ¶ 77 ("First Union and Brown & Wood provided KPMG, QA, and Presidio substantial assistance in the commission of the fraud, <u>knowing</u> of the underlying wrongdoing." (emphasis added)), and legally sufficient allegations of knowledge that are supported by some minimal "factual basis" in the Complaint.  *In re Cascade Int'l Sec. Lit.*, 840 F.Supp. 1558, 1578 (S.D. Fla. 1993).  Nor can Plaintiff justify conclusory allegations by claiming that the defendants were involved in "secret" transactions that denied him access to such information:  "even when the defendant retains control over the flow of information, 'boilerplate and conclusory allegations will not suffice.'"  *In re Rockefeller Ctr. Properties, Inc. Sec. Lit.*, 311 F.3d 198, 216 (3d Cir. 2002).  "<u>Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible</u>."  *Id.* (emphasis in original).  Because Plaintiff has not done so, his aiding and abetting claims against Brown & Wood should be dismissed.

## III.   CONCLUSION

For the foregoing reasons, Defendant Sidley Austin Brown & Wood LLP respectfully requests that Plaintiff's claims against it be dismissed.

Respectfully submitted this **14th** day of July, 2003.

BOOSE CASEY CIKLIN LUBITZ MARTENS McBANE & O'CONNELL

By:  /s/ John D. Boykin for
     Richard L. Martens (Florida Bar No. 219908)
     Northbridge Tower - 19th Floor
     515 North Flagler Drive
     West Palm Beach, FL  33401
     Tel:  (561) 832-5900 • Fax:  (561) 655-2015

        - and -

Brad D. Brian

10

933290.1

Richard E. Drooyan
    *Pro Hac Vice*
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
Tel:  (213) 683-9100 • Fax:  (213) 687-3702

Attorneys for Defendant
SIDLEY AUSTIN BROWN & WOOD LLP

11

933290.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was furnished by facsimile and by U.S. first class mail this **14**[th] day of July, 2003, to:

| | |
|---|---|
| R. Timothy Vannatta, Esq.<br>Milberg Weiss Bershad Hynes & Lerach LLP<br>5355 Town Center Road, Suite 900<br>Boca Raton, FL  33486<br><br>Telephone:  (561) 361-5000<br>**Facsimile:  (561) 367-8400** | Attorneys for Plaintiff,<br>Peter T. Loftin |
| Brad N. Friedman, Esq.<br>Rachel S. Fleishman, Esq.<br>One Pennsylvania Plaza<br>New York, NY  10119<br><br>Telephone:  (212) 594-5300<br>**Facsimile:  (212) 868-1229** | Attorneys for Plaintiff,<br>Peter T. Loftin |
| David C. Goodwin, Esq.<br>John F. O'Sullivan, Esq.<br>Julie E. Nevins, Esq.<br>Akerman Senterfitt<br>Sun Trust International Center<br>One Southeast Third Avenue, Suite 2800<br>Miami, FL  33131-1704<br><br>Telephone:  (305) 374-5600<br>**Facsimile: (305) 374-5095** | Attorneys for Defendant,<br>KPMG LLP |
| Stephen L. Ascher, Esq.<br>Kronish Lieb Weiner & Hellman LLP<br>1114 Avenue of the Americas<br>New York, NY  10036-7798<br><br>Telephone:  (212) 479-6000<br>**Facsimile:  (212) 479-6275** | Attorneys for Defendant,<br>KPMG LLP |

Michael S. Pasano, Esq.                         Attorneys for Defendant,
Walter J. Taché, Esq.                           Presidio Growth LLC
Zuckerman Spaeder LLP
201 South Biscayne Boulevard, Suite 900
Miami, FL  33131

Telephone:  (305) 358-5000
**Facsimile:  (305) 579-9749**

Steven Bauer, Esq.                              Attorneys for Defendant,
Ellen K. Brown, Esq.                            Presidio Growth LLC
Latham & Watkins, LLP
505 Montgomery Street, Suite 1900
San Francisco, CA  94111-2562

Telephone:  (415) 391-0600
**Facsimile:  (415) 395-8095**

Thomas K. Equels, Esq.                          Attorneys for Defendants,
Mary Teresa Kogut, Esq.                         QA Investments LLC and
Holzman Equels                                  Quellos Group LLC
2601 South Bayshore Drive, Suite 600
Miami, FL  33133

Telephone:  (305) 859-7700
**Facsimile:  (305) 859-9996**

Brian A. Sun, Esq.                              Attorneys for Defendants,
Yolanda Orozco, Esq.                            QA Investments LLC and
O'Neill, Lysaght & Sun LLP                      Quellos Group LLC
100 Wilshire Boulevard, Suite 700
Santa Monica, CA  90401

Telephone:  (310) 451-5700
**Facsimile:  (310) 399-7201**

Joseph Ianno, Esq.                              Attorneys for Defendant,
Carlton Fields, P.A.                            First Union National Bank /
222 Lakeview Avenue, Suite 1400                 Wachovia Corporation
West Palm Beach, FL  33401

Telephone:  (561) 659-7070
**Facsimile:  (561) 659-7368**

George D. Ruttinger, Esq.  
Crowell & Moring LLP  
1001 Pennsylvania Avenue N.W.  
Washington, DC  20004-2595  

Telephone:  (202) 624-2670  
**Facsimile:  (202) 628-5116**

Attorneys for Defendant,  
First Union National Bank /  
Wachovia Corporation

_____/s/ John D. Boykin for_____  
Richard L. Martens