IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LUIS ALFREDO CÁCERES, et al., <br>    Plaintiffs <br>                v. <br> SIDLEY AUSTIN LLP, <br>    Defendant. | Civil Action No. <br> 1:23-cv-00844-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendant Sidley Austin LLP's motion to dismiss [ECF 24], as well as Sidley's motion for judicial notice [ECF 25] and Plaintiffs the Cácereses' motion for judicial estoppel [ECF 31]. For the following reasons, Sidley's motion to dismiss is **GRANTED** as to the Cácereses' indemnity claim and **DENIED** as to all others; Sidley's motion for judicial notice is **GRANTED**; and the Cácereses' motion for judicial estoppel is **DENIED**.

**I.    BACKGROUND**

This case arises out of asset-liquidation[1] tax advice that Sidley provided in the late 1990s to Luis Alfredo[2] and Luis Angel Cáceres[3] — who are the named plaintiffs in this case — as well as to their father, Alfredo Cáceres.[4] Long story short,

---

[1]   ECF 23, ¶ 1. The operative complaint is the amended complaint filed at ECF 23.

[2]   *Id.* ¶ 5.

[3]   *Id.* ¶ 6.

[4]   *Id.* ¶ 8.

1

Sidley's advice was good until it wasn't: The Cácereses faced no liability for over 20 years,[5] and then the IRS sued for $56 million.[6] The Cácereses eventually settled for $7 million,[7] and are in turn seeking to recover that sum from Sidley under four alternative theories of liability: (1) negligent misrepresentation,[8] (2) professional negligence,[9] (3) breach of contract,[10] and (4) indemnity,[11] each under Georgia law. Sidley moves to dismiss all four claims under Federal Rule of Civil Procedure 12(b)(6).[12]

## II.   DISCUSSION

Two preliminary matters: First, Sidley's unopposed[13] motion for judicial notice is granted. Courts are required, upon proper request, to take judicial notice of facts that are not subject to reasonable dispute. FED. R. EVID. 201. Accordingly, upon Sidley's request,[14] and having been "supplied with the necessary

---

[5]  *Id.* ¶¶ 24–28.

[6]  *Id.* ¶ 29.

[7]  *Id.* ¶ 32.

[8]  *Id.* ¶¶ 43–54.

[9]  *Id.* ¶¶ 55–63.

[10] *Id.* ¶¶ 36–42.

[11] *Id.* ¶¶ 64–71.

[12] ECF 24.

[13] ECF 33, at 53.

[14] ECF 25, at 3.

information," the Court takes judicial notice of both the complaint and the docket entry sheet in the IRS suit against the Cácereses, as public records "whose accuracy cannot reasonably be questioned." *Id.* Regarding the IRS complaint in particular, the Court takes judicial notice that "(a) the [complaint] was filed and (b) the [complaint] contains certain allegations," but "does not take judicial notice of the truth of the allegations contained [therein]." *Losch v. Nationstar Mortg. LLC*, 2024 WL 1282459, at *2 (11th Cir. Mar. 26, 2024). The judicially noticed aspects of the complaint will be considered by the Court in ruling on the instant motion. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).[15]

Second, the Cácereses' motion for judicial estoppel is denied. Judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001).[16] It is inapplicable unless a party takes a legal position that is "clearly inconsistent" with an earlier one. *Id.* at 750. The Cácereses argue that Sidley has previously taken an inconsistent position

---

[15] Alternatively, the IRS complaint can be considered at this stage under the incorporation-by-reference doctrine, because (1) it is referred to by the Cácereses in their complaint, ECF 23, ¶¶ 67–69; (2) it is central to the Cácereses' indemnity claim, *id.* ¶ 70; and (3) its authenticity is unchallenged, ECF 25, at 3. *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023).

[16] Judicial estopped is a "discrete doctrine," not to be confused with "the res judicata doctrines commonly called claim and issue preclusion." *New Hampshire,* 532 U.S. at 748.

regarding the ripeness of certain claims in this case.[17] But the Cácereses' claims all arise under Georgia law, whereas the previous positions taken by Sidley were all with respect to Florida law.[18] Because it is conceivable that the same claim would accrue differently under Georgia and Florida law, Sidley's positions are not clearly inconsistent, and judicial estoppel is unnecessary.

