IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LUIS ALFREDO CÁCERES, *et al.*,<br>    Plaintiffs,<br><br>                v.<br><br>SIDLEY AUSTIN LLP,<br>    Defendant. | Civil Action No.<br>1:23-cv-00844-SDG |

## ORDER

This matter is before the Court on Defendant Sidley Austin's request that the Court compel the production of evidence bearing on Plaintiffs Luis Alfredo Cáceres's and Luis Angel Cáceres's reasonable diligence in uncovering the claims they bring against Sidley in this case. Specifically, Sidley seeks to compel (i) the production of documents withheld by third party Smith, Gambrell & Russell LLP (SGR) on the basis of attorney-client privilege and the work-product doctrine; and (ii) deposition testimony concerning the Cácereses' communications with their attorneys about their potential claims against Sidley, including facts supporting such claims, which Plaintiffs and SGR have asserted are privileged. Assuming without deciding that these communications and documents are protected by the attorney-client privilege and/or the work-product doctrine, the Court concludes that the Cácereses have waived any privilege or work-product protections attached to these communications and documents.

1

The Cácereses sued Sidley for breach of contract, professional negligence, and negligent misrepresentation in connection with a tax opinion letter that they received from R.J. Ruble in 1997. Sidley previously moved to dismiss the Cácereses' claims as time barred.[1] In opposition to that motion, the Cácereses asserted that the relevant statutes of limitations were tolled pursuant to O.C.G.A. § 9-3-96, which requires the party seeking tolling to prove that he acted with reasonable diligence to discover his cause of action. *See Coe v. Proskauer Rose, LLP*, 314 Ga. 519, 529 (2022). As relevant here, the Cácereses argued that they had exercised reasonable diligence because "[t]he Cácereses alleged (and that allegation must be credited as true) that, prior to the IRS reinstating its claim against them in January 2021, they 'had no reason to believe that Sidley's advice was incorrect or that the Cácereses would suffer any injury associated with the UPC Transaction.'"[2] The Court agreed with the Cácereses that, accepting all of the complaint's factual allegations as true at the motion to dismiss stage, the Cácereses had sufficiently alleged tolling to survive dismissal.[3]

Having asserted that they acted with reasonable diligence because they "had no reason" to believe that Sidley's advice was incorrect until January 2021,

---

[1]   ECF 24.

[2]   ECF 26, at 16 (quoting ECF 23, ¶¶ 30–31).

[3]   ECF 35.

the Cácereses cannot now use the attorney-client privilege and work-product doctrines to prevent Sidley from testing whether that factual assertion is true. That is especially so here, where tolling is a central issue in this case and where the Cácereses have expressly cited communications with their attorneys in sworn discovery responses about how they investigated and ultimately discovered their potential claims. For example, in response to an interrogatory asking the Cácereses to describe all of the steps they took to investigate the IRS's allegations in 2018 that the attorney who prepared their tax opinion letter had been convicted for "writing tax opinion letters that blessed bogus tax shelters," the Cácereses responded that they "relied on [SGR] concerning allegations by the IRS."[4] In response to a different interrogatory asking the Cácereses to describe in detail when they became aware of their potential claims against Sidley, including the events that put them on notice of their claims, the Cácereses responded that they "did not become aware of potential claims against Sidley Austin until on or around October 2021 when they engaged counsel in these matters."[5]

---

[4] Interrogatory No. 14 and Response to Interrogatory No. 14. *See* ECF 70-1, at 3 n.4.

[5] Interrogatory No. 8 and Amended Response to Interrogatory No. 8.

Under Georgia law,[6] attorney-client privilege "is narrowly construed because its application operates to exclude evidence and thus to impede the search for the truth." *Hill, Kertscher & Wharton, LLP v. Moody*, 308 Ga. 74, 79 (2020). In *Hill*—which similarly involved a discovery request on a third-party law firm in the context of a professional negligence claim—the Supreme Court of Georgia held that the attorney-client privilege had been waived where the plaintiffs, merely by asserting a claim for negligence, "put at issue questions of proximate causation, reliance, and damages." Likewise, in *Cazanas v. Georgia*, the Supreme Court of Georgia ruled that a criminal defendant asserting that his guilty plea was invalid could not invoke the attorney-client privilege "in order to block the introduction of evidence that would tend to establish the truth or falsity of the very matter that his assertions rest upon." 270 Ga. 130, 132 (1998); *cf. Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994) ("[T]he attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party."). These authorities squarely apply here. By relying on their communications with their attorneys about their investigation and discovery of

---

[6] Because this Court is sitting in diversity, it applies Georgia law to the Cácereses' privilege claims. FED. R. EVID. 501.

potential claims against Sidley to support their tolling arguments, the Cácereses have waived any privilege that would have attached to those communications.

