**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| Luis Alfredo Cáceres and Luis Angel Cáceres, Individually, as executor of the Estate of Alfredo Cáceres, and as trustee of the Luis Angel Cáceres Charitable Remainder Unitrust, | ) ) ) ) ) ) | |
| Plaintiffs, | ) | Case No. 1:23-CV-00844-SDG |
| | ) | |
| v. | ) | |
| | ) | |
| Sidley Austin LLP, | ) | |
| | ) | |
| Defendant. | ) | |

**[REDACTED]**
**PLAINTIFFS' RESPONSES AND OBJECTIONS TO**
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiffs Luis Alfredo Cáceres ("Freddie") and Luis Angel Cáceres ("Luis"), Individually, as executor of the Estate of Alfredo Cáceres, and as trustee of the Luis Angel Cáceres Charitable Remainder Unitrust (together, "Plaintiffs" or the "Cácereses") submit the following responses and objections to Defendant Sidley Austin LLP's ("Sidley") statement of material facts in support of its motion for summary judgment:

1. Plaintiffs Luis Alfredo Cáceres ("Luis Alfredo" [Freddie]) and Luis Angel Cáceres ("Luis Angel" [Luis]) are brothers and sophisticated businessmen, and they are both certified public accountants. Berger Dep. 117:15-118:1; Luis Alfredo [Freddie] Dep. 5:12-14, 10:1-23; Luis Angel [Luis] Dep. 8:18-22; Rollins 30(b)(6) Dep. 174:7-19.

**RESPONSE:** Partly disputed. The assertion that the Cácereses are "sophisticated

businessmen" is vague, conclusory, and not supported by the cited evidence. Neither of the Cácereses is presently a Certified Public Accountant. Luis maintained his public accountancy license until the 2000's but only worked at a public accounting firm for two years in 1984-1986. (Ex. 92, Luis Dep. 16:03-10.) Freddie only worked as a public accountant for a year and a half in the 1980's, and his license is also inactive. (Ex. 93, Freddie Dep. 10:20:11:04, 12:21-22.). The Cácereses do not dispute that they are brothers.

2. ██████████████████████████████████████████████████

**RESPONSE:** Partly disputed. ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

3. In 1996, Plaintiffs and their father, Alfredo Cáceres [Alfredo Sr.] (collectively "the Cácereses"), were the sole shareholders of United Poultry Corporation ("UPC"). Luis Angel [Luis] Dep. 25:4-20; Cornelison 30(b)(6) Dep. 56:9-11.

**RESPONSE:** Undisputed.

4. One of UPC's assets was the stock of Belca Foodservice Corporation ("Belca"), the value of which had increased "substantially" from the time UPC purchased the stock to 1996, when the Cácereses became interested in selling UPC's Belca stock. Luis Alfredo [Freddie] Dep. 35:8-13; Luis Angel [Luis] Dep. 26:19-27:3.

**RESPONSE:** Undisputed.

5.

**RESPONSE:** Partly disputed.

6.

**RESPONSE:** Undisputed.

7. UPC's sale of its Belca stock and subsequent distribution of the proceeds to the Cácereses would have been subject to "dual taxation": first, capital gains tax on the appreciated value of the Belca stock, and second, individual tax on the distribution of the proceeds from UPC to the Cácereses. Ex. 1, Ex. 2, Luis Alfredo [Freddie] Dep. 57:22-58:5, 59:22-60:2; Luis Angel [Luis] Dep. 44:15-45:3, 45:11-22, 47:6-13; Cornelison 30(b)(6) Dep. 77:25-78:19, 86:10-25.

**RESPONSE:** Partly disputed. Paragraph 7 asserts a legal conclusion about a hypothetical transaction that did not occur, and the Cácereses object to the evidence Sidley cites as inadmissible speculation and lay opinion testimony under Federal Rule of Evidence 701. The Cácereses do not dispute that the Cácereses and their advisors considered the possibility of "dual taxation" in the UPC Transaction, but dispute Sidley's conclusory assertion about what "would have" occurred.

3



8. 

**RESPONSE:** Undisputed.

9. 

**RESPONSE:** Undisputed.

10. 

**RESPONSE:** Undisputed.

11. 

**RESPONSE:** Disputed.

12.

**RESPONSE:** Disputed.

13.

**RESPONSE:** Undisputed.

14.