Moving to the merits: Of the Cácereses' four claims, three of them—negligent misrepresentation, professional negligence, and breach of contract—are conceptually similar. Each asserts that Sidley harmed the Cácereses by advising them to commit tax fraud. Sidley seeks the dismissal of all three, which the Court will together call the "legal malpractice claims," on the same ground of untimeliness.[19] The final claim for indemnity is distinct from the others: It asserts that the IRS held the Cácereses vicariously liable for Sidley's misconduct, and that the Cácereses must now be reimbursed.[20] Sidley seeks dismissal of this claim on the ground that Georgia law does not permit vicarious liability under the alleged circumstances.[21] The Court rules that the legal malpractice claims are not untimely

---

[17]   ECF 31, at 1.

[18]   ECF 31-1, at 16; ECF 31-2, at 8; ECF 31-3, at 6.

[19]   ECF 24-1, at 8.

[20]   ECF 23, ¶¶ 64–71.

[21]   ECF 24-1, at 15.

as a matter of law and thus survive, but that the indemnity claim is not cognizable under Georgia law and is dismissed.

### A. The Court Cannot Conclude as a Matter of Law that the Cácereses' Legal Malpractice Claims Are Untimely.

Sidley moves to dismiss the Cácereses' legal malpractice claims as barred by the applicable statutes of limitations. "[D]ismissal on statute-of-limitations grounds is proper only where it is apparent from the face of the complaint that the claim is time-barred." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024). A claim is in turn time-barred if the applicable limitations period, running from the date at which the claim accrued, had elapsed by the time the plaintiff sued on the claim—*and* if tolling does not apply. *See, e.g.*, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1279 (11th Cir. 2001). Because each of the Cácereses' legal malpractice claims arises under Georgia law, those claims' accruals and limitations periods, as well as the applicability of tolling, are governed by Georgia law. *Cambridge Mut. Fire Ins. Co. v. City of Claxton*, 720 F.2d 1230, 1232 (11th Cir. 1983). Under Georgia law—and in particular, under the Supreme Court of Georgia's recent analysis of the timeliness of legal malpractice claims in *Coe v. Proskauer Rose, LLP*, 314 Ga. 519 (2022), on which this Opinion heavily relies—the Cácereses' legal malpractice claims each accrued in 1997 and have limitations periods of no more than six years. Nevertheless, their dismissal on statute-of-limitations grounds is improper because the complaint sufficiently pleads that the limitations periods were tolled.

5

### 1. The Claims Accrued in 1997.

Though the three legal malpractice claims are conceptually similar, each must be "analyzed separately to determine when the right of action accrued for that particular claim." *Id.* at 525. The Court begins with the accrual of the negligent misrepresentation claim, for which *Coe* is directly on point. At issue in *Coe* was the timeliness of fraud and negligent misrepresentation claims against a law firm by former clients under similar facts as in this case, involving a dubious opinion letter promoting a tax-avoidance scheme that turned out to be illegal. *Id.* at 519, 522. The *Coe* opinion letter was issued in 2002, an IRS audit was initiated in 2005 and settled in 2012, and the former clients subsequently sued in 2015. *Id.* at 521–22. Under those facts, *Coe* held, the plaintiffs' negligent misrepresentation claim accrued in 2002, when they paid the law firm's legal fees, because that was when they first "sustained actual damages with certainty." *Id.* at 527–28.

*Coe* rejected the plaintiffs' argument that they did not suffer actual damages until they settled with the IRS in 2012. *Id.* at 528. It was "undisputed" in *Coe* that the plaintiffs had paid the law firm's fees, and that said fees had been paid "in reliance on" the alleged misrepresentations and material nondisclosures in the law firm's opinion letter. *Id.* Under those facts, the plaintiffs could have sued for negligent misrepresentation "at the point when they relied on those representations and paid those fees in 2002," meaning their negligent

6

misrepresentation claim "began to accrue at that time." *Id.* It was immaterial that the plaintiffs allegedly suffered "additional, later economic damages" by settling with the IRS in 2012, because the limitations period "began to run on the date that they *first* could have successfully maintained" their negligent misrepresentation claim in 2002. *Id.* (emphasis in original).