By the same logic, those communications are not protected here by the work-product doctrine. Instructive on this issue is the Federal Circuit's analysis of attorney-client and work-product protections in *In re EchoStar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006). In *EchoStar*, a party sought to rebut an allegation of bad faith by asserting that it was relying on the advice of counsel. *Id.* at 1298. *EchoStar* held that the party asserting such an "advice-of-counsel" defense thereby waived both the attorney-client privilege and work-product protections—but not to the same extent. *Id.* at 1300–01. As the Federal Circuit explained, waivers of work-product protections are narrower than waivers of attorney-client privilege: the former only applies to evidence probative of the *client*'s state of mind and will under no circumstances extend to an attorney's "legal opinions and mental impressions that were not communicated [to the client]." *Id.* at 1304. Here, therefore, the Cácereses' waiver of work-product protection must be limited to "any document or opinion that embodies or discusses a communication to or from [the Cácereses]" that could have put them on notice about their potential claims against Sidley. *Id.*; *see also State St. Bank & Tr. Co. v. Canal Ins. Co.*, 2015 WL 11347587, at *2 (N.D. Ga. Sept. 23, 2015) (finding a limited waiver of both attorney-

5

client privilege and work-product protection where the plaintiff placed "communications with counsel at issue by affirmatively relying on that advice").

The Court finds that compelling the production of documents withheld by SGR[7] is appropriate and justified under the circumstances. SGR's privilege log indicates that these communications were between SGR, the Cácereses, and counsel for the Cácereses in this matter. Beginning in February 2021—that is, many months *before* October 2021, when the Cácereses have stated in sworn discovery responses that they learned of their claims against Sidley—SGR received a communication from the Cácereses' counsel titled "Henco/Caceres Matter – Potential Claims related to Midco transaction." This email appears to have prompted a series of related emails about the Cácereses' "potential claims," all of which take place before October 2021. The substance of those communications bears directly on the veracity of the Cácereses' sworn interrogatory response that

---

[7] Sidley seeks the production of SGR00004539, SGR00006928, SGR00006929, SGR00006930, SGR00006931, SGR00006932, SGR00005839, SGR00006606, SGR00006607, SGR00006608, SGR00006612, SGR00006613, SGR00006978, SGR00001567, SGR00006979, SGR00006982, SGR00006980, SGR00006981, SGR00007272, SGR00006983, SGR00007022, SGR00007023, SGR00006728, SGR00006729, SGR00006730, SGR00006740, SGR00001760, SGR00006753, SGR00006754, SGR00006755, SGR00006756, SGR00006758, SGR00006759, SGR00006757, SGR00006786, SGR00006788, SGR00006785, SGR00006784, SGR00006783, SGR00006791, SGR00006793, SGR00006789, SGR00006790, SGR00006792, SGR00006795, SGR00006796, SGR00006794, SGR00006807, SGR00006808, SGR00006809, and SGR00006810.

they "did not become aware of potential claims against Sidley Austin until on or around October 2021 when they engaged counsel in these matters." These materials may also reveal that the Cácereses were aware of the claims, or the facts supporting such claims, before their current counsel's outreach. Thus, even assuming that the communications are privileged, the Court finds that the Cácereses have waived any privilege or work-product protection associated with these emails.