**RESPONSE:** Undisputed.

15. Intermediary (or Midco) transactions involve the sale of an asset to an intermediary for tax purposes. Rollins 30(b)(6) Dep. 192:5-11.

**RESPONSE:** Undisputed.

16. By selling UPC to an intermediary, the Cácereses could offload responsibility for paying any capital gains tax owed by UPC on the Belca sale to the intermediary and receive proceeds unreduced by any taxation. Cornelison 30(b)(6) Dep. 133:13-134:21, 198:8-14.

**RESPONSE:** Partly disputed.

The Cácereses do not dispute that, when selling UPC to an intermediary,

that intermediary would assume the responsibility for paying any capital gains

tax owed by UPC on the Belca sale.

17.

**RESPONSE:** Undisputed.

18.

**RESPONSE:** Undisputed.

19. Skandia used UP Acquisitions to purchase UPC. Ex. 4; Cornelison 30(b)(6) Dep. 24:12-17; 94:16-95:18, 96:24-97:6.

**RESPONSE:** Undisputed.

20.

**RESPONSE:** Partly disputed.

21. In late 1996 or early 1997, the Cácereses retained Mr. Ruble to provide an opinion letter relating to the UPC sale. Luis Angel [Luis] Dep. 50:16-21.

**RESPONSE:** Undisputed.

22. ██████████████████████████████████████████████████████
██████████████████████████

**RESPONSE:** Disputed. ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████

23. At the time of his retention, Mr. Ruble was a partner at Brown & Wood LLP. Commons 30(b)(6) Dep. 72:23-73:17; Ex. 65.

**RESPONSE:** Undisputed.

24. ██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████

**RESPONSE**: Disputed. █████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████

25. ██████████████████████████████████████████████████████
██████████████████████████████████████████████

**RESPONSE:** Undisputed.

26. ████████████████████████████████████████████
████████████████████████████████

**RESPONSE:** Disputed. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

27. ████████████████████████████████████████████
████████████████████████████████████████████
████████████

**RESPONSE:** Disputed. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[1] ████████████████████████████████████████████
████████████████

9

28. ██████████████████████████████████████████████████████████████████████████████████████

**RESPONSE:** Disputed. ████████████████████████████████████

29. ██████████████████████████████████████████████████████████████████████████████████████

**RESPONSE**: Partly  disputed. ██████████████████████████



30.

**RESPONSE:** Undisputed.

31.

**RESPONSE:** Undisputed.

32.

**RESPONSE:** Undisputed.

33.

**RESPONSE:** Undisputed.

34.

**RESPONSE**: Disputed.



35.

**RESPONSE:** Undisputed.

36.

**RESPONSE**: Partly disputed.

37.



**RESPONSE:** Partly  disputed.

38.  On April 10, 1997, Mr. Ruble provided the Cácereses with a copy of his final opinion letter.  Ex. 16; Commons 30(b)(6) Dep. 102:6-9.

**RESPONSE:** Undisputed.

39.

**RESPONSE:** Undisputed.

40.

**RESPONSE:** Undisputed.

41.

**RESPONSE:** Undisputed.

42.  On April 10, 1997, the Cácereses sold their UPC shares to UP Acquisitions ▮▮▮▮. Ex. 14; Cornelison 30(b)(6) Dep. 193:6- 194:21.

**RESPONSE:** Undisputed.

43.

**RESPONSE:** Partly disputed.

44.

**RESPONSE:** Undisputed.

45.  The IRS estimated that the Cácereses avoided more than $13 million in taxes by using the intermediary tax shelter. Ex. 39; Luis Alfredo [Freddie] Dep. 145:4-15.

**RESPONSE:** Undisputed.

46.

**RESPONSE:** Undisputed.

47.

**RESPONSE:** Undisputed.

48.

**RESPONSE**: Partly disputed.

49.

**RESPONSE:** Undisputed.

50. In January of 2001, the IRS announced Notice 2001-16, which set forth the IRS's intent to challenge the use of intermediary transaction tax shelters to artificially eliminate or reduce tax liability. Ex. 17.

**RESPONSE:** Undisputed.

51. In May of 2001, Brown & Wood merged with Sidley & Austin LLP to become Sidley Austin Brown & Wood LLP, which later became Sidley Austin. Ex. 26; Ex. 27; Commons 30(b)(6) Dep. 190:8-16.

**RESPONSE:** Undisputed.

14

52.

**RESPONSE:** Undisputed.

53.