*Coe* compels the conclusion that the Cácereses' negligent misrepresentation claim accrued in 1997. Here, as in *Coe*, it is undisputed that the Cácereses paid Sidley's legal fees in 1997.[22] And here, as in *Coe*, the complaint makes clear that the Cácereses paid those fees in reliance on the misrepresentations and material nondisclosures in Sidley's opinion letter. For example, the complaint alleges that Sidley represented its opinion letter as "individually tailored" to the Cácereses, and as "evidenc[ing] the legality and permissibility" of the contemplated tax shelter[23]—and it was clearly in reliance on these misrepresentations that the Cácereses paid Sidley's fees. The Cácereses could have sued at the point when they relied on those representations and paid those fees in 1997,[24] and thus their negligent misrepresentation claim accrued in 1997.

---

[22] ECF 23, ¶¶ 37–38 (alleging that the Cácereses fully performed their obligation to pay Sidley's fees for its legal services); ECF 26, at 10 (referencing "fees paid to Sidley in 1997").

[23] ECF 23, ¶ 46.

[24] The Court rejects the Cácereses' argument that *Coe* is inapplicable because the Cácereses are not seeking to recover Sidley's fees. ECF 26, at 10. How the

The Cácereses' professional negligence claim likewise accrued in 1997. It begins to run "from the date of the breach of the duty," *not* from the time the breach is discovered or the time "the extent of the resulting injury is ascertained." *Id.* at 525. This is because in professional negligence, the "right of action arises immediately upon the wrongful act having been committed," even if the plaintiff has not suffered actual damages or a compensable injury. *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 806 (1980). Thus, as the Supreme Court of Georgia explained in *Jankowski*, a plaintiff's entitlement merely to nominal damages is sufficient to trigger accrual of a professional negligence claim. *Id.* Here, because the complaint alleges that Sidley committed a wrongful act when it prepared a defective opinion letter and otherwise gave unsound legal advice in 1997,[25] the professional negligence claim accrued in 1997.

Likewise, the limitations period for a contract claim "begins to run at the time of [the] alleged breach," *Wallace v. Bock*, 279 Ga. 744, 747 (2005), and not when damages are suffered or ascertained, *Gamble v. Lovett Sch.*, 180 Ga. App. 708, 709 (1986). Thus, in *Gamble*, when a schoolteacher's employment contract was changed in 1972 to remove reference to tenure, the schoolteacher's claim for breach of

---

Cácereses choose to litigate a claim today has no bearing on when that claim first accrued. Artful pleading in 2024 does not impact whether a cause of action was ripe in 1997.

[25]   ECF 23, ¶ 60.

contract premised on a vested right to tenure accrued in 1972, even though the schoolteacher was not actually fired until nearly ten years later. *Id.* This is consistent also with *Jankowski*'s teaching that the accrual of a cause of action can be triggered solely by a plaintiff's entitlement to nominal damages, permitted in breach of contract cases by O.C.G.A. § 13-6-6. Here, because the complaint alleges that Sidley breached its contract by failing "to satisfactorily provide a tax legal opinion and tax consulting services" to the Cácereses in 1997, the breach of contract claim accrued in 1997.[26]

The Cácereses' focus on the principle that a cause of action accrues "when the plaintiff could first have maintained his action to a successful result" is a red herring. *U-Haul Co. of W. Ga. v. Abreu & Robeson, Inc.*, 247 Ga. 565, 566 (1981). It is regretful that the Cácereses seem to have realized that they did not get what they paid for from Sidley "only with the benefit of hindsight." *Coe*, 314 Ga. at 528. But the dates at which the legal malpractice claims accrued do not depend on when the Cácereses realized they had been "duped"[27] — whether that realization finally took hold when the IRS initially sued in 2018,[28] or when the Eleventh Circuit

---

[26]   *Id.* ¶ 37.

[27]   *Id.* ¶ 3.

[28]   *Id.* ¶ 29.

reversed the dismissal of the IRS's claims in 2021,[29] or when the Cácereses settled with the IRS in 2023. Regardless, the Cácereses could have successfully maintained each of their legal malpractice claims from the time Sidley provided them with bad legal advice in 1997, at a minimum to recover legal fees (and for the professional negligence and breach of contract claims, to recover nominal damages). Fair or not, the Cácereses' legal malpractice claims each accrued in 1997.