Similarly, the Court overrules objections lodged during the deposition of Mr. Rollins, an SGR attorney and SGR's corporate designee under Federal Rule of Civil Procedure 30(b)(6), pursuant to which Rollins declined to answer questions intended to elicit testimony about when SGR informed the Cácereses of facts and information that would have put them on notice of their claims against Sidley. For example, Rollins admitted that SGR knew as early as August 2015 that Ruble and others involved with the tax shelter at issue here had been indicted or criminally convicted for their work on tax shelters and opinion letters, but Rollins was instructed not to answer questions about whether SGR informed the Cácereses of that information.[8] Rollins was also instructed not to answer questions about whether he had discussed Ruble's opinion letter with the Cácereses in 2018 and

---

8   Rough Tr. at 82:22-83:25, 85:14-17, 89: 13-25, 124:25-125:4.

whether the Cacereses had ever considered claims against Ruble or Sidley.[9] These instructions are overruled. Having asserted that they relied on SGR to investigate the allegations in the IRS complaint, including the specific allegations about Ruble's criminal conviction, the Cácereses have waived any attorney-client privilege or work-product protections attached to communications with SGR about potential claims against Sidley, the strength of Ruble's opinion letter, and information that would have put the Cácereses on notice of their claims.

Of course, by asserting that the statute of limitations was tolled, the Cácereses and their attorneys "do not give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies." *EchoStar*, 488 F.3d at 1303. Nothing in this Order shall be construed to permit Sidley to inquire into communications between the Cácereses and their counsel about matters unrelated to the Cácereses' assertions with respect to tolling. Nor shall anything in this Order be construed to grant Sidley access to SGR's "own analysis and debate" over how to advise their clients. *Id.* The Court finds that the Cácereses have waived attorney-client privilege and work-product protections only for those documents and communications on or before October 2021 that relate to their potential claims against Sidley, the strength of Ruble's opinion letter,

---

9   *Id.* at 46:6-10, 89:20-25, 92:15-93:18.

and information that would have put the Cácereses on notice of their claims relating to the UPC transaction.

The Court hereby orders the following:

1. SGR must produce to Sidley, on or before July 5, 2025[10], copies of the communications Sidley requested and which are identified in footnote 7 of this Order.

2. The deposition of Rollins, both in his personal capacity as well as in his capacity as SGR's 30(b)(6) representative, is reopened to permit questioning into whether and to what extent SGR communicated with the Cácereses on or before October 2021 about (i) potential claims against Sidley; (ii) SGR's investigation into the allegations in the IRS complaint, and the results of SGR's investigation; (iii) information about the opinion letter and its author (Ruble), including the fact of Ruble's indictment and conviction, (iv) information about the other participants in the tax shelter transaction, including the fact of the participants' indictments and convictions; and (v) the allegations set forth in the Cácereses' complaint in this action.

3. Future depositions of attorneys who represented the Cácereses in connection with either the IRS subpoena in 2014 or the IRS complaint in 2018 shall be conducted in accordance with the guidance set forth in this Order, including the guidance set forth in Paragraph 2. In the event a dispute arises over an improper instruction that implicates this Order, the parties are instructed to meet-and-confer and, if needed, notify the Court of the dispute pursuant to undersigned's Standing Order protocol for resolving discovery disputes.

4. Plaintiffs, SGR, and other third parties from whom documents have been sought shall also produce any additional withheld documents and

---

[10] Undersigned regrets imposing a weekend deadline but is trying to balance between the July 4th holiday and the next scheduled deposition that would be impacted by this Order, which undersigned understands to be as early as Monday, July 7. If that deposition or the immediate need for this Order has otherwise been postponed, undersigned requests that counsel work cooperatively together to agree on a reasonable extended deadline among themselves.

9

communications dated prior to October 2021—including those between the Cácereses and their attorneys, former or present—that discuss (i) potential claims against Sidley; (ii) SGR's investigation into the allegations in the IRS complaint, and the results of SGR's investigation; (iii) information about the opinion letter and its author (Ruble), including the fact of Ruble's indictment and conviction, (iv) information about the other participants in the tax shelter transaction, including the fact of the participants' indictments and convictions; and (v) the allegations set forth in the Cácereses' complaint in this action. Such documents shall be produced expeditiously, to facilitate Sidley's review prior to the Cácereses depositions and further depositions of the Cácereses' attorneys at SGR.

If a dispute arises as to whether the Cácereses have waived attorney-client privilege or work-product protections as to any particular document, the parties must confer and, if unable to reach a resolution, may request an *in camera* review via email to Chambers pursuant to undersigned's Standing Order protocol for resolving discovery disputes.

**SO ORDERED** this 2nd day of July, 2025.

_____
Steven D. Grimberg
United States District Judge