**RESPONSE:** Undisputed.

54. On September 11, 2001, the World Trade Center was destroyed in a catastrophic terrorist attack. Ex. 26; Ex. 61.

**RESPONSE:** Undisputed.

55.

**RESPONSE:** Undisputed.

56.

**RESPONSE:** Undisputed.

57. In December 2001, the IRS announced a program that would waive penalties for taxpayers who had used a tax shelter, in exchange for disclosing the shelter before April 23, 2002. Ex. 19; Ex. 20; Tyler Dep. 126:2-128:10.

**RESPONSE:** Undisputed.

58.

**RESPONSE:** Partly disputed.



59.

**RESPONSE**: Disputed.

60.

**RESPONSE:** Undisputed.

61. The only opinion the Cácereses received from Mr. Ruble, Brown & Wood, or Sidley was the April 10, 1997, opinion letter prepared by Mr. Ruble. Commons 30(b)(6) Dep. 411:17-412:5; Luis Angel [Luis] Dep. 125:18-22.

**RESPONSE:** Undisputed.

62.

**RESPONSE:** Partly disputed.

63.

**RESPONSE:** Undisputed.

64.

**RESPONSE:** Undisputed.

65. In October 2003, Sidley expelled Mr. Ruble from the partnership for breaching his fiduciary duties and violating the partnership agreement. Ex. 66 at 9; Commons 30(b)(6) Dep. 316:1-11.

**RESPONSE:** Undisputed.

66. Beginning ████████████, the U.S. Attorney's Office for the Southern District of New York ("DOJ") opened an investigation into Sidley arising out of Mr. Ruble's fraudulent tax shelter activities. Ex. 27.

**RESPONSE:** Undisputed.

67. On May 23, 2007, DOJ issued a press release announcing its decision "not to seek criminal charges" against Sidley. Ex. 27.

**RESPONSE:** Undisputed.

68. The press release explained that a "number of factors" persuaded DOJ not to bring criminal charges against Sidley, including that Mr. Ruble authored his opinion letters largely by deceiving the firm and that Sidley cooperated with the criminal investigation from the very beginning and had agreed to pay a $39.4 million penalty. Ex. 27.

**RESPONSE:** Undisputed.

69. Also on May 23, 2007, Sidley issued a public statement of responsibility, which acknowledged that Mr. Ruble had issued opinions for transactions for high net worth individuals beginning in 1996 that "defrauded the U.S. Treasury of taxes owed by those taxpayers." Ex. 27.

**RESPONSE:** Undisputed.

70. Sidley's statement expressed deep regret for Mr. Ruble's conduct and stated that Mr. Ruble was expelled in October 2003 for deceiving the firm about his work on "the tax shelter transactions" and for having "secretly taken millions of dollars in side payments from a tax shelter promoter." Ex. 27.

**RESPONSE:** Undisputed.

71. Sidley's public statement also stated that Mr. Ruble was indicted in August 2005. Ex. 27.

**RESPONSE:** Undisputed.

72. Mr. Ruble was convicted for tax evasion in 2008 and sentenced to six-and-a-half years in prison. Ex. 30.

**RESPONSE:** Undisputed.

73. Mr. Pfaff was also convicted for tax evasion in 2008 and sentenced to more than eight years in prison. Ex. 30.

**RESPONSE:** Undisputed.

74. These developments received extensive press coverage in the media, including in the New York Times and the Atlanta Journal-Constitution. Ex. 23; Ex. 25; Ex. 28; Ex. 29; Ex. 71; Ex. 72; Rollins 30(b)(6) Dep. 88:14-89:17; Berger Dep. 128:20-129:22.

**RESPONSE:** The Cácereses object to the phrase "extensive press coverage" as ambiguous and conclusory. Undisputed that the New York Times and Atlanta Journal-Constitution reported on Mr. Ruble and Mr. Pfaff's convictions.

75.



**RESPONSE:** Partly disputed.

76.

**RESPONSE:** Undisputed.

19

77. ██████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████

**RESPONSE**: Partly disputed. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

78. ██████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████

**RESPONSE**: Partly disputed. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

20

79.

**RESPONSE:** Undisputed.

80.

**RESPONSE:** Undisputed.

81.

**RESPONSE:** Undisputed.

82.

**RESPONSE:** Undisputed.

83.

**RESPONSE:** Undisputed.

84.



**RESPONSE:** Undisputed.

85.

**RESPONSE:** Undisputed.

86.