### 2. The Claims' Limitations Periods Have Run Unless Tolling Applies.

Because the legal malpractice claims accrued over 25 years before the instant suit was filed in 2023,[30] their respective limitations periods have long run unless the Cácereses are entitled to tolling. The legal malpractice claims are subject to the following limitations periods:

- Negligent misrepresentation: four years, *Coe*, 314 Ga. at 524 (citing O.C.G.A. § 9-3-31);

- Professional negligence: four years, *id.* (citing O.C.G.A. § 9-3-25);

- Breach of contract: either four years (oral contract) or six years (written contract), *Newell Recycling of Atlanta, Inc. v. Jordan Jones & Goulding, Inc.*, 288 Ga. 236, 237 (2010) (citing O.C.G.A. §§ 9-3-24, 9-3-25).

---

[29] *Id.* ¶ 30.

[30] ECF 1, ¶ 1.

The parties squabble over whether the complaint plausibly alleges that the contract with Sidley was in writing.[31] Even assuming that it was in writing, it is apparent from the face of the complaint that the limitations period for each of the Cácereses' legal malpractice claims had elapsed *long* before this lawsuit was filed. The Cácereses' legal malpractice claims are thus untimely unless the Cácereses sufficiently allege that the limitations periods were tolled.

### 3. The Court Cannot Conclude as a Matter of Law that Tolling Does Not Apply.

In determining whether the Cácereses have sufficiently alleged tolling, the threshold issue is the applicable pleading standard. The Cácereses posit that they are not required to plead the elements of tolling at all,[32] because complaints "need not anticipate and negate affirmative defenses." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020). And since the statute of limitations is an affirmative defense that tolling effectively "negates," it makes some sense that the Cácereses' legal malpractice claims should not be dismissed unless it is "apparent from the face of the complaint" that tolling does not apply.[33] *Wainberg*, 93 F.4th at 1224. Sidley, by contrast, seems to posit that the tolling issue is governed by the

---

31   ECF 26, at 11–12; ECF 27, at 16–17.

32   ECF 26, at 7.

33   *Id.* at 7–8.

more rigorous "plausibility" pleading standard.[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In support, Sidley cites *Klopfenstein v. Deutsche Bank Sec., Inc.*, which held that a plaintiff who brought claims long after the limitations period had expired was required to "plausibly allege" tolling to avoid dismissal.[35] 592 F. App'x 812, 815 (11th Cir. 2014).

The decision here is not easy. On one hand, it is very difficult to square *Klopfenstein* with binding Eleventh Circuit precedent: What else is it to plausibly allege tolling in a complaint, but to anticipate and negate an affirmative statute-of-limitations defense—which plaintiffs cannot be required to do? *Klopfenstein* is also seemingly contradicted by *Barcelona v. Fogelgren*, a similarly unpublished[36] but more recent decision in which the Eleventh Circuit affirmed dismissal on statute-of-limitations grounds only because it appeared "beyond a doubt" that the plaintiff could prove "no set of facts" under which tolling would apply. 664 F. App'x 884, 886 (11th Cir. 2016); *accord Watkins v. O'Brien*, 808 F. App'x 1021, 1022 (11th Cir. 2020). On the other hand, *Barcelona* has its own problem: Its tolling analysis relied on *Hughes v. Lott*, an older case that incorporated the now-

---

[34]  ECF 24-1, at 20.

[35]  *Id.* at 25–26.

[36]  Under 11TH CIR. R. 36-2, unpublished opinions "are not considered binding precedent, but may be cited as persuasive authority."

overruled *Conley* pleading standard. 350 F.3d 1157, 1163 (11th Cir. 2003). For that reason, the statute-of-limitations reasoning in *Hughes* was recently distinguished by the Eleventh Circuit, in the footnote of yet another unpublished case. *Johnson v. Culpepper*, 2021 WL 3778363, at *2 n.3 (11th Cir. Aug. 26, 2021).

Fortunately, the Court can avoid this thicket of contradicting authorities because the complaint sufficiently pleads tolling even under the more demanding "plausibility" standard. To plausibly allege tolling, the complaint must contain non-conclusory allegations that, assumed to be true and construed "in the light most favorable to the plaintiff," *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019), support a reasonable inference of the following elements, *McCullough v. Finley*, 907 F.3d 1324, 1335 (11th Cir. 2018): (1) "actual fraud" (2) "concealment of the cause of action," and (3) the plaintiff's "reasonable diligence," *Doe v. Saint Joseph's Cath. Church*, 313 Ga. 558, 561 (2022) (citing O.C.G.A. § 9-3-96).