**RESPONSE:** Partly disputed.

87.

**RESPONSE:** Partly disputed.

22

88.

**RESPONSE**: Partly disputed.

89.

**RESPONSE:** Partly disputed.

90.

**RESPONSE:** Disputed.



91.

**RESPONSE:** Disputed.



92.

**RESPONSE:** Undisputed.

93.

**RESPONSE**: Undisputed.

94.

**RESPONSE:** Disputed.

95. On June 27, 2018, the IRS sued the Cácereses, alleging that the 1997 tax shelter was unlawful and seeking to recover approximately $56 million in back taxes, penalties, and interest. Ex. 39; Luis Alfredo [Freddie] Dep. 112:22-113:10.

**RESPONSE:** Undisputed.

96.

**RESPONSE:** Undisputed.

97.

**RESPONSE:** Partly disputed.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

98.   The Cácereses retained Smith Gambrell to represent them in litigation against the IRS ███████████████████████████████. Rollins 30(b)(6) Dep. 45:25-46:10, 49:3-24; Luis Alfredo [Freddie] Dep. 96:11-98:4.

**RESPONSE:** Undisputed.

99.   ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████

**RESPONSE**: Disputed. ██████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

100.  The Smith Gambrell attorneys who represented the Cácereses in connection with the IRS summonses and action were experienced tax attorneys and litigators. Ex. 34; Tyler Dep. 14:19-19:4; 19:21-22:5; 28:20-30:19; Rollins 30(b)(6) Dep. 17:4-24, 28:18-29:7, 42:17-25.

**RESPONSE**: Undisputed.

101.  ███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████

**RESPONSE:** Undisputed.

102. In June 2018, Luis Angel [Luis] understood that the IRS was alleging that he had participated in a sham sale to an intermediary and that Mr. Pfaff had been convicted alongside Mr. Ruble and sentenced to 57 months in connection with tax shelters. Ex. 39; Luis Angel [Luis] Dep. 162:23-163:13, 174:2-177:7, 179:5-9.

**RESPONSE:** Partly disputed. The Cácereses object to Paragraph 102 as compound, and as misrepresenting the cited exhibit and testimony. The Cácereses do not dispute that in June 2018, Luis understood (but disagreed with) the IRS's allegations, and understood from the IRS's Complaint that Mr. Pfaff and Mr. Ruble had been convicted in connection with tax shelters. (Ex. 92, Luis Dep. 162:23-163:13, 174:2-177:7, 179:5-9.) But Luis also believed the convictions of Pfaff and Ruble "didn't apply to [the UPC] transaction" because "whatever it was that they did" was "irrelevant and should not be seen – should not be allowed, I guess, to taint our actions" because there was "nothing illegal about the transaction we entered into." (Ex. 92, Luis Dep. 176:25-177:23.)

103. In June 2018, Luis Angel [Luis] understood that the IRS had alleged that Skandia was a "front" for Diversified Group, a "notorious tax shelter promoter" that the IRS alleged had paid a $25 million penalty for organizing intermediary tax shelters like Plaintiffs'. Ex. 39; Luis Angel [Luis] Dep. 179:5-180:3; Bell Dep. 41:11-19.

**RESPONSE:** Undisputed.

104. The IRS complaint alleged that Mr. Ruble had been criminally convicted and sentenced to six and a half years of imprisonment for writing more than 600 tax opinion letters that had blessed bogus tax shelters. Ex. 39; Luis Angel [Luis] Dep. 180:24-182:20; Stalzer Dep. 54:8-17.

**RESPONSE:** Undisputed.

105.

RESPONSE: Partly disputed.

106.

RESPONSE: Partly disputed.



107.

**RESPONSE:** Undisputed.

108.

**RESPONSE:** Undisputed.

109.

**RESPONSE:** Undisputed.

110.

**RESPONSE:** Undisputed.

111.

**RESPONSE:** Undisputed.

112.

**RESPONSE:** Undisputed.

113.

**RESPONSE:** Undisputed.

114.

**RESPONSE:** Undisputed.

115.

**RESPONSE:** Undisputed.

116.

**RESPONSE:** Undisputed.

117.

 **RESPONSE:** Partly disputed.

118.

**RESPONSE:** Undisputed.

119.

**RESPONSE:** Undisputed.

120.