First, the Cácereses' have plausibly alleged that Sidley committed "actual fraud" through material nondisclosure. Actual fraud for tolling purposes is satisfied by *either* an affirmative fraud involving moral turpitude *or* "a fraudulent breach of a duty to disclose that exists because of a relationship of trust and confidence." *Id*. Thus, in *Doe*, the actual fraud requirement was satisfied by allegations that the defendant suppressed material information that a confidential relationship obligated it to communicate. *Id.* at 563. That is exactly what the

Cácereses have alleged here: that they had a confidential attorney-client relationship with Sidley,[37] *see Queen v. Lambert*, 259 Ga. App. 385, 387 (2003), and that Sidley intentionally withheld information from them about legal defects in its tax advice,[38] both when it issued the advice and when it was later put on notice as to those defects by IRS investigations into former tax-shelter clients.[39] These allegations support the reasonable inference that Sidley breached a duty to disclose arising out of its confidential relationship with the Cácereses, who have thus plausibly pled actual fraud.

Second, Sidley does not at this stage contest concealment, which element the Court therefore assumes has been plausibly alleged.

Third, the Cácereses have plausibly alleged reasonable diligence.[40] A limitations period is tolled by fraud "only until the fraud is discovered or by reasonable diligence should have been discovered." *Coe*, 314 Ga. at 530. Reasonable diligence, "except in plain and indisputable cases," is not amenable to resolution as a matter of law. *Sanders v. Looney*, 247 Ga. 379, 381 (1981). This is particularly true when a confidential relationship is involved, because "a

---

[37] ECF 23, ¶ 20 (alleging that the Cácereses "retained Sidley as special federal income tax counsel").

[38] *Id.* ¶¶ 24–28.

[39] *Id.* ¶¶ 33–35.

[40] ECF 24-1, at 23.

14

confidential relationship imposes a greater duty on a defendant to reveal what should be revealed, and a lessened duty on the part of a plaintiff to discover what should be discoverable through the exercise of ordinary care." *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 848 (1998). Sidley asserts that any fraud should have been discovered, at the latest, in 2018, when the IRS sued the Cácereses for tax evasion.[41] The Cácereses respond that they were entitled to keep relying on Sidley's advice notwithstanding the IRS suit, and that in any case their reasonable diligence is a question for the jury.[42]

Controlling here, yet again, is *Coe*. In *Coe*—recall, a factually analogous fraudulent-tax-advice case between a law firm and its former clients—the Supreme Court of Georgia declined to rule as a matter of law on reasonable diligence at summary judgment. 314 Ga. at 533. *Coe* held that the record contained "evidence sufficient to support" an inference of reasonable diligence where plaintiffs, faced with an IRS audit, had "hired independent counsel with an established reputation in tax matters to assist them in the audit process." *Id.* at 532. In so holding, *Coe* emphasized the procedural posture—at which the plaintiffs were "given the benefit of all reasonable doubts and possible inferences," *id.* at 530—and repeatedly invoked the principle that reasonable diligence, especially in

---

41   ECF 24-1, at 25.

42   ECF 26, at 15–16.

the context of a confidential relationship, is almost always a question for the jury, *id.* at 532–33.

This case is too factually and procedurally similar to *Coe* for the Court to distinguish at this juncture. The allegations here permit the reasonable inference that the Cácereses, like the plaintiffs in *Coe*, reacted to the prospect of an adverse IRS action by hiring experienced tax counsel: counsel good enough to get the IRS action (temporarily) dismissed.[43] Likewise, the question of the Cácereses' reasonable diligence comes to the Court on a motion to dismiss—at an even earlier stage of litigation than in *Coe*, with a less developed record—where the Cácereses, like the plaintiffs in *Coe*, get the benefit of factual doubts and inferences. Because *Coe* cannot yet be distinguished, the Court cannot yet rule that the Cácereses failed to exercise reasonable diligence as a matter of law, and Sidley's request to dismiss the legal malpractice claims for untimeliness is—for now—denied.

### B. The Cácereses Fail to State a Claim for Indemnity.

Sidley also moves to dismiss the Cácereses' claim for indemnity. "Georgia law recognizes two broad categories of indemnity: as created by contract, as between a surety and a debtor; and under the common law of vicarious liability, as between principals and agents." *ALR Oglethorpe, LLC v. Fid. Nat'l Title Ins. Co.*, 361 Ga. App. 776, 787 (2021). The Cácereses' indemnity claim is premised on

---

[43] ECF 23, ¶ 30.

vicarious liability[44]—also called "respondeat superior"—under which doctrine employers can be held responsible for torts committed by their employees acting (1) "in furtherance of" and (2) "within the scope of" the employer's business. *Prodigies Child Care Mgmt., LLC v. Cotton*, 317 Ga. 371, 376 (2023). Thus, to succeed on their indemnity claim, the Cácereses must prove that they engaged in tax fraud both in furtherance and within the scope of Sidley's practice—in other words, that they were acting as Sidley's tax-fraud agents. *Id.* at 377.