**RESPONSE:** Undisputed.

121. In October 2018, Smith Gambrell moved to dismiss the IRS complaint and argued that "the IRS put all taxpayers on notice" in 2001 "that it disagreed with the tax treatment of similar transactions" to the UPC transaction.  Ex. 43 at 2.

**RESPONSE:** Undisputed.

122.

**RESPONSE:**  Disputed.



123. ███████████████████████████████████
████████████████████████████████████████
██████████████████████████

**RESPONSE:** Partly disputed. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████

124. ███████████████████████████████████
████████████████████████████████████████
████████████████████████████

**RESPONSE:** Disputed. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

35

125. On November 5, 2018, Smith Gambrell filed a reply in support of the Cácereses' motion to dismiss the IRS complaint, which asserted that the government "is also free to pursue and apparently has pursued claims against the sophisticated advisors who advised the Cácereses," meaning KPMG and Brown & Wood. Ex. 46; Rollins 30(b)(6) Dep. 159:2-15, 159:20-161:8.

**RESPONSE:** Undisputed.

126.

**RESPONSE:** Undisputed.

127.



**RESPONSE:** Partly disputed.

128. The Cácereses paid Smith Gambrell's invoices and ultimately paid approximately ███████████████ in legal fees in connection with the IRS action. Ex. 49; Rollins 30(b)(6) Dep. 43:6-9; 234:13-235:11; Stalzer Dep. 71:25-72:25; 89:1-16, 92:14-93:2; Luis Angel [Luis] Dep. 288:4-7; 261:13-262:3.

**RESPONSE:** Undisputed.



129. ███████████████████████████████████

**RESPONSE:** Partly disputed. ██████████████████

130. ███████████████████████████████████

**RESPONSE:** Undisputed.

131. ███████████████████████████████████

**RESPONSE:** Undisputed.

132.

**RESPONSE:** Partly disputed.



133. On January 19, 2021, the Eleventh Circuit reversed the district court's order dismissing the IRS's action against the Cácereses; that decision did not identify any new facts on appeal. Ex. 55; Rollins 30(b)(6) Dep. 163:19-164:9.

**RESPONSE:** Undisputed.

134.

**RESPONSE:** Undisputed.

135.

**RESPONSE:** Undisputed.

136. The Cácereses did not retain current trial counsel to represent them in bringing a malpractice action against Sidley until ▮▮▮▮▮▮▮. Ex. 85 at 3.

**RESPONSE:** Undisputed.

137.

**RESPONSE:** Undisputed.

138.

**RESPONSE:** Undisputed.

139.

**RESPONSE:** Undisputed.

140.

**RESPONSE:** Disputed.

40



141.

**RESPONSE**: Undisputed.

142.  The Cácereses sued Sidley on January 13, 2023. Ex. 58.

**RESPONSE**: Undisputed.

143.  In 2023, the Cácereses paid ▮▮▮▮▮▮▮ to settle the IRS action, which never reached discovery.  Ex. 59; Ex. 69; Ex. 70; Luis Angel [Luis] Dep. 308:1-4.

**RESPONSE**: Undisputed.

DATED: October 29, 2025                Respectfully submitted,

*/s/ Scott F. Hessell*
Scott F. Hessell (Admitted *Pro Hac Vice*)
shessell@sperlingkenny.com
Clayton Faits (Admitted *Pro Hac Vice*)
cfaits@sperlingkenny.com
Danna Abrahim (Admitted *Pro Hac Vice*)
dabrahim@sperlingkenny.com
SPERLING KENNY NACHWALTER, LLC
321 N. Clark, 25th Floor
Chicago, IL 60654
T: (312) 641-3200
F: (312) 641-6492

*/s/ Michael E. Brooks*
Michael E. Brooks (GA Bar No. 084710)
mbrooks@brooksandwarner.com
Jill Warner (GA Bar No. 378472)
jwarner@brooksandwarner.com
BROOKS & WARNER LLC
1768 Century Boulevard NW, Suite B
Atlanta, GA 30345
T: (404) 681-0720 – Brooks Dir.
T: (404) 381-0730 – Warner Dir.
F: (404) 681-0780

## CERTIFICATE OF SERVICE

I, Scott F. Hessell, an attorney, hereby certify that on October 29, 2025, I electronically filed the foregoing document and attachments under seal through the Court's CM/ECF system, thereby effectuating service on all counsel. I further certify that I will serve copies of the sealed documents to all counsel of record via secure file-share to counsels' emails of record.

/s/ Scott F. Hessell