This is both legally backward and logically absurd. An agency relationship *does* exist as a matter of Georgia law between lawyers and clients, but in the opposite direction; lawyers are their clients' agents, not the other way around. *See Anaya v. Coello*, 279 Ga. App. 578, 580 (2006). The Cácereses have not provided, and the Court has not found, a shred of support for the premise that a client soliciting legal advice from a lawyer could ever be the *lawyer's agent* for purposes of acting on that advice. To permit the factual inference that the Cácereses were Sidley's agents, the complaint would need to allege that Sidley's provision of tax advice to the Cácereses was in furtherance of *Sidley*'s purpose of committing tax fraud, to which end it directed the Cácereses' actions. The complaint does not allege that, because that makes no sense.

---

44   ECF 26, at 18.

The Cácereses nevertheless argue that they have stated a claim for indemnification because they have alleged that their tax liability "was entirely premised on the tortious acts committed by Sidley."[45] They are both factually and legally mistaken. First, the Cácereses' tax liability was premised on their own misconduct. A look at the IRS's complaint against the Cácereses—of which the Court has taken judicial notice[46]—reveals that the IRS accused the Cácereses of knowingly entering into a transaction that artificially reduced their taxes.[47] In particular, the IRS alleged the following:

- That the Cácereses "[f]rom the outset . . . were aware of and sought to avoid" future tax liability;[48]

- That the Cácereses sought a tax opinion from Sidley precisely because they knew that the contemplated transaction would incur unpaid taxes;[49]

- That the Cácereses "were fully aware that the transaction was a tax shelter," and were focused on manipulating the transaction's terms to obscure its "abusive nature";[50]

- That the Cácereses not only "kn[e]w that the transaction lacked economic substance," but also were "aware that

---

[45] *Id.* at 20.

[46] *Supra* at 2-3. The Court takes judicial notice only of the fact that the IRS complaint contained certain allegations, without taking a position as to their truth.

[47] ECF 25-1, ¶ 37.

[48] *Id.* ¶ 24.

[49] *Id.* ¶ 40.

[50] *Id.* ¶ 51.

18

- - this lack of substance meant that the transaction could be disregarded for tax purposes";[51] and

  - That the Cácereses's knowledge that the transaction was fraudulent is evidenced by various incriminating letters exchanged by the Cácereses and their personal (*i.e.* non-Sidley) attorneys.[52]

The Court recites these allegations only to rebut the factual misrepresentation pressed repeatedly by the Cácereses that their liability to the IRS was "based on knowledge imputed to them" due to Sidley's misconduct.[53]

Second, not only have the Cácereses misrepresented the facts, but they have done so in a way that makes no legal difference. Assuming that the Cácereses' liability to the IRS *was* entirely premised on tortious acts committed by Sidley, their claim for indemnity still fails because "a defendant may not seek indemnification from another defendant as a joint tortfeasor simply based on allegations that the other defendant's negligence actually caused the harm." *ALR Oglethorpe*, 361 Ga. App. at 786. The Cácereses' indemnity claim, in other words, is entirely without merit and is accordingly dismissed.

---

[51]   *Id.* ¶ 53.

[52]   *Id.* ¶¶ 24, 41, 48, 49, 54.

[53]   ECF 26, at 17.

### III.     CONCLUSION

Sidley's motion to dismiss [ECF 24] is **GRANTED** as to the Cácereses' indemnity claim and **DENIED** as to all others. Sidley's motion for judicial notice [ECF 25] is **GRANTED**. The Cácereses' motion for judicial estoppel [ECF 31] is **DENIED**. Sidley is **ORDERED** to file its answer to the remaining portions of the amended complaint within 14 days of this Order, and the parties are **ORDERED** to file their Joint Preliminary Report and Discovery Plan within 30 days of Sidley's answer.

**SO ORDERED** this 17th day of September, 2024.

_____
Steven D. Grimberg
United States District Judge